108RBK

**Time of Request:** Monday, March 31, 2008   16:59:36 EST
**Client ID/Project Name:** 043843/000013
**Number of Lines:** 234
**Job Number:**     1822:84319857

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 1997 U.S. Dist. LEXIS 19741

**Send to:**   CUNNINGHAM, EILEEN
          NIXON PEABODY LLP
          437 MADISON AVE FL 24
          NEW YORK, NY 10022-7001

LEXSEE 1997 U.S. DIST. LEXIS 19741

IN THE MATTER OF THE ARBITRATION BETWEEN THE HOME INDEMNITY COMPANY, Petitioner, v. AFFILIATED FOOD DISTRIBUTORS, INC., Respondent.

96 Civ. 9707 (RO)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

1997 U.S. Dist. LEXIS 19741

December 10, 1997, Decided
December 12, 1997, Filed

**DISPOSITION:** [*1] Home's petition to confirm the arbitration award denied, and Affiliated's motion to vacate granted.

**COUNSEL:** For THE HOME INDEMNITY COMPANY, petitioner: Clifford H. Schoenberg, Rosenman & Colin, Kathleen M. Kundar, Fox Horan & Camerini LLP, New York, NY.

For AFFILIATED FOOD DISTRIBUTORS, INC., respondent: Kathleen M. Kundar, Fox Horan & Camerini LLP, New York, NY.

**JUDGES:** Richard Owen, United States District Judge.

**OPINION BY:** Richard Owen

**OPINION**

*OPINION AND ORDER*

*OWEN, District Judge*

The Home Indemnity Company petitions the court pursuant to Section 9 of the United States Arbitration Act (the "Act"), *9 U.S.C. § 1 et seq.*, to confirm a favorable interim arbitration award that issued during an arbitration between Home and respondent Affiliated Food Distributors, Inc. and to enter judgment in favor of Home on the award. Affiliated cross moves to vacate the award pursuant to *Section 10* of the Act, *9 U.S.C. § 1 et seq.*

This case arises out of a "Deductible Agreement" (the "Agreement") effective between Home and Affiliated as part of a Worker's Compensation and Employers' Liability Policy issued by Home for the benefit of Affiliated. The Agreement contains an arbitration clause which [*2] states, "The decision in writing of any two arbitrators, when filed with the parties hereto, shall be final and binding on both parties."

Under the Agreement, Affiliated was required to meet a $ 500,000.00 deductible on each claim filed, payment to be made monthly in answer to Home's invoices. The Agreement further required Affiliated to establish a $ 600,000 irrevocable letter of credit ("LOC") with Home as the sole drawee and to which Home had uninhibited draw down rights, exercisable at Home's sole discretion in the event of Affiliated's nonpayment or insolvency.

For a time, Affiliated met its payments under the Agreement, after which further payments were made by Affiliated's parent company, Associated Wholesalers Inc. [1]

> 1   Associated acquired Affiliated two days prior to Affiliated's signing of the Disbursement Agreement at issue in this case, and Affiliated has remained a wholly-owned subsidiary of Associated throughout these proceedings.

As of March 21, 1994, Home became aware of Affiliated's pending [*3] dissolution through its own premium audit. Instead of reserving its drawdown rights under the Agreement, however, beginning April 1994, Home twice "voluntarily" released portions of the LOC. These releases ultimately left Home with security for $ 200,000.00 under the Agreement.

In releasing the monies, Home relied on Associated's past willingness to meet Affiliated's obligations. But, on October 9, 1995, Associated informed Home that it was discontinuing its payments on Affiliated's behalf for certain claim settlements that Home had made "without

Case 1:08-cv-00706   Document 45-5   Filed 03/31/2008   Page 3 of 6

Page 2
1997 U.S. Dist. LEXIS 19741, *

prior knowledge and consent" of Associated's management. Home responded with the commitment that no future claims would be paid by it without such consultation. On December 27, 1995, however, Associated refused to remit $ 672,627.62 of Home's billings on the basis that Home had resolved the pertinent claims without consulting Associated. Associated also stated that "since Affiliated. . . is out of business and has virtually no assets remaining, further liability under the workers compensation insurance policy with your organization may not exist."

Subsequently, either Affiliated or Associated (or both) sought access to the claims files pertinent [*4] to the disputed billing. In response to Affiliated's audit request, Home responded that an audit would be a "time-wasting charade" without some reassurance from Affiliated/Associated that Home would eventually receive the monies it claimed to be due. It also conditioned access to the files upon Affiliated/Associated's "unequivocal[]" agreement to "not seek review in any subsequent proceeding of any of the same files to which they would be given access during their claims file review." Affiliated/Associated rejected Home's preconditions to the audit and Home demanded arbitration in August 1996.

