108RBK

**Time of Request:** Monday, March 31, 2008   16:56:35 EST
**Client ID/Project Name:** 043843/000013
**Number of Lines:** 658
**Job Number:**        1861:84319309

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 2001 U.S. Dist. LEXIS 2822

**Send to:**   CUNNINGHAM, EILEEN
          NIXON PEABODY LLP
          437 MADISON AVE FL 24
          NEW YORK, NY 10022-7001

LEXSEE 2001 U.S. DIST. LEXIS 2822

**TECHCAPITAL CORPORATION, IOGEN CORPORATION and IOGEN ETHANOL CORPORATION, Petitioners, -against- AMOCO CORPORATION, Respondent.**

**99 Civ. 5093 (AGS)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2001 U.S. Dist. LEXIS 2822*

**March 16, 2001, Decided
March 19, 2001, Filed**

**DISPOSITION:** [*1] Iogen's petition granted in part and denied in part. Iogen's request for attorneys' fees denied. Amoco's cross-petition granted in part and denied in part. Intervenors' motion to intervene granted and Intervenors' cross-petition denied.

**COUNSEL:** For Petitioner: Robert H. Fisher, Fitzpatrick, Cella, Harper & Scinto, New York, NY.

**JUDGES:** ALLEN G. SCHWARTZ, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** ALLEN G. SCHWARTZ

**OPINION**

**OPINION AND ORDER**

ALLEN G. SCHWARTZ, UNITED STATES DISTRICT JUDGE

Petitioners Techcapital Corporation, Iogen Corporation, and Iogen Ethanol Corporation (collectively "Iogen") bring this action to confirm an award of arbitrators, pursuant to *9 U.S.C. § 9*. Iogen also seeks attorneys' fees pursuant to *28 U.S.C. § 1927*. Respondent Amoco Corporation ("Amoco")[1] cross-petitions to vacate the award, pursuant to *9 U.S.C. § 10*, or, in the alternative, to modify the award, pursuant to *9 U.S.C. § 11*. Swan Biomass Company ("Swan 2") and Robert H. Walker (together the "Intervenors") move to intervene, pursuant to *Fed. R. Civ. P. 24*. The Intervenors also cross-petition (contingent upon the success [*2] of their *Rule 24* motion) to either confirm the award in its entirety, pursuant to *§ 9*, or, in the alternative, to vacate the award in its entirety, pursuant to *§ 10*. For the reasons set forth below, Iogen's petition is granted in part and denied in part; Iogen's request for attorneys' fees is denied; Amoco's cross-petition is granted in part and denied in part; the Intervenors' motion to intervene is granted; and the Intervenors' cross-petition is denied.

1  Due to a merger that occurred after the events giving rise to this action, Amoco is now known as BP Amoco Corporation. (Resp't BP Amoco Corp.'s Mem. of Law in Opp. to Mot. to Confirm and in Supp. of Cross-Mot. to Vacate Arbitration Award ("Amoco's Mem.") at 1 n.1.) The parties have continued to refer to the respondent simply as Amoco. The Court will do the same.

I. BACKGROUND

The following facts are undisputed. Petitioners are three Canadian companies, each having its principal place of business in Ottawa, Ontario, Canada. (Pet. P 1.) Amoco is an Indiana [*3] corporation having its principal placed of business in Chicago, Illinois. (Amoco's Answer to Pet. and Cross-Pet. ("Amoco Cross-Pet.") P 2.) Swan 2 is a Delaware corporation with its principal place of business in Oak Brook Terrace, Illinois. (Swan 2's Cross-Pet. P 1.) Mr. Walker is the President of Swan 2. (Aff. of Robert H. Walker dated Oct. 20, 1999 P 1.) He is a citizen and resident of Illinois. (Swan 2's Cross.-Pet. P 2.)

Effective March 17, 1992, Iogen and Amoco entered into an agreement (the "1992 Agreement") concerning the development and commercialization of certain technology relating to the conversion of various biological materials into ethanol. (Arbitration Proceedings Submitted in Support of Petitioner's Mem. (1) in Opp. to Amoco's Cross-Mot. to Vacate the Award of Arbitrators,

(2) in Reply to Amoco's Opp. to Petitioners' Mot. to Confirm the Award of Arbitrators, and (3) to Request Their Attorneys' Fees and Costs ("Arbitration Proceedings") Ex. CX4.) Under the 1992 Agreement, Iogen granted Amoco rights to certain information or intellectual property that Iogen possessed concerning ethanol production and related matters. (*Id.*) The parties also entered [*4] into a "working relationship" concerning ethanol production and related matters. (*Id.*)

In 1994, for reasons that the parties dispute, Iogen and Amoco entered into a letter agreement and a "Letter of Understanding" that together are referred to as the "First Modification Agreement." (Arbitration Proceedings Ex. CX8.) The First Modification Agreement altered in certain respects the rights and obligations established by the 1992 Agreement. The First Modification Agreement also created certain new rights and obligations. (*Id.*)

In early 1995, Amoco and Stone & Webster Engineering Corp. ("S&W") created a partnership called Swan Biomass Company ("Swan 1"). (Arbitration Proceedings Ex. CX14.) Swan 1 was to research, develop, and possibly commercialize certain technology for converting various biological materials into ethanol. (*Id.*) At least in part because of the creation of Swan 1, Iogen and Amoco entered into a "Second Modification Agreement" in October 1995. (Arbitration Proceedings Ex. CX 15.) This agreement, like the First Modification Agreement, altered certain existing rights and obligations, and created certain new rights and obligations. (*Id.*) Most importantly for [*5] this action, Paragraph 7 of the Second Modification Agreement gave Amoco the right to sublicense to unaffiliated third parties certain information or intellectual property that Iogen had licensed to Amoco. (*Id.* at 5-6.) Amoco also obtained the right to extend these sublicensing rights to Swan 1 or S&W. (*Id.* at 5-6.)

In January 1997, S&W announced its intention to withdraw from Swan 1. (Amoco's Mem. at 13; Petitioner's Mem. (1) in Opp. to Amoco's Cross-Mot. to Vacate the Award of Arbitrators, (2) in Reply to Amoco's Opp. to Petitioners' Mot. to Confirm the Award of Arbitrators, and (3) to Request Their Attorneys' Fees and Costs ("Iogen's Reply Mem.") at 14.) Soon thereafter, Swan 1 was dissolved. (Arbitration Proceedings Ex. CX46.) In May 1997, Mr. Walker, who had worked at Amoco and then at Swan 1, formed Swan 2. (Amoco's Mem. at 13-14; Iogen's Reply Mem. at 15.) Amoco sought Iogen's consent to substitute Swan 2 for Swan 1 under the Second Modification Agreement. Iogen refused. (Amoco's Mem. at 14; Iogen's Reply Mem. at 15-16.) Amoco then informed Iogen that Amoco believed it could acquire stock in Swan 2, thereby making Swan 2 an "Affiliate" of Amoco [*6] under Paragraph 1.9 of the 1992 Agreement. This, Amoco claimed, would allow Amoco to extend its contractual rights to Swan 2 without Iogen's consent. (Amoco's Mem. at 14; Iogen's Reply Mem. at 16.) Iogen responded by instituting arbitration proceedings, pursuant to the terms of the 1992 Agreement, the First Modification Agreement, and the Second Modification Agreement. (Pet. Exs. B-E.) After receiving Iogen's notice of arbitration, Amoco and Swan 2 engaged in a transaction by which Amoco purported to acquire approximately 30% of Swan 2's stock. (Arbitration Proceedings Ex. CX13.) At or about the same time, Amoco and Swan 2 entered into an agreement that, among other things, purported to extend Amoco's sublicensing rights under Paragraph 7 of the Second Modification Agreement to Swan 2. (*Id.*)

