108RBK

**Time of Request:** Monday, March 31, 2008   16:57:50 EST
**Client ID/Project Name:** 043843/000013
**Number of Lines:** 255
**Job Number:**        1823:84319535

Research Information

**Service:**   LEXSEE(R) Feature
**Print Request:** Current Document: 1
**Source:** Get by LEXSEE(R)
**Search Terms:** 2004 U.S. Dist. LEXIS 15772

**Send to:**   CUNNINGHAM, EILEEN
         NIXON PEABODY LLP
         437 MADISON AVE FL 24
         NEW YORK, NY 10022-7001

LEXSEE 2004 U.S. DIST. LEXIS 15772

IAN SCHAAD, Petitioner, -v- SUSQUEHANNA CAPITAL GROUP, SUSQUE-
HANNA FINANCIAL GROUP LLP, SUSQUEHANNA INTERNATIONAL
GROUP and SUSQUEHANNA IRELAND LIMITED, Respondents.

No. 03 Civ. 9902 (LTS)(DFE)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

2004 U.S. Dist. LEXIS 15772

August 10, 2004, Decided
August 10, 2004, Filed

**SUBSEQUENT HISTORY:** Reconsideration denied by *Schaad v. Susquehanna Capital Group, 2005 U.S. Dist. LEXIS 3314 (S.D.N.Y., Mar. 3, 2005)*

**DISPOSITION:** [*1] Petitioner's petition to confirm arbitration award granted in part and denied in part. Respondents' petition to vacate arbitration award granted in part and denied in part.

**COUNSEL:** For Ian R. Schaad, Petitioner: Joseph E. Gasperetti, The Law Offices of Joseph E. Gasperetti, P.C., New York, NY.

For Susquehanna Capital Group, Susquehanna Financial Group LLP, Susquehanna International Group, Susquehanna Ireland Limited, Respondents: Jarrett Michael Behar, Wolf, Block, Schorr, Solis-Cohen, New York, NY.

**JUDGES:** LAURA TAYLOR SWAIN, United States District Judge.

**OPINION BY:** LAURA TAYLOR SWAIN

**OPINION**

**MEMORANDUM OPINION AND ORDER**

Petitioner Ian Schaad ("Petitioner") moves, pursuant to section 9 of the Federal Arbitration Act ("FAA"), *9 U.S.C. § 9*, to confirm an arbitration award dated November 7, 2003 (the "Award"). Respondents Susquehanna Capital Group, Susquehanna Financial Group LLP, Susquehanna International Group, and Susquehanna Ireland Limited (collectively, "Respondents") request that the Court deny Schaad's petition and vacate the Award to the [*2] extent that it grants declaratory relief against Susquehanna International Group and Susquehanna Ireland Limited and to the extent that it awards attorneys' fees to Petitioner.

The Court has considered thoroughly all submissions and arguments made in connection with this motion. For the following reasons, Schaad's petition to confirm the Award is granted in part and denied in part, Respondents' petition to vacate the Award to the extent it awards declaratory relief against Susquehanna International Group and Susquehanna Ireland Limited is granted, and Respondents' petition to vacate the attorneys' fee component of the Award is denied.

**BACKGROUND**

Susquehanna International Group ("SIG") (formerly known as Susquehanna Partners, GP) is a parent company with subsidiaries Susquehanna Capital Group ("SCG"), Susquehanna Financial Group LLP ("SFG"), and Susquehanna Ireland Limited ("SIL"). Petitioner was employed as a securities trader at various times by one or more Respondent companies between 1994 and November 2001. Petitioner was at all times during his employment registered with the National Association of Securities Dealers ("NASD"). In May 1999, Petitioner executed a document [*3] commonly known as a Form U-4 (titled "Uniform Application for Securities Industry Regulation or Transfer"). (Affidavit of Joseph E. Gasperetti, Ex. 10.) The Form U-4 listed SFG as Petitioner's "Firm" and SCG as a "Broker-Dealer" under common ownership or control with SFG. (Id.) The Form U-4 contained an arbitration clause requiring that all disputes between Petitioner and SCG and SFG be resolved in NASD arbitration. (Id.) Neither SIG nor SIL was a signatory to the Form U-4, nor was either referenced in the document. (Id.)