Associated, not being a signatory, is not, at least in form, a party to the arbitration. ² When the present dispute arose, Home drew down on the LOC's remaining $ 200,000 balance, leaving it with an unsecured claim of $ 472,627.62 in the arbitration. It is this amount for which Home approached the Panel seeking a security award.

> 2   In its initial submission to the Panel, Home asked whether Associated had assumed Affiliated's obligations under the Agreement through its course of conduct. Associated countered that the Panel had no jurisdiction over it. The Panel reserved decision on the issue. Associated has filed suit in the Eastern District of Pennsylvania, seeking injunctive and declaratory relief against Home's efforts to join it in the arbitral proceedings. Thus, the Panel's interim order pertains solely to the contract relation between Home and Affiliated.

[*5] On November 13 and 14, 1996, both Home and Affiliated, respectively, submitted Statements of Position to the duly convened Arbitration Panel.

In its Statement of Position, Affiliated disputed the "validity and propriety of some $ 672,627.62 of [Home's] billings". It claimed that Home had breached its commitment to consult Affiliated prior to satisfying claims and that Home failed to properly investigate, adjust and refuse certain claims for which it now sought reimbursement. Affiliated justified its refusal to remit the disputed amount to Home on the basis that Home refused Affiliated access to the disputed claim files. Its formal submissions to the Panel were that Home had breached its fiduciary duty as an agent of Affiliated and that Home had violated an expressly agreed upon procedure in the processing of claims. Finally, Affiliated informed the Panel of its initial request to Home for access to the disputed files, and intimated a future discovery request pending its review of those files.

In its Statement of Position, Home requested the Panel to issue an interim award ordering Affiliated to establish a $ 472,627.62 letter of credit or to deposit that amount in an interest-bearing [*6] escrow account in order to "secure any final award rendered against Affiliated on the merits of the dispute." Alternatively, Home sought an order requiring Affiliated to secure from Associated a letter of guaranty, arguing that Associated had previously assumed Affiliated's contractual obligation to Home through its course of conduct. ³

> 3   Although the Panel had previously deferred on the question of Associated's contractual obligation (*see supra* n.2), it apparently accepted this argument in the context of interim relief.

On November 18, 1997, an organizational meeting was held, with the Panel and both parties present. On the basis of the parties' Statements of Position, as well as oral argument from counsel, the Panel rendered an interim award ordering Affiliated to post the requested letter of credit, establish an escrow account or furnish a letter of guaranty from Associated. The Panel, in response to Home's request, specifically "conditioned" Affiliated's discovery on its posting of security. Indeed, [*7] in its final interim order, the Panel explicitly predicated its preclusion of the discovery on the fact that Associated could not be secured as Affiliated's guarantor. It further noted that, "in fairness to Home", the security was necessary because Home had previously released a portion of its contractual security. The Panel ignored the fact that Home had done so on full notice of Affiliated's dissolution.

In making its order, the Panel refused even a threshold review of the underlying dispute or its merits in relation to either party's cause. Although the amount sought by Home on the merits, and granted as security, was in dispute, the very claims files that would clarify whether there was any meritorious basis for the security were not reviewed. Moreover, in consequence of the order, Affiliated is barred from reviewing those same files despite the fact that they are central to the dispute submitted.

A district court is quite limited in its power to overturn an arbitration award. *See Ottley v. Schwartzberg, 819 F.2d 373, 376*, (2d Cir. 1987). It may vacate or mod-