Amoco and Iogen then proceeded to arbitrate their dispute under the auspices of the American Arbitration Association ("AAA"). A panel of three arbitrators (the "Panel") was selected. (Pet. Ex. F.) Amoco and Iogen conducted certain agreed upon discovery (Mem. in Support of Mot. by Petitioners for Confirmation of Arbitration Award ("Iogen's Mem.") at 9-10), participated in a ten-day hearing [*7] before the Panel ( *id.* at 10-11), and submitted voluminous post-hearing memoranda. (Exhibits in Support of Petitioners' Mem. (1) in Opp. to Amoco's Cross-Mot. to Vacate the Award of Arbitrators, (2) in Reply to Amoco's Opp. to Petitioners' Mot. to Confirm the Award of Arbitrators, and (3) to Request Their Attorneys' Fees and Costs ("Iogen's Reply Exs.") H-K.) On June 24, 1999, the Panel issued its Award of Arbitrators (the "Award"). (Pet. Ex. A.) As set forth in the Award, the Panel found for Iogen on certain contractual issues, and awarded declarative, injunctive, and monetary relief against Amoco. (*Id.*) Iogen initiated this action on July 14, 1999. (Pet.) Amoco then sought clarification of the Award from the Panel. (Iogen's Reply Ex. N.) In late September 1999, the Panel issued a brief clarification, commenting on certain issues and reaffirming the Award. (Iogen's Reply Ex. B.) The parties then completed briefing the issues pending before this Court.

## II. THE INTERVENTION MOTION

The Intervenors seek to intervene in this action under either *Fed. R. Civ. P. 24(a)*, which provides for intervention as of right, or *Fed. R. Civ. P. 24(b)*, which provides for permissive [*8] intervention. The Court does not reach the issue of intervention as of right because it concludes that permissive intervention under *Rule 24(b)* is appropriate.

*Rule 24(b)* provides, in relevant part, that:

> upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or

fact in common. . . . In exercising its discretion, the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

A court has broad discretion in considering a motion for permissive intervention. *Commack Self-Service Kosher Meats, Inc. v. Rubin, 170 F.R.D. 93, 106 (E.D.N.Y. 1996)*. In considering the motion, the court should not read the words "claim" or "defense" in a technical sense, but as requiring some interest on the part of the movant. *Id.* Here, the Intervenors have an interest because the Award purports to adjudicate certain rights between them and Amoco. (Pet. Ex. A.) The Intervenors' claims have issues of law in common with the main action because the issues are the same: review of the Award pursuant [*9] to the Federal Arbitration Act, *9 U.S.C. § 1 et seq.* (*Compare* Swan's Cross-Pet. *with* Pet. *and* Amoco's Cross-Pet.) This is enough for *Rule 24(b)*, which is satisfied if there is a single common question of law or fact. *See Rubin, 170 F.R.D. at 106*.

The Intervenors also satisfy the most important consideration under *Rule 24(b)*, which is that the intervention not unduly delay or prejudice the rights of the existing parties. *See Rubin, 170 F.R.D. at 106*. The facts underlying the Intervenors' claims are the same facts underlying the main action. The arbitration award to be reviewed for the Intervenors' claims is the same arbitration award to be reviewed for the main action. The Intervenors sought to intervene early in the action, and their cross-petition has been briefed on substantially the same schedule as the petition and cross-petition in the main action. While this Court has observed that additional parties generally require additional time, *United States v. International Business Machines Corp., 1995 U.S. Dist. LEXIS 8482*, No. 72-344, 1995 WL 366383, at *5 (S.D.N.Y. June 19, 1995) (quoting *Crosby Steam Gage & Valve Co. v. Manning, Maxwell & Moore, Inc., 51 F. Supp. 972, 973 (D. Mass. 1943))*, [*10] given the nature, size, and procedural history of this action, the marginal time cost of allowing intervention will be minimal. The Court also rejects Amoco's argument that it will suffer prejudice if forced to argue against both Iogen and Swan 2. (Resp't BP Amoco Corp.'s Response to Swan Biomass Co. and Robert H. Walker's Mot. to Intervene at 16.) Having to litigate against more than one party at a time does not constitute cognizable prejudice.

Finally, Iogen argues that the Intervenors' motion is untimely because the Intervenors did not seek to intervene in the arbitration. (Petitioners' Mem. in Opp. to the Mot. by Swan Biomass Co. and Robert H. Walker to Intervene in this Confirmation Proceeding at 8-18, 23.) Whether an application to intervene is timely is for the court to decide, in its discretion, evaluated against all of the available facts. *Rubin, 170 F.R.D. at 99*. There is a dispute between the parties about the extent to which the Intervenors participated in the arbitration. There is also some question as to whether the Panel would have allowed the Intervenors to intervene had they tried. Moreover, prior to the issuance of the Award, it could reasonably [*11] have appeared that the Intervenors' interests were completely aligned with those of Amoco. However, Paragraph V of the Award, which states that Amoco must indemnify the Intervenors, clearly causes the interests of Amoco and the Intervenors to diverge. This divergence appears to be the reason for the intervention motion. The intervention motion was made within a reasonable time after the Award was issued and Iogen initiated this action to confirm it. Given these facts, and the rest of the record, the Court concludes that the motion to intervene is timely. Accordingly, the Intervenors have satisfied the requirements for permissive intervention under *Rule 24(b)*. The motion to intervene is granted.

### III. STANDARDS FOR REVIEWING AN ARBITRATION AWARD

> If the parties in their agreement have agreed that a judgment of the court shall be entered upon the award made pursuant to arbitration . . . then at any time within one year after the award is made any party to the arbitration may apply to the court . . . for an order confirming the award, and thereupon the court *must* grant such an order unless the award is vacated, modified, or corrected as prescribed in *sections 10* and *11* of this [*12] title.

*9 U.S.C. § 9* (emphasis added). *Section 10* provides, in relevant part, that the court "may make an order vacating the award . . . Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." *9 U.S.C. § 10(a)(4)*. *Section 11* provides, in relevant part, that the court "may make an order modifying or correcting the award . . . where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted." *9 U.S.C. § 11(b)*.

The Second Circuit has also held that a court may vacate an arbitration award when the arbitrators acted "in manifest disregard of the law." *Merrill Lynch, Pierce, Fenner & Smith v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986)* (citing *Wilko v. Swan, 346 U.S. 427, 98 L. Ed. 168,*

*74 S. Ct. 182 (1953), overruled on other grounds by Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477, 104 L. Ed. 2d 526, 109 S. Ct. 1917 (1989)).* Manifest disregard [*13] of the law "clearly means more than error or misunderstanding with respect to the law." *Id.* To constitute manifest disregard, "the error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Id.* In addition, the Second Circuit noted that, "the term 'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal principle but decides to ignore or pay no attention to it." *Id.* The law alleged to have been manifestly disregarded "must be well defined, explicit and clearly applicable." *808 F.2d at 934*.