On October 13, 1999 and November 23, 1999, Petitioner entered into agreements with SIG in connection with a two-year position in Ireland with Susquehanna Ireland Limited to begin in January 2000. (Gasperetti Aff., Exs. A, B.) The November 23 agreement was in the form of a memorandum entitled "Seconding Relationship," which outlined "the terms of [Petitioner's] relationship with [SIG] and its affiliated entities." (Gasperetti Aff., Ex. A.) The memorandum provided in paragraph 16: "Our relationship will be governed by the laws of Pennsylvania and all disputes will be adjudicated in courts located in Montgomery County, Pennsylvania." (Id.)

In Spring [*4] 2002, after Petitioner's employment with SIG and its affiliated entities had terminated, the accounting firm of KPMG sent Petitioner a statement, on behalf of SIG, claiming that Petitioner owed SIG a "tax equalization" payment of $ 133,849 in connection with Petitioner's employment in Ireland. (Resps.' Mem. in Support of Petition to Vacate, Ex. C.) SIG claimed that, since Petitioner had paid less in taxes as a consequence of his foreign employment than he would have paid had he been employed in the United States, Petitioner was required to forfeit his tax savings pursuant to a tax equalization policy included in the terms of the Seconding Relationship. (Id.)

Petitioner rejected the payment demand from SIG and, in October 2002, filed an arbitration claim with the NASD, naming SIG, SIL, SCG, and SFG as respondents. (Gasperetti Aff., Ex.1.) In his Statement of Claim, Petitioner referred to Respondents collectively as "Susquehanna," without distinguishing between his employment in Ireland with SIL in 2000 and 2001 and his employment and registration prior to that time in the United States with SCG and SFG. (Id.) Petitioner sought relief in the form of: (1) a declaration that the [*5] tax equalization policy was null and void as to him and that therefore he was not indebted to "Susquehanna"; (2) a declaration that the November 23, 1999, agreement barred Respondents' claim for payment; and (3) an award of costs and attorneys' fees incurred in prosecuting the arbitration proceedings. (Id.) SCG and SFG filed an answer to Petitioner's Statement of Claim with the NASD, requesting dismissal of the claim and an award of costs and attorneys' fees incurred in defense of the claim. (Gasperetti Aff., Ex. 2.)

On October 21, 2002, the NASD mailed Petitioner's Statement of Claim to SIG and SIL, along with a letter acknowledging that SIG and SIL had never agreed to arbitrate any dispute with Petitioner. (Petition to Vacate, Ex. B.) The letter stated, "Since you have not signed an agreement to arbitrate, your submission to arbitration must be voluntary." (Id.) SIG and SIL declined to participate in the arbitration. (Petition to Vacate, Ex. E.)

Instead, SIG filed a complaint against Petitioner in the Pennsylvania Court of Common Pleas for Montgomery County pursuant to the forum selection clause of the November 23, 1999, Seconding Relationship agreement. (Petition to Vacate [*6] P9.) In the Pennsylvania court proceeding, which is currently stayed pending the outcome of the instant petitions, SIG sought from Petitioner the $ 133,849 allegedly owed to SIG pursuant to its tax equalization policy. (Id.) Petitioner, in turn, commenced a special proceeding in Pennsylvania court seeking to compel SIG and SIL to arbitrate the dispute before the NASD. The NASD panel, however, conducted the arbitration hearing and entered its Award before the Pennsylvania court could rule on Petitioner's motion, and Petitioner's application to compel arbitration was subsequently dismissed as moot.

On December 10, 2002, SCG and SFG sent a letter to the NASD arguing that, because SIG and SIL were neither parties to the arbitration agreement nor to the arbitration itself, and because SCG and SFC had never claimed that Petitioner owed them any money under the tax equalization policy, the arbitration would be a meaningless exercise, and that the panel therefore should decline to make the arbitration facility available to Petitioner. (Petition to Vacate, Ex. G.) By letter dated February 5, 2003, the NASD declined the request of SCG and SFG, reasoning that:

> The agreement which [*7] was signed by the claimant Ian Schaad, involves Susquehanna Partners and its affiliated companies. The member firms, Susquehanna Capital Group and Susquehanna Financial Group are affiliates and members of the NASD and are required to arbitrate.

(Petition to Vacate, Ex. C.)

Prior to evidentiary hearings in the NASD arbitration, SCG and SFG moved the panel for an order dismissing the Statement of Claim. By letter dated September 25, 2003, the panel denied the motion to dismiss and ordered "[SIG] and its affiliates, in particular, [SCG] and [SFG], to turn over to Mr. Schaad's counsel full financial statements for the years 2000 and 2001." (Gasperetti Aff., Ex. 4.) On October 13, 2003, SCG and SFG informed the panel that they would comply partially with the discovery order by producing 2000 and 2001 financials for SCG and SFG, but they would not further contest Petitioner's claim nor would they attend the arbitration hearing because they had no stake it the outcome of the arbitration. (Gasperetti Aff., Ex. 6.)