Case 1:08-cv-00706     Document 45-5     Filed 03/31/2008     Page 4 of 6

Page 3
1997 U.S. Dist. LEXIS 19741, *

ify an arbitration order only on one of the grounds enumerated in 9 U.S.C. § 10-11 [4] or if the arbitrators acted in [*8] "manifest disregard" of the law. *See Bell Aerospace Co. Div. of Textron, Inc. v. Local 516, International Union, United Automobile, Aerospace and Agricultural Implement Workers of American (UAW), 500 F.2d 921, 923 (2d Cir. 1974)*; *Sperry Int'l Trade, Inc. v. Government of Israel, 532 F. Supp. 901, 905 (S.D.N.Y. 1982)*, *aff'd*, *689 F.2d 301 (2d Cir. 1982)*. Arbitrators may grant equitable relief that a district court cannot, *Konkar Maritime Enterprises, S.A. v. Compagnie Belge D'Affretement, 668 F. Supp. 267, 271 (S.D.N.Y. 1987)*, and they are not required to "follow all niceties observed by federal courts". *Bell Aerospace Co., 500 F.2d at 923*. But arbitrators must, in any event, "give each of the parties to the dispute an adequate opportunity to present its evidence and argument." *Tempo Shain Corporation, et al. v. Bertek, Inc., 120 F.3d 16, 19 (2d Cir. 1997)* (citing *Hoteles Condado Beach v. Union De Tronquistas Local 901, 763 F.2d 34, 39 (1st Cir. 1985)*. As such, the "touchstone" for a finding of arbitral misconduct under the Act is the concept of "fundamental fairness". *Compania Chilena De Navegacion Interoceanica, S.A. v. Norton, Lilly & Co., Inc., 652* [*9] *F. Supp. 1512, 1515*; *Reichman v. Creative Real Estate Consultants, Inc., 476 F. Supp. 1276, 1284-85 (S.D.N.Y. 1979)*. Upon a thorough review of the facts here, it is this "touchstone" of fundamental fairness that I find lacking, and that requires me to decline confirmation of the order and to grant Affiliated's motion to vacate.

    4   Although Affiliated has not cited specifically to any one provision of the Act's *section 10*, the facts present issues under both *§ 10(a)(3)* and *(a)(4)*, which will be set out below as discussed. *Section 11*, which addresses miscalculations and errors in form, is inapplicable to this action.

The mandate for fundamental fairness is found in *§ 10(a)(3)* of the Act, which allows a federal court to vacate an arbitration award if "the arbitrators were guilty of misconduct. . . in refusing to hear evidence pertinent and material to the controversy[,] or of any other misbehavior by which the rights of the party have been prejudiced." *9 U.S.C. § 10(a)(3)*. Courts have interpreted this provision [*10] to mean that an arbitration order must be confirmed unless fundamental fairness has been violated. *See Tempo Shain Corporation, 120 F.3d at 20*. As put by one court,

> the absence of statutory provision for discovery techniques in arbitration proceedings obviously does not negate the affirmative duty of arbitrators to insure that relevant documentary evidence in the hands of one party is fully and timely made available to the other party. . . . [A] failure to discharge this simple duty would constitute a violation of [FAA § 10(a)(3)], where a party can show prejudice as a result.

*Chevron Transport Corporation v. Astro Vencedor Compania Naviera, S.A., 300 F. Supp. 179, 181 (S.D.N.Y. 1969)*. Therefore, the issues presented here are (1) whether the Panel's security order, made without a facial review by it of the underlying claim, constituted fundamental unfairness under the Act's *§ 10(a)(3)*, and whether Affiliated was prejudiced thereby due to the consequent preclusion of its discovery for the claim files at issue. I conclude the process by which the security was awarded does constitute fundamental unfairness, and that Affiliated was clearly prejudiced thereby. [*11] I vacate the award under *§ 10(a)(3)* of the Act.

Home argues against this result by pointing to the general appropriateness of security awards in the arbitration context. It cites several cases supporting the general proposition that it is within an arbitration panel's power to issue an interim order requiring a security bond pending final determination. *See Konkar Maritime Enterprises, S.A., 668 F. Supp. at 271* (confirming order to establish a joint escrow account for distribution under the final award); *Sperry Int'l Trade, Inc., 532 F. Supp. at 908* (arbitrators did not exceed their authority in ordering joint escrow account); *Atlas Assurance Co. of America*, 1991 WL 4741 (S.D.N.Y.), at *2 (arbitrators' interim order placing disputed amount into interest-bearing escrow account is reasonable); *Compania Chilena De Navegacion Interoceanica, S.A. v. Norton, Lilly & Co., Inc., 652 F. Supp. 1512, 1516-1517 (S.D.N.Y. 1987)*(order requiring defendant to post bond confirmed).

Yet, none of these authorities suggest that an arbitrator's authority to order an escrow or security bond can override the requirement of fundamental fairness. For instance, while in *Atlas, supra*, [*12] the court found that, when "taking into account the interim nature of the relief granted", fundamental fairness existed where an interim escrow account was ordered, 1991 WL 4741 at *2, the *Atlas* court specifically noted that the escrow "represented no risk or penalty upon [the respondent], and no final adjudication on the merits of the case". *Id.* It found that the award represented "a reasonable interim step until [the respondent's] requested audit is complete." *Id.* Indeed, the court looked to the order's "language of 'discovery'" for assurance that the escrow awarded did not undercut the fundamental fairness to which all parties are due, even in arbitration. *Id.* There is no such assurance in this case. The awarded security is directly linked to the preclusion of Affiliated's discovery. Thus, Affili-

proceeding

ated is obstructed from both defending itself against Home's allegations, as well as substantially asserting its counter-allegations in any future arbitration. Moreover, this result was reached without any examination as to whether Home had a meritorious claim. Therefore, this case is distinguishable from *Atlas*, as well as other cases presented.