In applying *§§ 10* and *11*, and the manifest disregard of the law doctrine, courts are generally to give great deference to the arbitrators' determinations. *See Ashraf v. Republic New York Securities, 14 F. Supp. 2d 461, 464 (S.D.N.Y. 1998)*. There is a strong presumption in favor of enforcing arbitrators' awards. *Id.* The burden of proof is on the party attempting to vacate or modify an award of arbitrators. *Id.*

IV. THE INTERVENORS' CROSS-PETITION

The Intervenors' do not establish that the Award should be vacated pursuant to *§ 10(a)(4)*. [*14] Their only argument for vacating the Award is that by purporting to adjudicate the Intervenors' rights, the Panel exceeded its powers. (Mem. of Law of Swan Biomass Co. and Robert H. Walker in Response to Petitioners' Mot. for Confirmation of Arbitration Award and in Supp. of Swan Biomass Co. and Robert H. Walker's Cross-Mot. to Confirm or Vacate the Arbitration Award ("Intervenors' Mem.") at 5-6.) As the Intervenors correctly argue, arbitrators exceed their authority when they determine the rights and obligations of one who is not a party to the arbitration proceeding. *Orion Shipping & Trading Co., Inc. v. Eastern States Petroleum Corp. of Panama, SA, 312 F.2d 299, 300 (2d Cir. 1963)*. With the exception of Paragraph V of the Award, however, the Panel did not determine the independent rights and obligations of the Intervenors. Rather, the Panel determined issues between Iogen and Amoco which, because of the contracts between Amoco and the Intervenors, happened to affect the Intervenors.

The Intervenors are not mentioned at all in Paragraphs I, III, or IV of the Award. In addition, the Panel did not mentioned Mr. Walker in Paragraph II. The Panel did make two determinations [*15] that affect Swan 2 in Paragraph II, specifically in Paragraphs II.1a(c) and II.1a(d). Both of these paragraphs decide issues that arise out of the contracts between Amoco and Iogen, and that are necessary to a resolution of the dispute between Iogen and Amoco. In Paragraph II.1a(d), the Panel "declared that . . . Swan 2 is not an 'Affiliate' within the meaning of Section 1.9 of the 1992 Agreement." (Pet. Ex. A at 2.) While this affects Swan 2, this is not an adjudication of Swan 2's rights. Swan 2 admits that it is not a party to the 1992 Agreement. (Intervenors' Mem. at 2.) As such, Swan 2 has no rights under the 1992 Agreement. The parties with rights under that agreement are Iogen and Amoco, and this declaration is important to resolving their dispute. The 1992 Agreement gave Amoco the right to extend its rights under that contract to its "Affiliates," as defined in Paragraph 1.9 of the 1992 Agreement. Amoco had attempted to extend certain rights to Swan 2. Iogen had asserted that Amoco violated the contract by doing so because, among other things, Swan 2 was not really an "Affiliate." Accordingly, it was within the scope of the Panel's authority to determine whether Swan 2 was [*16] an Affiliate, as defined in the 1992 Agreement, such that Amoco could extend contractual rights to Swan 2. Paragraph II.1a(d) does not warrant vacation of the Award.

The same is true with respect to Paragraph II.1a(c) of the Award. In this paragraph, the Panel declared "that any and all rights Amoco has granted [Swan 2] under Paragraph 7 of the Second Modification Agreement are terminated and of no force or effect, *ab initio*." (Pet. Ex. A at 2.) Although this does void certain portions of the contract between Amoco and the Intervenors, it does so only to the extent necessary to resolve the dispute between Amoco and Iogen. One of the primary issues in that dispute was whether Amoco could, under Paragraphs 1.9 and 14.2 of the 1992 Agreement, extend its sublicensing rights under Paragraph 7 of the Second Modification Agreement to Swan 2. In Paragraph II.1a(b), the Panel determined that the sublicensing rights could never have been extended to Amoco's Affiliates. This was clearly within the Panel's authority. It therefore followed that Amoco never had the authority to extend those rights to Swan 2, even if Swan 2 had been an Affiliate. Had the Panel not voided Amoco's purported [*17] grant of sublicensing rights, but simply declared that a breach of contract existed, Iogen would have been faced with a never-ending breach. There would have been no final resolution of the dispute between the two parties. Effecting a final resolution of that dispute by interpreting the 1992 Agreement was within the Panel's authority. Any effect on the Intervenors is only derivative, and does not warrant vacation of the Award.

Similarly, Swan 2 appears only derivatively in Paragraphs II.2(a), II.3(a), and II.3(b) of the Award. In those paragraphs, the Panel granted Iogen certain injunctive relief against "Amoco, its subsidiaries, and its affiliates, and the officers, agents, servants, employees, attorneys and persons in active concert or participation with them .

. . ." (Pet. Ex. A.) In each paragraph, the Panel then included a parenthetical listing of one or more entities it believed to be acting in concert with Amoco. Each such parenthetical reference included Swan 2. (*Id.*) The Panel clearly had the power to issue injunctive relief against Amoco. Amoco was a party to the relevant contracts and to the arbitration. The 1992 Agreement specifically gave the Panel injunctive powers. [*18] (Arbitration Proceedings Ex. CX4 at 48.) In issuing injunctive relief against Amoco, the Panel obviously employed language adapted from *Fed. R. Civ. P. 65(d)*, which provides that an injunction issued by a court "is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order . . . ." Accordingly, the Court concludes that the Panel did not exceed its authority by enjoining Amoco and those acting in concert with it. The Court also concludes, given the licensing agreement between Amoco and Swan 2, that the Panel did not exceed its authority in ruling that Swan 2 was acting in concert with Amoco.

The relief that affects the Intervenors is thus distinguishable from the relief in question in *Orion Shipping*. In that case, the arbitrator decided that the respondent had violated its contract with the petitioner and awarded the petitioner damages. The arbitrator also went on to rule that the respondent's parent company, which was not a party to the Arbitration, had to pay the damages if the respondent did not do so itself. The Second Circuit [*19] affirmed the district court's vacation of this additional ruling as outside the scope of the arbitrator's powers. *312 F.2d at 299-301*. In *Orion Shipping*, the vacated relief was unnecessary to resolve the dispute between the parties; it concerned a contingency that had not yet come to pass, based upon a contract not before the arbitrator that set forth the rights and obligations of a non-party to the arbitration. *See id.* Here, in contrast, Paragraphs I through IV of the Award decide only issues that were properly before the Panel and were necessary to resolve the dispute between the parties.

For the reasons set forth above, the Intervenors have failed to demonstrate that Paragraphs I through IV of the Award should be vacated pursuant to *9 U.S.C. § 10*. Paragraph V of the Award is discussed in a separate section of this Opinion and Order. *See infra* Section VI.

V. AMOCO'S CROSS-PETITION

Amoco asserts a variety of arguments for vacating or modifying the Award. For purposes of convenience and clarity, the Court will address the arguments concerning Paragraphs I through IV in this section. Paragraph II.1, which awards declaratory relief, [*20] will be addressed first, as it is a logical antecedent to any award of monetary or injunctive relief. Paragraphs I, II.2, II.3, II.4, III, and IV will then be discussed in order. Paragraph V is discussed in a separate section of this Opinion and Order. *See infra* Section VI.

A. Paragraph II.1

i. Paragraph II.1a(b)

This paragraph of the Award declares "that any and all rights set forth in paragraph 7 of the Second Modification Agreement are not now and never have been assignable to any Affiliates, within the meaning of Section 1.9 of the 1992 Agreement." (Pet. Ex. A at 2.) In other words, the Panel ruled that, even if Swan 2 was an Affiliate of Amoco, the agreements between Iogen and Amoco did not allow Amoco to delegate its sublicensing rights to Swan 2. Amoco argues that this paragraph merits vacation of the Award because the Panel either failed to interpret, or ignored, the contract between Amoco and Iogen. According to Amoco, only one contract has ever existed between Amoco and Iogen, and that contract allows Amoco to extend all of its contractual rights to any company of which Amoco owns at least 10% of the voting stock. (Amoco's Mem. at 23-29.)