On October 15, 2003, the NASD panel conducted the arbitration hearing, at which SCG, SFG, SIG, and

Case 1:08-cv-00706   Document 45-11   Filed 03/31/2008   Page 4 of 7

Page 3
2004 U.S. Dist. LEXIS 15772, *

SIL did not appear. The panel entered an Award listing all four [*8] corporations as "Respondents." (Petition to Confirm, Ex. A.) The "Case Information" section of the Award recited that Respondents SCG and SFG had been "properly served with the Statement of Claim" and that the matter would "proceed without said Respondents present." (Id.) The same section further recited that "Respondents SIG and SIL are not members of the NASD, and by letter dated December 10, 2002 refused to submit to the NASD's jurisdiction." (Id.)

The Award granted Petitioner's request for declaratory relief, stating:

> a. That pursuant to the October 13, 1999 Agreement, Claimant is not indebted to Respondents as Respondents allege, since the alleged Tax Equalization Policy is null and void as to Claimant who never agreed to that policy; and
>
> b. That the November 23, 1999 Agreement between the parties bars Respondents' present claim for payment.

(Id.) The Award also granted Petitioner's request for attorneys' fees, but only against SCG and SFG. The Award states: "Respondents SCG and SFG are liable and shall pay to Claimant $ 48,172.09 as attorneys' fees pursuant to Rule 10215 of the NASD Code of Arbitration Procedure." (Id.)

**DISCUSSION**

[*9] "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997)* (quoting *Folkways Music Publishers v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993))*. In deciding a motion to confirm an arbitration award, a district court's review is limited to examining whether "the arbitrator's award falls within the four corners of the dispute as submitted to him." *Fiat v. Ministry of Fin. and Planning of Republic of Suriname, 1989 U.S. Dist. LEXIS 11995, No. 88 Civ. 6639, 1989 WL 122891, at *4 (S.D.N.Y. Oct. 12, 1989)* (quoting *Orion Shipping and Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299, 300 (2d Cir. 1963))*. A district court must grant a petition to confirm that is properly brought unless one of the bases for vacating or modifying the award is established. *First Interregional Equity Corp. v. Haughton, 842 F. Supp. 105, 108 (S.D.N.Y. 1994)* (citing *Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987))*. [*10] Under *9 U.S.C. § 10*, a district court may vacate an award where (1) the award was procured by corruption or fraud, (2) there was evident partiality or corruption on the part of the arbitrators, (3) the arbitrators wrongly refused to postpone the hearing despite sufficient cause having been shown, or the arbitrators refused to hear material evidence or in some other way engaged in misbehavior that prejudiced one or more parties, or (4) the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *9 U.S.C.A. § 10(a)(1)-(4) (West 2004)*.

In addition to the limited statutory grounds noted above, "the Second Circuit has held that a court may vacate an arbitration award when the arbitrators acted 'in manifest disregard of the law.'" *Techcapital Corp. v. Amoco Corp., 2001 U.S. Dist. LEXIS 2822, No. 99 Civ. 5093, 2001 WL 267010, at *4 (S.D.N.Y. Mar. 19, 2001)* (citing *Merrill Lynch, Pierce, Fenner & Smith v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986))*. The Second Circuit has cautioned that "the reach of the manifest disregard doctrine is 'severely limited. [*11] '" *DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d. Cir. 1997)* (citations omitted). Manifest disregard "is more than a simple error in law or a failure by the arbitrators to understand or apply it; and, it is more than an erroneous interpretation of the law." *Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003)*. "The error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." *Merrill Lynch, 808 F.2d at 933*. "A party seeking vacatur bears the burden of proving that the arbitrators were fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it." *Duferco Int'l Steel Trading, 333 F.3d at 389*. Even if that party proves that the arbitrators' decision is based on a manifest error of fact or law, a court must nevertheless confirm the award if legitimate grounds for the decision can be inferred from the facts of the case. See *Willemijn Houdstermaatschappij, 103 F.3d at 13*. An award must be upheld on "even a barely [*12] colorable justification for the outcome reached." *Standard Microsystems, 103 F.3d at 13*.