The *Konkar* court, [*13] for example, noted that "where a party to an arbitration does not receive a full and fair hearing on the merits, a district court will not hesitate to vacate the award," and stressed that the interim award there at issue had not precluded a "fundamentally fair hearing" on the merits despite the fact that respondent had not complied with the protested escrow order. *668 F. Supp. at 271-72*. As well, the *Sperry* court confirmed an order requiring a joint escrow only after noting that "the Solomonic resolution of the Award to take the money from both parties of course does not decide the merits. The Award makes rational sense at this stage of the Arbitration." *532 F. Supp. at 908*. Finally, in *Compania Chilena*, the court upheld an escrow requirement after the Panel had conducted two hearings on the merits and an extensive exchange of discovery between the parties. *See 652 F. Supp. at 1513-14*. None of these cases support the proposition that an arbitration panel can properly bar a party from defending itself by precluding discovery of files central and dispositive to the dispute before it. Such an award does not make "rational sense" at this stage of the proceedings, precludes [*14] Affiliated from a fundamentally fair hearing, and was granted on the bare assertions of the parties, without even a glance at the underlying dispute or its possible merits. [5]

---

5  Other cases have been presented to suggest that Affiliated's inability to comply with the order cannot sustain my decision to vacate. First, Affiliated's financial status is not the basis of the outcome here, and, second, the cases are not persuasive. One case cited involves a party's inability to pay a final award that was granted on the merits, after full evidentiary review. *See Hotel, Motel & Restaurant Employees & Bartenders Union, Local 471, AFL-CIO v. P. & J.G. Enterprises, Inc., 731 F. Supp. 88 (N.D.N.Y. 1990)*. In another case, the court assumes an unimpeded hearing on the merits in the future and addresses the party's inability to comply within the context of civil contempt rather than preclusion of discovery. *See Blue Sympathy Shipping Company, Ltd. v. Serviocean International, S.A.*, 1994 W.L. 597144 (S.D.N.Y.). Finally, in *Forum Insurance Company v. First Horizon Insurance Company, 1989 U.S. Dist. LEXIS 6631, 1989 WL 65041* (N.D. Ill.) at *1, the arbitration panel addressed the question of a security bond to the exclusion of all else because it was the only issue submitted to it; here, both parties submitted substantive questions to the Panel which were ignored in reference to the security order granted. Furthermore, none of these cases address the principle of fundamental fairness in relation to an interim award that will frustrate a full and fair review of the merits with both sides operating on an level playing field.

---

[*15] Another basis for granting Associated's motion to vacate lies in *§ 10(a)(4)* of the Act. That provision authorizes me to vacate the award if "the arbitrators have exceeded their powers". *9 U.S.C. 10(a)(4)*. It has been held that "an arbitrator exceed[s] his powers in determining the obligations of a corporation which was clearly not a party to the arbitration proceeding." *Orion Shipping & Trading Co., Inc. v. Eastern States Petroleum Corporation of Panama, S.A., 312 F.2d 299, 300 (1963)*. In that case, the arbitration panel held an entity not a party to the underlying contract liable as a guarantor to a party properly before the panel. The Second Circuit stated that "it is for the court, not the arbitrator, to decide whether a non-signatory to an arbitration clause is bound by an arbitration award". *Id. at 301*. Although it is for another time and court to decide Associated's status in this arbitration, [6] it is clear that the Panel--at the same time that it formally deferred on the issue--ruled as if Associated and Affiliated are clearly one entity, and that Associated is liable as Affiliated's guarantor. The fact that it is Affiliated that pays the price for Associated's [*16] noncompliance merely underscores that the arbitration award is not rationally based or fair in its form or result.

---

6  Associated has filed in the Eastern District of Pennsylvania for declaratory and injunctive relief on the issue. *See supra* n.2.

---

Thus, for the reasons above stated, I deny Home's petition to confirm the arbitration award, and grant Affiliated's motion to vacate.

Submit order on notice.

Dated: New York, New York

December 10, 1997

Richard Owen

United States District Judge

108RBK

********** Print Completed **********

Time of Request: Monday, March 31, 2008   16:59:36 EST

Print Number:    1822:84319857
Number of Lines: 234
Number of Pages:

Send To:  CUNNINGHAM, EILEEN
          NIXON PEABODY LLP
          437 MADISON AVE FL 24
          NEW YORK, NY 10022-7001

Case 1:08-cv-00706   Document 45-5   Filed 03/31/2008   Page 6 of 6