Arbitrators have broad discretion [*21] to interpret a contract. "[A] court should not reject an award on the ground that the arbitrator misread the contract. . . . As long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." *Kanuth v. Prescott, Ball & Turben, Inc., 292 U.S. App. D.C. 319, 949 F.2d 1175, 1180 (D.C. Cir. 1991)* (quoting *United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38, 98 L. Ed. 2d 286, 108 S. Ct. 364 (1987))* (alteration in the original). Interpretation of the 1992 Agreement, the First Modification Agreement, and the Second Modification Agreement was clearly within the scope of the Panel's authority. The question for the Court, then, is whether the Panel was "arguably construing or applying" those agreements.

The Court concludes that the Panel was doing just that. Paragraph 14.2 of the 1992 Agreement provides, in relevant part, that, "AMOCO shall have the right, under the terms of this Agreement, to assign or extend rights under this Agreement, in whole or in part, to Affiliates of AMOCO . . . ." [*22] (Arbitration Proceedings Ex. CX4 at 42.) The key phrase is "rights under this Agreement." Amoco argues here, and argued before the Panel, that the language of the First Modification Agreement and of the Second Modification Agreement demonstrates that those documents are simply amendments to the 1992 Agreement. Accordingly, in Amoco's view, the sublicensing rights created by Paragraph 7 of the Second Modification

Case 1:08-cv-00706    Document 45-8    Filed 03/31/2008    Page 7 of 14

Page 6
2001 U.S. Dist. LEXIS 2822, *

Agreement are "rights under this Agreement" that may be delegated to Affiliates. (Amoco's Mem. at 23-28; Iogen's Reply Ex. J at 35-50.) Iogen, on the other hand, contends here, and contended before the Panel, that the Second Modification Agreement is separate from the 1992 Agreement. Under this view, the sublicensing rights created by Paragraph 7 of the Second Modification Agreement are not "rights under this Agreement." (Iogen's Reply Mem. at 29-30; Iogen's Reply Ex. H at 38-50.)

Both positions are plausible interpretations of the contracts. Amoco is correct that neither the First Modification Agreement nor the Second Modification Agreement contains all of the provisions that a free-standing contract often contains, such as notice, waiver, and choice of law clauses. Each [*23] modification agreement also states that provisions of the 1992 Agreement that were not deleted or revised continued to be in effect. (Arbitration Proceedings Exs. CX8, CX15.) Iogen is correct, however, that only the First Modification Agreement states that it shall be incorporated into, and be considered a part of, the 1992 Agreement. (*Compare* Arbitration Proceedings Ex. CX8 at AM048887 *with* Arbitration Proceedings Ex. CX15.) Given the use of such language in the First Modification Agreement, its absence from the Second Modification Agreement is conspicuous. A court or an arbitrator faced with these arguments would not ignore the contract by adopting either interpretation. By choosing to adopt Iogen's argument about the language of the contract, if that is what it did, the Panel at least arguably construed or applied the contracts in issue.

The Panel may also have found the contractual language ambiguous and decided the issue based on extrinsic evidence. Each side points to extrinsic evidence that it claims supports its position. Amoco, for example, argues that one of its attorneys rejected as unnecessary draft contract language that expressly granted Amoco the right to allow [*24] its Affiliates to sublicense Iogen's information or intellectual property. (Amoco's Mem. at 11.) Iogen replies that the Amoco attorney rejected that language not because it was unnecessary, but because it was not part of the agreement-in-principle negotiated by the parties. (Iogen's Reply Mem. at 30-33.) Amoco's own submission to the Panel states that, to accommodate S&W, the same Amoco attorney drafted language expressly allowing Amoco to extend its sublicensing rights to Swan 1, even though Amoco owned 50% of Swan 1 (arguably making Swan 1 an Affiliate under the 1992 Agreement and rendering the express allowance unnecessary under Amoco's interpretation of the contract). (Iogen's Reply Ex. J at 22.) The Panel, which observed the testimony of the Amoco attorney first-hand, was in the best position to judge his credibility and determine how, if at all, his testimony should affect the interpretation of the agreement. The same can be said of the other extrinsic evidence, which the Court need not review in detail. By accepting Iogen's view of the extrinsic evidence, if that is what it did, the Panel at least arguably construed or applied the contracts in issue.

In sum, Amoco has not carried [*25] its burden of proving that the Panel was not even arguably construing or applying the contracts in issue. All that Amoco has demonstrated is that it disagrees with the Panel's interpretation. Whether Amoco, or the Court, agrees or disagrees with the Panel is irrelevant. The Panel could, in the course of construing and applying the relevant agreements, have ruled for Iogen based on either the language of the agreements or based on the extrinsic evidence. Accordingly, Paragraph II.1a(b) does not warrant vacation or modification of the Award.

ii. Paragraph II.1a(c)

This paragraph of the Award declares that "any and all rights Amoco has granted [Swan 2] under paragraph 7 of the Second Modification Agreement are terminated and of no force or effect, *ab initio*." (Pet. Ex. A at 2.) Amoco argues that this paragraph, like Paragraph II.1a(b) must have resulted from a failure by the Panel to interpret the contract between Amoco and Iogen. The Court rejects this argument for the same reason it rejects Amoco's argument with respect to Paragraph II.1a(b). The evidence and arguments put forth before the Panel provided sufficient grounds for the Panel to rule for Iogen while still at least [*26] arguably construing or interpreting the contracts in issue. Accordingly, Paragraph II.1a(c) of the Award does not warrant vacation or modification of the Award.

iii. Paragraph II.1a(d)

This paragraph of the Award declares "that the [sic] Swan 2 is not an 'Affiliate' within the meaning of Section 1.9 of the 1992 Agreement." (Pet. Ex. A at 2.) Amoco argues that this, too, merits vacation of the Award because it "simply ignores the language of Paragraph 1.9 of the Amoco/Iogen Agreement." (Amoco's Mem. at 29.)

Paragraph 1.9 defines an Affiliate as "any company or entity in which a Party has a direct or indirect ownership interest of more than ten percent (10%) . . . wherein said ownership interest is measured by the stock having the right to vote for directors or other governing authorities of the subject company or entity." (Arbitration Proceedings Ex. CX4 at 4.) Amoco argues that it acquired 260 of 860 voting shares of Swan 2 in exchange for good and valuable consideration. It follows, Amoco claims, that Swan 2 was an affiliate of Amoco under Paragraph 1.9. (Amoco's Mem. at 30.) Iogen, however, presented evidence that Amoco's acquisition of Swan 2 stock was a

Case 1:08-cv-00706   Document 45-8   Filed 03/31/2008   Page 8 of 14

Page 7
2001 U.S. Dist. LEXIS 2822, *

sham transaction. Therefore, [*27] Iogen claims, Amoco never really owned more than 10% of Swan 2's stock, and Swan 2 was never an affiliate of Amoco. (Iogen's Reply Mem. at 34-35; Iogen's Reply Ex. H at 50-53.) In support of its position, Iogen offered evidence before the Panel suggesting that Amoco was acquiring Swan 2 stock for just long enough to evade Iogen's refusal to substitute Swan 2 for Swan 1. Iogen also presented evidence that Amoco did not offer any real consideration. (Iogen's Reply Ex. H at 50-53 (citing arbitration testimony and exhibits).)