*Declaratory Relief Against SIG and SIL*

Respondents argue that the Award should be vacated to the extent that it grants declaratory relief against SIG and SIL because the arbitrators exceeded their powers in determining the obligations of corporations that were clearly not parties to the arbitration proceeding. It is undisputed that SIG and SIL were not signatories to the May 1999 arbitration agreement and that they never agreed to submit to the NASD's jurisdiction. Petitioner contends, however, that SIG and SIL should be estopped

Case 1:08-cv-00706    Document 45-11    Filed 03/31/2008    Page 5 of 7

Page 4
2004 U.S. Dist. LEXIS 15772, *

from arguing that they are not bound by the Award since they "accepted and profited from all of the benefits" of the May 1999 agreement. (Pet.'s Mem. in Support of Petition to Confirm ("Pet.'s Memo") at 20.)

"Arbitration is contractual by nature -- 'a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'" *Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir. 1995)* (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 4 L. Ed. 2d 1409, 80 S. Ct. 1347 (1960)).* [*13] "Absent an express agreement to arbitrate, [the Second Circuit] has recognized only 'limited theories upon which [it] is willing to enforce an arbitration agreement against a nonsignatory.'" *Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 131 (2d Cir. 2003)* (quoting *Thomson, 64 F.3d at 780*). These five theories are: 1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel. Id.

Under the theory of estoppel, a corporation "knowingly exploiting [an] agreement [with an arbitration clause can be] estopped from avoiding arbitration despite having never signed the agreement." *Thomson, 64 F.3d at 778*. The Second Circuit has held that "where a company 'knowingly accepted the benefits' of an agreement with an arbitration clause, even without signing the agreement, that company may be bound by the arbitration clause." *MAG Portfolio Consult v. Merlin Biomed Group, 268 F.3d 58, 61 (2d Cir. 2001)* (quoting *Deloitte Noraudit A/S v. Deloitte Haskins & Sells, 9 F.3d 1060, 1064 (2d Cir. 1993))*. "The benefits must be direct -- which is to say, [*14] flowing directly from the agreement." Id. (citing *Thomson, 64 F.3d at 779*). An indirect benefit flowing from the agreement, where the "nonsignatory exploits the contractual relation of the parties to an agreement but does not exploit (and thereby assume) the agreement itself," is not a sufficient basis for estopping a nonsignatory from avoiding arbitration.*Id.*

Petitioner argues that SIG and SIL directly benefited "in at least ten ways" from the May 1999 agreement containing the arbitration clause. (Pet.'s Memo at 23.) Most of the "ten ways" listed by Petitioner, however, are not benefits flowing from the May 1999 agreement, and none is the type of "direct benefit" required for the application of the estoppel theory in this context. For example, Petitioner claims as SIG and SIL's eighth benefit that: "The November 23, 1999 employment agreement was expressly entered into between Schaad, on the one hand, and SIG 'and its affiliated entities,' on the other hand." (Id.) Petitioner has provided the Court with no basis for finding that the terms of the November 1999 agreement mentioned here were, in any way, a benefit derived, even indirectly, from the May 1999 [*15] agreement with SCG and SFG. Similarly, Petitioner claims that SIG and SIL benefited by "SIG retaining the authority to 'place' Schaad within SIG and its affiliates," but Petitioner fails to demonstrate any nexus between this alleged benefit and the May 1999 agreement. (Id.)

Petitioner's list of "ten ways" is not, in fact, a list of benefits at all, but rather a series of factual allegations demonstrating the close relationship between SIG and its corporate affiliates. While such a factual proffer might be relevant to a determination that SFG and SCG are merely "alter egos" of SIG and that SIG is therefore bound by the arbitration agreement, Petitioner has not articulated such an argument. Moreover, the Second Circuit has made it clear that a motion to confirm an arbitration award is not the proper time for a District Court to "pierce the corporate veil." *Orion Shipping and Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299, 301 (2d Cir. 1963)*. A determination of the identities of parties bound by an arbitration agreement is one that is properly made *before* arbitration in the context of a motion to compel arbitration pursuant to *section 4* of the FAA. [*16] *Am. Indus. Carriers, Inc. v. Maywood Maritime Ltd., 1992 U.S. Dist. LEXIS 4783, No. 90 Civ. 6426, 1992 WL 84536, at *3 (S.D.N.Y. Apr. 10, 1992)*.

SIG and SIL were not signatories to the arbitration agreement. Moreover, when invited to participate voluntarily in the arbitration, SIG and SIL declined to do so. SIG and SIL were clearly not parties to the arbitration proceeding. Therefore the Court finds that the arbitrators exceeded their powers in determining the obligations of SIG and SIL, and Respondents' petition to vacate the Award to the extent it awards declaratory relief against SIG and SIL is granted.