Once again, Amoco has failed to demonstrate that the Panel ignored the contract. It is at least arguable that the Panel interpreted Paragraph 1.9 of the 1992 Agreement exactly as Amoco would like, but also credited Iogen's evidence that Amoco never actually owned any stock in Swan 2 because the purported acquisition was a sham transaction. Whether or not the Court would reach the same conclusion, the Panel could have done so without violating its duty to construe the contracts in issue. Accordingly, Paragraph II.1a(d) of the Award does not warrant vacation or modification of the Award.

iv. Paragraph II.1a(a)

This paragraph of the award declares the Second Modification [*28] Agreement terminated. (Pet. Ex. A at 2.) Amoco argues that this is improper because it is based on the Panel's alleged failure to interpret the contract between Iogen and Amoco. (Amoco's Mem. at 30-32.) Since the Court has found that the Panel at least arguably construed or applied the contracts between Iogen and Amoco, Amoco's argument fails. Accordingly, Paragraph II.1a(a) of the Award does not warrant vacation or modification of the Award.

v. Paragraph II.1a(e) and Paragraph II.1a(f)

Amoco does not argue that these paragraphs merit vacation under *§ 10* or modification under *§ 11*, or that they are in "manifest disregard of the law."

vi. Paragraph II.1b

This paragraph of the Award declares that Amoco has terminated its activities directed towards commercializing technology for converting certain biological material into ethanol using Iogen's information or intellectual property. (Pet. Ex. A at 3.) Such termination allows Iogen to exercise certain rights under the contracts between Amoco and Iogen. (*Id.*) Amoco argues that this is improper because it is based on the Panel's alleged failure to interpret the contract between Iogen and Amoco. Only by improperly concluding that [*29] Amoco could not meet its commercialization obligations through Swan 2, Amoco claims, could the Panel have found that Amoco had terminated commercialization efforts (Amoco's Mem. at 30-32.) Since the Court has found that the Panel at least arguably construed or applied the contracts between Iogen and Amoco, Amoco's argument fails. It was within the Panel's authority to find that Amoco was not entitled to extend its sublicensing rights to Swan 2 or to find that Amoco never legitimately owned 10% of Swan 2. If, as Amoco argues (Amoco's Mem. at 30-32), these findings were the bases for concluding that Amoco terminated its commercialization efforts, the conclusion was a legitimate exercise of the Panel's powers. Accordingly, Paragraph II.1b of the Award does not warrant vacation or modification of the Award.

vii. Paragraph II.1c

Amoco does not argue that this paragraph warrants vacation under *§ 10* or modification under *§ 11*, or that it is in "manifest disregard of the law."

B. Paragraph I

This paragraph of the Award ordered Amoco to pay Iogen $ 2,000,000 in damages. (Pet. Ex. A at 1.) Amoco challenges this award of monetary damages on the grounds that it is not supported by the facts [*30] in the record of the arbitration. (Amoco's Mem. at 38-44.) "In the absence of any indication that an award was made in manifest disregard of the law, courts will not look beyond a lump sum award in an attempt to analyze the reasoning processes of the arbitrators." *Concourse Beauty School, Inc. v. Polakov, 685 F. Supp. 1311, 1320 (S.D.N.Y. 1988)* (citing *Kurt Orban Co. v. Angeles Metal Systems, 573 F.2d 739, 740 (2d Cir. 1978))*. The arbitrators are not required to disclose the calculations they made in determining a monetary award. *Id.* (citing *Koch Oil, S.A. v. Transocean Gulf Oil Co., 751 F.2d 551, 554 (2d Cir. 1985))*. If a basis for the arbitrators' monetary award can be inferred from the facts, the award should be confirmed. *Id.*

The Court concludes that the evidence in the record provides a basis for the award of damages. Iogen introduced evidence indicating that Amoco had improperly disclosed proprietary information to third parties on six occasions. Iogen also introduced evidence that it charged C$ 250,000 per study for studies resulting in the disclosure of comparable information. The six improper disclosures thus allegedly [*31] resulted in damages of C$ 1,500,000. Using a then-current rate of exchange, Iogen calculated damages of $ 1,009,760. Doubled under section 4 of the Illinois Trade Secrets Act (the "ITSA"), *765 Ill. Comp. Stat. Ann. 1065/4* (West 2001), this came to $ 2,019,520. (Iogen's Reply Ex. H at 106-108.) Given that the damages were originally calculated in Canadian dollars and then converted to U.S. dollars, the Panel could have rounded the damages to $ 2,000,000 to account for fluctuating exchange rates.

Amoco argues that the six improper disclosures did not occur and that the C$ 250,000 figure is an inappropriate measure of any disclosure's value. (Amoco's Mem. at 40-41.) Whether the six improper disclosures occurred was a question of fact for the Panel. Amoco has presented no basis for the Court to alter any findings the Panel may have made on that question: Similarly, it was up to the Panel to determine if Iogen's studies were really worth C$ 250,000, or if those studies were comparable to the six improper disclosures. There is no basis for the Court to disturb any findings made by the Panel on these issues.

Amoco also objects to any application of the ITSA, claiming that Iogen did not [*32] make a claim for violation of the ITSA. (Amoco's Mem. at 41.) It is true that Iogen's statement of issues and requested relief does not specifically mention the ITSA. (Iogen's Reply Ex. D.) However, an ITSA claim was arguably raised by Iogen's statement of issues to the Panel. A claim under the ITSA requires that information was (i) secret, (ii) misappropriated, and (iii) used in the defendant's business. *Southwest Whey, Inc. v. Nutrition 101, Inc., 117 F. Supp. 2d 770, 775-76 (C.D. Ill. 2000)*. Misappropriation under the ITSA may occur when a trade secret is disclosed or used without consent by a person who is not the secret's owner and who knew that the trade secret was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. *765 Ill. Comp. Stat. Ann. 1065/2(b)* (West 2001). Iogen asserted a claim for "Amoco's Breach of Confidentiality Obligations." (Iogen's Reply Ex. D at 6.) In this claim, Iogen alleged that Amoco had disclosed proprietary information to other companies for purposes inconsistent with, or contrary to, its obligations to keep that information confidential. (*Id.* at 6-7.) This raises issues of breach of contract, [*33] but also might have been read as alleging the three elements of an ITSA claim. The claim of proprietary information was arguably an allegation of a trade secret. The claim that Amoco provided the proprietary information to other companies, in violation of Amoco's confidentiality obligations, was arguably an allegation that Iogen's trade secrets were disclosed without consent by Amoco, which knew it was supposed to keep those secrets secret. The claim that Amoco provided valuable proprietary information to other companies was arguably an allegation that Amoco used Iogen's trade secrets in Amoco's business. Moreover, Iogen's request for damages was not limited to breach of contractual confidentiality obligations. Iogen requested monetary relief, in an amount to be determined, for harms "including but not limited to" Amoco's disclosure of proprietary information in violation of the parties' contracts. (*Id.* at 11.) Iogen also sought "such other and further monetary relief as the circumstances warrant." (*Id.* at 12.) Since the contract was to be governed by Illinois law, Amoco was arguably on notice that the ITSA might apply. *See M & C Corp. v. Erwin Behr GmbH & Co., 87 F.3d 844, 849 (6th Cir. 1996)* [*34] (where contract was governed by Michigan law, party to arbitration should have known of potential relevance of Michigan statute). Lastly, in its post-hearing memorandum, Iogen specifically requested double damages under the ITSA. (Iogen's Reply Ex. H at 108.) Thus, the Panel may have concluded that Iogen properly invoked the ITSA.