*Attorneys' Fees*

Respondents argue that the attorneys' fee component of the Award must be vacated because the arbitrators exceeded their authority in granting an award that is inconsistent with the NASD rules governing the arbitration. The Award states that SCG and SFG are liable to Petitioner for $ 48,172.09 in attorneys' fees "pursuant to Rule 10215 of the NASD Code of Arbitration Procedure." (Petition to Confirm, Ex. A.) Rule 10215 states: "The arbitrator(s) shall have the authority to provide for reasonable attorneys' fee reimbursement, in whole or in part, as part of the remedy [*17] in accordance with applicable law." (Petition to Vacate, Ex. F.) Respondents point out that Rule 10215 is part of a series of rules governing the arbitration of employment discrimination claims. Rule 10210, entitled "Statutory Employment Discrimination Claims," refers to the "Rule 10210 Series" of rules that follow it and states that the "Series shall apply only to disputes that include a claim alleging employment discrimination, including a sexual harassment claim, in violation of statute." (Id.) Respondents

Case 1:08-cv-00706   Document 45-11   Filed 03/31/2008   Page 6 of 7

Page 5
2004 U.S. Dist. LEXIS 15772, *

contend that, because Rule 10215 empowered the arbitrators to Award attorneys' fees only in the context of an employment discrimination claim, the arbitrators exceeded their powers by awarding attorneys' fees outside that limited context.

Respondents' argument is without merit. It is uncontested that the arbitration clause contained in Petitioner's Form U-4 provided that any arbitration as between Petitioner and SCG or SFG was to be governed by the rules of the NASD. (Petition to Vacate, Ex. A.) Rule 10324 of the NASD Code of Arbitration Procedures provides that:

> The arbitrators shall be empowered to interpret and determine the applicability of all provisions under [*18] this Code and to take appropriate action to obtain compliance with any ruling by the arbitrator(s). Such interpretations and actions to obtain compliance shall be final and binding upon the parties.

NASD Manual 10324 (as amended in 1992). Thus, by agreeing to arbitrate before the NASD, Respondents SCG and SFG agreed that the arbitration panel would be empowered to interpret and apply the NASD Code of Arbitration Procedure as the arbitrators saw fit. That the arbitrators' interpretation of the Code appears to be erroneous is of no consequence since SFG and SCG agreed that such interpretation would be "final and binding" when they entered into the arbitration agreement. [1]

> 1   Respondents have made the additional argument that the arbitrators exceeded their powers by including in the amount of the Award a reimbursement for costs incurred by Petitioner in connection with his defense of the Pennsylvania litigation instituted by SIG. The record before the Court is insufficient, however, to support a determination on this issue. The alleged allocation of attorneys' fees is not apparent from the face of the Award, nor does the Court have before it a copy of the record from the arbitration proceeding to determine how the arbitrators calculated the amount of the Award.

[*19]   Respondents also contend the arbitrators acted in "manifest disregard of the law" by awarding attorneys' fees to Petitioner. This argument, too, is without merit. The manifest disregard standard is a narrow exception permitting reversal only when arbitrators ignore clearly-governing legal principles. See *DiRussa, 121 F.3d at 821*. The Second Circuit has recognized an arbitrator's authority to grant legal fees absent a specific prohibition so long as the parties have agreed to submit the issue to arbitration. See *Synergy Gas Co. v. Sasso, 853 F.2d 59, 64 (2d Cir. 1988)*. By requesting costs and attorneys' fees in their submissions to the NASD prior to the arbitration proceeding, Petitioner and Respondents submitted the issue to the arbitrators, who were thus empowered to decide it. Accordingly, Respondents' petition to vacate the attorneys' free component of the Award is denied.

**CONCLUSION**

For the foregoing reasons, the petition to confirm the Award is granted in part and denied in part, the petition to vacate the Award to the extent it awards declaratory relief against Susquehanna International Group and Susquehanna Ireland Limited is granted, [*20] and the petition to vacate the attorneys' fee component of the Award is denied.

The Arbitration Award dated November 7, 2003, is confirmed as against SFG and SCG only, and judgment shall be entered thereon to that extent.

SO ORDERED.

Dated: New York, New York

August 10, 2004

LAURA TAYLOR SWAIN

United States District Judge

108RBK

********** Print Completed **********

Time of Request: Monday, March 31, 2008  16:57:50 EST

Print Number:    1823:84319535
Number of Lines: 255
Number of Pages:

Send To:  CUNNINGHAM, EILEEN
          NIXON PEABODY LLP
          437 MADISON AVE FL 24
          NEW YORK, NY 10022-7001