Even if the Panel was wrong in drawing any such conclusion, that is not a basis for vacating the Award as a whole or Paragraph I in particular. This Court may not vacate an arbitrator's award due to an error of law. *Bobker, 808 F.2d at 933*. And Amoco has not shown that any application of the ITSA was in manifest disregard of the law. In a submission to the Panel, Amoco cited authority for the proposition that a claim not submitted to the arbitrator may not be considered. (Iogen's Reply Ex. K at 117.) Amoco did not, however, cite authority concerning whether a claim has or has not been submitted to the arbitrator. Absent evidence of an explicit, well defined, clearly applicable standard that the Panel knew of and ignored, the Panel's acceptance of an implied ITSA claim may not be vacated as in manifest disregard of the law. *See Bobker, 808 F.2d at 933*. [*35] Thus, even if the Panel was incorrect in applying the ITSA, the Court cannot vacate the resulting damage award of $ 2,000,000.

Moreover, even if the Panel applied the ITSA in manifest disregard of the law, a basis for the second $ 1,000,000 of damages can be inferred from other evidence that Iogen put before the Panel. In fact, other evidence could provide a basis for the entire $ 2,000,000. For example, Iogen introduced evidence that Amoco withheld information worth $ 471,221.81. (Iogen's Reply Ex. H at 108-09.) Iogen also introduced an expert report stating, in part, that Amoco's improper sublicensing of certain technology to the "Gridley Project" cost Iogen $ 14,900,000. This figure had two components: a $ 5,400,000 license for one technology and a $ 9,500,000 license for a second technology. (Arbitration Proceedings Ex. CX286 at 5-6.) Amoco argued that the Gridley Project did not use any Iogen technology. (*E.g.* Iogen's Reply Ex. J at 116.) This was a factual question for the Panel; it could have concluded that some or all of Iogen's technology was licensed and used. Amoco also argued that Iogen's expert had miscalculated the royalty rates for the licenses. (*Id.* at 117.) [*36] It is possible that the Panel heeded Amoco's argument and reduced the royalty rates (or the royalty rate, if the Panel found only one Iogen technology in use) by some fraction to arrive at part or all of the $ 2,000,000 figure.

Amoco cites *Clemons v. Dean Witter Reynolds, Inc., 708 F. Supp. 62 (S.D.N.Y. 1989)* for the proposition that an award that is only a fraction of the requested damages

is without factual support. In that case, the plaintiff sought to vacate a $ 50,000 award in its favor on a claim of $ 900,000. The court concluded that the facts identified by the parties did not support the particular award in that case, and remanded to the arbitrators for an explanation as to how the damages were calculated. *Id. at 64*. This Court does not know what evidence was introduced in the arbitration in *Clemons*; however, the Court has reviewed the evidence put before the Panel in this action and believes it could provide a basis for an award of $ 2,000,000. Moreover, it is well established that arbitrators may legitimately award a fraction of the damages requested by the claimant, provided that they do not violate *9 U.S.C. § 10* [*37] or *§ 11*. *See, e.g., Bobker, 808 F.2d 930* (upholding arbitration award of $ 12,500 where plaintiff had sought $ 23,000); *United States ex rel. Skip Kirchdorfer, Inc. v. Aegis/Zublin Joint Venture, 869 F. Supp. 387, 392 (E.D. Va. 1994)* (confirming award "that was less than half" of amount plaintiffs requested); *Polakov, 685 F. Supp. at 1320* (refusing to vacate award of $ 106,625.50 where party had requested $ 135,000). Thus, it is possible that the Panel awarded damages based on evidence of improper disclosures of information, based on evidence of improper licensing, based on withheld information, or based on some combination of the three. Accordingly, the Court concludes that a basis for the damages awarded by the Panel can be inferred from the evidence. Paragraph I of the Award does not warrant vacation or modification of the Award.

C. Paragraph II.2

i. Paragraph II.2(a)

This paragraph of the Award provides that Amoco shall provide Iogen with samples of a genetically engineered organism created at Purdue University, on the terms set forth in Exhibit A to the Award. (Pet. Ex. A at 4.) Amoco objects to this paragraph on the grounds [*38] that it supposedly contradicts the terms of the contract in issue. Paragraph 5(b) of the First Modification Agreement provides, in relevant part, that, "AMOCO will provide IOGEN . . . [a] royalty-free right and license, to the extent that right to grant such license is secured by AMOCO, to make, have made, use, and sell products using the results of research . . . conducted by third parties under Third Party Agreements . . . ." (Arbitration Proceedings Ex. CX8 at 7.) Amoco argues that because its agreement with Purdue University does not allow it to grant royalty-free licenses, Amoco need not grant Iogen such a license. (Amoco's Mem. at 33-36.) Iogen argues, however, that Amoco can grant a royalty-free license consistent with its agreement with Purdue University. Iogen argues that Amoco can grant a license to Iogen, and that Amoco could pay the royalties to Purdue University on Iogen's behalf. As such, Iogen claims, Amoco can effectively provide a royalty-free license, and must do so under the terms of the First Modification Agreement. (Iogen's Reply Mem. at 37-39.) Iogen also argues that Paragraph 5(a) of the First Modification Agreement requires Amoco to provide Iogen with "[a] [*39] quarterly comprehensive review of research, including access to organisms, available to Amoco." (*Id.* (quoting Arbitration Proceedings Ex. CX8 at 7).) Iogen provided testimony that such access was to be royalty-free. (*Id. at 38*; Iogen's Reply Ex. H at 81-84, 96-97.) The Panel could accept Iogen's construction of either part of Paragraph 5 of the First Modification Agreement. Finding for Iogen under Paragraph 5(a) or 5(b) would at least arguably construe or apply the contract in issue. The Court may not vacate such an application or construction, even if it is wrong (an issue the Court need not decide). Accordingly, Paragraph II.2(a) of the Award does not warrant vacation or modification of the Award.

ii. Paragraph II.2(b)

Amoco does not argue that this paragraph warrants vacation under *§ 10* or modification under *§ 11*, or that it is in "manifest disregard of the law."

D. Paragraph II.3

This paragraph of the Award enjoins Amoco, and those acting in concert with it, from engaging in certain activities with respect to the information or intellectual property that was the subject of the contracts between Amoco and Iogen. Amoco argues that this relief violates the language of [*40] Paragraph 11.1 of the 1992 Agreement. (Amoco's Mem. at 36-38.) Amoco is correct that an arbitrator cannot grant relief that violates the terms of the parties' contract. *Leed Architectural Prods. v. United Steelworkers of America, Local 6674, 916 F.2d 63 (2d Cir. 1990)* (arbitrator could not order change in wages where collective bargaining agreement stated that any change in wages must be negotiated by the parties).

Iogen asserts that Amoco waived this argument by not making it to the arbitrators. Iogen is correct that a party waives an argument when it could have raised the argument before the arbitrators but did not. *See York Research Corp. v. Landgarten, 927 F.2d 119, 121-23 (2d Cir. 1991)*; *Ashraf, 14 F. Supp. 2d at 467*; *New York Hotel and Motel Trades Council v. Hotel St. George, 988 F. Supp. 770, 778-79 (S.D.N.Y. 1998)*. Amoco argues that it could not previously have raised the argument it now makes under Paragraph 11.1 of the 1992 Agreement because Amoco did not know what the Award would say until it was issued. (Reply Brief in Further Support of Resp't BP Amoco Corp.'s Cross-Mot. to Vacate Arbitration Award [*41] ("Amoco's Reply Brief") at 20 n.22.) Amoco's argument is disingenuous. After the hearing, Amoco and Iogen simultaneously submitted memoranda

Case 1:08-cv-00706   Document 45-8   Filed 03/31/2008   Page 11 of 14

Page 10
2001 U.S. Dist. LEXIS 2822, *

to the Panel. (Iogen's Mem. at 11.) Iogen's post-hearing memorandum discussed, among other things, the relief that Iogen wanted the panel to grant. Included in the requested relief was the injunctive relief later embodied in Paragraph II.3 of the Award. (Iogen's Reply Ex. H at 101-104.) Along with its memorandum, Iogen submitted a proposed award of arbitrators. That proposed award contained a provision substantially identical to Paragraph II.3 of the Award. (Iogen's Reply Ex. H.) After the post-hearing memoranda were submitted, Amoco and Iogen simultaneously submitted reply memoranda. (Iogen's Mem. at 11.) Amoco's reply memorandum is 163 pages long. (Iogen's Reply Ex. K.) Amoco devoted 48 of those 163 pages to attacking Iogen's requested relief. (*Id. at 115-162*.) Amoco devoted approximately two and a half pages to a general discussion of injunctive relief. (*Id. at 126-128*.) Amoco devoted approximately one page to a specific discussion of the Iogen proposal that became Paragraph II.3(a) of the Award. (*Id. at 149-150*.) Amoco devoted [*42] approximately half a page to a specific discussion of the Iogen proposal that became Paragraph II.3(b) of the Award. (*Id. at 151*.) In all of those pages, Amoco never saw fit to raise the argument it now makes based upon Paragraph 11.1 of the 1992 Agreement. Since Amoco had ample opportunity to make this argument, but did not do so, Amoco has waived its Section 11.1 argument. *See York Research Corp, 927 F.2d at 121-23*; *Ashraf, 14 F. Supp. 2d at 467*; *Hotel St. George, 988 F. Supp. at 778-79*. Accordingly, Paragraph II.3 of the Award does not warrant vacation or modification of the Award.

E. Paragraph II.4 and Paragraph III

Paragraph II.4 awards Iogen its attorneys' fees and expenses, not including expert witness fees. (Pet. Ex. A at 5.) Paragraph III of the award provides that Amoco shall bear the compensation and expenses of the Panel, and so must repay Iogen for the half of those costs that Iogen paid during the arbitration. (Pet. Ex. A at 6.) Amoco challenges both of these paragraphs on the grounds that they allegedly contradict the terms of the contracts between Amoco and Iogen. According to Amoco, only the "prevailing party" [*43] may be awarded its attorneys' fees and expenses or the compensation and expenses of the Arbitrators. Since Iogen did not prevail on many issues, it cannot be the "prevailing party," Amoco argues. (Amoco's Mem. at 44-47.) Iogen contends that it is the "prevailing party" because it has prevailed on most of the significant issues. (Iogen's Reply Mem. at 46.)

It is undisputed that the 1992 Agreement is governed by Illinois law. (Arbitration Proceedings Ex. CX4 at 40-41.) Under Illinois law, parties to a contract may agree that the party who prevails in a litigation or arbitration arising out of the contract shall be awarded its attorneys' fees. Such contractual provisions must be strictly construed by a court, which must determine the parties' intention. *See Jackson v. Hammer, 274 Ill. App. 3d 59, 653 N.E.2d 809, 817, 210 Ill. Dec. 614 (Ill. App. Ct. 1995)*. Here the parties' intention is unclear. The last sentence of the arbitration provision of the 1992 Agreement simply states that "attorneys' fees and expenses may be payable to the prevailing Party in such arbitration in the discretion of the arbitrators." (Arbitration Proceedings Ex. CX4 at 48.) In the absence of further [*44] direction from the parties, Illinois courts have held that a party may be considered the prevailing party where it (i) is successful on any significant issue in the action and (ii) achieves some benefit in bringing suit, receives a judgment in its favor, or obtains an affirmative recovery. *Jackson, 653 N.E.2d at 818* (citing *Grossinger Motorcorp, Inc. v. American Nat'l Bank & Trust Co., 240 Ill. App. 3d 737, 607 N.E.2d 1337, 1348, 180 Ill. Dec. 824 (Ill. App. Ct. 1992)*); *see also Kel-Keef Enterprises, Inc. v. Quality Components Corp., 316 Ill. App. 3d 998, 738 N.E.2d 524, 541, 250 Ill. Dec. 308 (Ill. App. Ct. 2000)* (quoting *Grossinger*). Indeed, this is the standard Amoco cited to the Panel in its response to Iogen's post-hearing memorandum. (Iogen's Reply Ex. K at 162 (citing *Jackson*).)

Under the Illinois standard, it was within the Panel's discretion to award Iogen its attorneys' fees and the arbitrators' expenses. Iogen prevailed on several significant issues relating to its breach of contract theory. The Panel found, among other things, that Amoco was not contractually entitled to extend its sublicensing rights to its Affiliates, [*45] that Swan 2 was not an Affiliate of Amoco, and that Amoco's extension of sublicensing rights to Swan 2 violated the contracts between Amoco and Iogen and was void *ab initio*. (Pet. Ex. A at 2.) Iogen also received a benefit from the arbitration in that the Panel awarded it $ 2,000,000 in damages. (Pet. Ex. A at 1.) Accordingly, under the applicable law, Iogen was the prevailing party in the arbitration. Paragraphs II.4 and III do not, therefore, warrant vacation or modification of the Award.

Amoco argues, in the alternative, that even if Iogen is the prevailing party and entitled to attorneys' fees, those fees should be reduced. Amoco argues for the reduction on the theory that Iogen prevailed on only a fraction of its claims and desired remedies, and therefore deserves only a fraction of its attorneys' fees. Amoco also claims that some of Iogen's attorneys' fees and costs are unreasonable. (Amoco's Mem. at 47-50.) Iogen argues that there is no basis under the Federal Arbitration Act for modifying the award of attorneys' fees. (Iogen's Reply Mem. at 47-48.) The 1992 Agreement states that the award of attorneys' fees is within the arbitrator's dis-

cretion. (Arbitration Proceedings [*46] Ex. CX4 at 48.) None of the cases cited by Amoco stand for the proposition that a court may modify an arbitrator's award of attorneys' fees for any reasons other than those set forth in 9 U.S.C. § 11. In fact, none of those cases concern arbitrations at all. And Amoco has not established "an evident material miscalculation of figures," 9 U.S.C. § 11(a), an award upon a matter not submitted, 9 U.S.C. § 11(b), nor an imperfection in form. 9 U.S.C. § 11(c). Accordingly, Amoco has not established a legal basis upon which the Court may modify the Panel's discretionary award of attorneys' fees set forth in Paragraph II.4 of the Award.

F. Paragraph IV

Amoco does not argue that this paragraph warrants vacation under § 10 or modification under § 11, or that it is in "manifest disregard of the law."

As set forth above, Amoco has failed to carry its burden with respect to vacating or modifying Paragraphs I through IV of the Award. The Court "must" confirm Paragraphs I through IV of the Award because neither Amoco nor the Intervenors have established that those paragraphs should be vacated pursuant to 9 U.S.C. § 10, [*47] or modified pursuant to 9 U.S.C. § 11. See 9 U.S.C. § 9.

VI. PARAGRAPH V OF THE AWARD

Paragraph V of the Award states that:

> It is the intention of the Panel that the relief awarded herein against Amoco and its [sic] costs and expenses incurred by Amoco in this proceeding not be subject to indemnification. Accordingly, Amoco shall be prohibited from and barred from pursuing in any manner any indemnification from or recourse against any third party, including without limitation Swan 2, or its chief executive, Robert Walker ("Walker"), with respect to any relief awarded herein, monetary or otherwise, or any costs or expenses (including without limitation attorneys' fees) incurred by Amoco in connection with these proceedings, or from any reprisal of any nature against Swan 2 or Walker, and further, shall indemnify and hold harmless Walker and Swan 2 and its officers, directors, employees and agents from and against any and all claims, damages, liability costs or expenses (including without limitation attorneys' fees), whether asserted in the future or previously incurred, based upon or arising out of or incurred in connection [*48] with this Arbitration proceeding or any relief awarded herein. Amoco shall promptly provide Walker a complete copy of this Award (including without limitation this paragraph) and of any judgment subsequently entered hereon.

This paragraph rewrites an agreement between Amoco and Swan 2, which provided that Swan 2 would indemnify Amoco. (Arbitration Proceedings Ex. CX13 at AM079860-65.) It is beyond dispute that neither Amoco nor Iogen requested that the Panel construe the contracts between Amoco and Swan 2. Neither Amoco nor Iogen requested any relief of this nature. (Iogen's Mem. at 14 n.12; Amoco's Mem. at 21.)

The Intervenors effectively concede that this relief is beyond the scope of the Panel's authority (Intervenors' Mem. at 5-6), but contend that all of the relief concerning Swan 2 is so "intertwined" with the rest of the Award that the Award must be vacated or confirmed in its entirety. (Id. at 6-11.) As discussed above, other than in Paragraph V of the Award, the Court rejects the Intervenors' contention that the Panel adjudicated the Intervenors' rights, except to the extent that those rights were derivative of Amoco's and adjudication was necessary to resolve [*49] the conflict between Amoco and Iogen. Accordingly, the Intervenors' position is not convincing with respect to Paragraph V, which is not intertwined with any other part of the Award.

Iogen, after initially taking the position that it had not requested this relief (Iogen's Mem. at 14 n. 12), argued that the Panel had the authority to award any relief that it deemed just and proper. (Iogen's Reply Mem. at 21-24.) Iogen's argument relies upon Rule 43 of the AAA Commercial Arbitration Rules, which provides, in relevant part, that the arbitrator may grant "any remedy or relief that the arbitrator deems just and equitable and *within the scope of the agreement of the parties*." (Id. at 23 (emphasis added).) There is nothing in the agreements between Amoco and Iogen providing for the relief in Paragraph V of the Award. There is nothing in the agreements restricting either party's ability to obtain insurance or indemnification. Nor do the agreements between Amoco and Iogen provide for any type of punitive measures against the party losing an arbitration. Accordingly, the Court sees no basis upon which to conclude that Paragraph V of the Award was "within the scope of the agreement of [*50] the parties." Iogen's argument based upon AAA Rule 43 therefore fails. Iogen also attempts to make an argument based upon public policy

Case 1:08-cv-00706    Document 45-8    Filed 03/31/2008    Page 13 of 14

Page 12
2001 U.S. Dist. LEXIS 2822, *

(Iogen's Reply Mem. at 22-23), but cites no Illinois authority supporting such an argument.

It appears, as argued by Amoco, that the Panel has reached out and rewritten a contract not put before it by the parties to the arbitration. In doing so, the Panel exceeded its powers within the meaning of *9 U.S.C. § 10(a)(4)*. Under *§ 10*, then, the Court "may make an order vacating the award." The Court need not, however, vacate the entire Award due to this one improper paragraph. It is established law in this Circuit that a court may vacate part of an award where the part that exceeds the Panel's authority is readily severable. For example, in *Orion Shipping*, the Second Circuit affirmed the district court's vacation of a single section of an arbitration award. In that case, Orion had contracted with a Panamanian corporation. The latter's American parent guaranteed its obligations under the contract with Orion. After an alleged breach by the Panamanian company, Orion initiated arbitration proceedings. The arbitrator found the Panamanian [*51] company liable to Orion. The arbitrator then went on to rule that the American parent company was liable if the Panamanian company defaulted on the arbitration award, even though the parent company was not a party to the arbitration and its contractual obligations had not been put before the arbitrator. In an action under the Federal Arbitration Act, the district court refused to vacate the award against the Panamanian company. The court did, however, vacate that portion of the arbitration concerning the American parent company. The court ruled that the arbitrator lacked the authority to determine the rights of a company that was not a party to the arbitration under contract provisions not before the arbitrator. *312 F.2d at 299-301*. *Orion Shipping* remains good law in this Circuit, and courts have continued to vacate portions of arbitration awards that decide issues not submitted to the arbitrator and that are severable from the rest of the awards. *See, e.g., Phil Neto Constr. Co. v. Local Union 964, 1995 U.S. Dist. LEXIS 2922*, No. 94 Civ. 8700 (LAK), 1995 WL 105285, at *2 (S.D.N.Y. Mar. 13, 1995); *Fiat S.p.A. v. Ministry of Finance and Planning, 1989 U.S. Dist. LEXIS 11995*, No. 88 Civ. 6639 (SWK), 1989 WL 122891, [*52] at *4-*5 (S.D.N.Y. Oct. 12, 1989) (citing *Orion Shipping*). Accordingly, the Court concludes that, because Paragraph V unnecessarily determines the rights of a non-party under a contract not before the panel, but is easily severable from the remainder of the Award, Paragraph V should be vacated pursuant to *9 U.S.C. § 10(a)(4)* and the doctrine of partial vacation established in *Orion Shipping*.

## VII. ATTORNEYS' FEES AND COSTS FOR THIS ACTION

Iogen seeks its attorneys' fees and costs for this action pursuant to *28 U.S.C. § 1927*. *Section 1927* provides that "any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The Second Circuit has held that "*section 1927* authorizes the imposition of sanctions when there is a clear showing of bad faith on the part of an attorney. As with sanctions imposed pursuant to a court's inherent power, in the *§ 1927* context, bad faith may be inferred [*53] only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999)* (internal quotations and citations omitted). Although the Court has rejected most of Amoco's arguments, they are not so lacking in merit that the Court is compelled to conclude they were raised in bad faith. Accordingly, Iogen's request for attorneys' fees and costs for this action is denied.

## VIII. CONCLUSION

For the reasons set forth above: Iogen's petition to confirm the arbitration is granted to the extent that Paragraphs I through IV of the Award are confirmed, but denied to the extent that Paragraph V of the Award is vacated; Iogen's request for attorneys' fees pursuant to *28 U.S.C. § 1927* is denied; Amoco's cross-petition to vacate or modify the Award is granted to the extent that Paragraph V of the Award is vacated, but denied to the extent that Paragraphs I through IV of the Award are confirmed; the Intervenors' motion to intervene is granted; and the Intervenors' motion to confirm or vacate the Award [*54] in its entirety is denied. The Clerk of the Court is directed to enter judgment consistent with this Opinion and Order and with *9 U.S.C. § 13*, and to close the file in this action.

SO ORDERED.

ALLEN G. SCHWARTZ, U.S.D.J.

Dated: New York, New York

March 16, 2001

```
                                                                    108RBK
********** Print Completed **********

Time of Request: Monday, March 31, 2008   16:56:35 EST

Print Number:    1861:84319309
Number of Lines: 658
Number of Pages:




















Send To:  CUNNINGHAM, EILEEN
          NIXON PEABODY LLP
          437 MADISON AVE FL 24
          NEW YORK, NY 10022-7001
```