```
                                                                    108RBK
Time of Request: Monday, March 31, 2008   16:54:27 EST
Client ID/Project Name: 043843/000013
Number of Lines: 306
Job Number:     1861:84318919

Research Information

Service:   LEXSEE(R) Feature
Print Request: Current Document: 1
Source: Get by LEXSEE(R)
Search Terms: 2005 U.S. Dist. LEXIS 44247
```

```
Send to:   CUNNINGHAM, EILEEN
           NIXON PEABODY LLP
           437 MADISON AVE FL 24
           NEW YORK, NY 10022-7001
```

LEXSEE 2005 U.S. DIST. LEXIS 44247

**JOSEPH HENRY and MICHAEL MALINKY, suing on behalf of all participants in, and beneficiaries of, the CommutAir Employee Stock Ownership Plan, similarly situated and in the right of the CommutAir Employee Stock Ownership Plan, Plaintiffs, -vs- ANTONY von ELBE; JOHN ARTHUR SULLIVAN, JR.; and ERNEST JAMES DROLLETTE, and U.S. TRUST COMPANY OF CALIFORNIA, N.A., Defendants.**

1:04-CV-201

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF NEW YORK

*2005 U.S. Dist. LEXIS 44247*

**November 22, 2005, Decided**

**COUNSEL:** [*1] TERENCE J. DEVINE, ESQ., DeGRAFF, FOY, KUNZ & DEVINE, LLP, Attorneys for Plaintiffs, Albany, New York.

GARY D. GREENWALD, ESQ., ANNE MARIE LA BUE, ESQ., SHAYNE & GREENWALD CO., L.P.A., Attorneys for Plaintiffs, Columbus, Ohio.

EDWARD R. CONAN, ESQ., SUZANNE O. GALBATO, ESQ., BOND, SCHOENECK & KING, PLLC, Attorneys for individual Defendants, Syracuse, New York.

EDWARD A. SCALLET, ESQ., ROBERT P. GALLAGHER, ESQ., LARS C. GOLUMBIC, ESQ., GROOM LAW GROUP CHARTERED, Attorneys for Defendant U.S. Trust Company of California, N.A., Washington, D.C.

**JUDGES:** David N. Hurd, United States District Judge.

**OPINION BY:** David N. Hurd

**OPINION**

*MEMORANDUM DECISION and ORDER*

**I.** *INTRODUCTION*

In January 2004, plaintiffs commenced an action against defendants Antony von Elbe, John Arthur Sullivan, Jr., and Ernest James Drollette (collectively, "sellers") in the New York State Supreme Court, Clinton County. Defendants removed the action to federal court based on diversity jurisdiction. (Docket No. 1.) Plaintiffs' First Amended Complaint added U.S. Trust Company of California, N.A. ("US Trust" or "defendant") as a nominal defendant. (Docket No. 15.) On July 29, 2005, Magistrate Judge [*2] Randolf F. Treece granted plaintiffs leave to amend the First Amended Complaint. (Docket No. 51.) Accordingly, plaintiffs filed a Second Amended Complaint on August 12, 2005 adding three causes of action against the formally nominal defendant US Trust. (Docket No. 52.) On August 25, 2005, the only claim in the First Amended Complaint (Count *One* in the Second Amended Complaint) and the only claim against the sellers was dismissed in a Memorandum Decision and Order. (Docket No. 57.)

Pursuant to *Fed. R. Civ. P. 72(a)*, US Trust appealed the Magistrate Judge's Order granting plaintiffs leave to amend the First Amended Complaint to add Counts *Two* through *Four*. Plaintiffs opposed. Oral argument was heard on September 30, 2005, in Utica, New York. Decision was reserved.

**II.** *FACTS*

The facts and circumstances of this case have previously been recounted in detail as the subject of numerous motions and a bench trial in the related case *Henry I.* See *Henry v. Champlain Enters., Inc., 334 F. Supp 2d 252 (N.D.N.Y. 2004)* and *Henry v. Champlain Enters., Inc., 288 F. Supp. 2d 202 (N.D.N.Y. 2003)*. The [*3] parties' familiarity with those underlying facts and procedural history is presumed. Only the facts necessary to explain this ruling will be set forth.

In 1994, sellers owned Champlain Enterprises, Inc., d/b/a CommutAir ("CommutAir"), a regional commuter air service. In an effort to raise capital and expand an

employee profit-sharing program they established an employee pension benefit plan known as the CommutAir Employee Stock Ownership Plan ("ESOP"). [1] The arrangement involved ESOP acquiring CommutAir stock.

> 1  ESOP is the real plaintiff.

The CommutAir Employee Stock Ownership Trust ("ESOT") was established for the purposes of buying and holding the CommutAir stock. US Trust served as the independent trustee for the ESOT. The ESOT was formed pursuant to the CommutAir ESOP Trust Agreement ("Trust Agreement"), which also delineates the role of US Trust as its trustee. (Docket No. 52, Second Amended Complaint, Ex. F.) Article 6 of the agreement reviews the compensation, rights and indemnities of the trustee. [*4] It provides that

> [i]n the event that the Trustee is named as a defendant in a lawsuit . . . the Trustee shall be entitled to receive on a current basis the indemnity payments provided in this section. If, however, the final judgment entered in the lawsuit . . .holds that the Trustee is guilty of negligence or willful misconduct with respect to one or more counts against it, the Trustee shall refund the portion of the indemnity payments that are reasonably allocable with respect to those counts.

*Id.* at 17, Section 6.3.

US Trust determined to purchase the shares of CommutAir for $ 60 million. On March 15, 1994, the transaction was memorialized in a Stock Purchase Agreement ("SPA") between CommuntAir, the sellers, and US Trust. Section 5.7 of the SPA provides:

> 5.7 *Adjustment of Purchase Price.* In the event of a final determination by the Internal Revenue Service, the Department of Labor, a court of competent jurisdiction or otherwise that the fair market value of the shares of ESOP Convertible Preferred Stock as of the Closing is less than the purchase Price, the Sellers, jointly and severally, shall pay to the Trust an amount equal to the difference [*5] between the Purchase Prices and said fair market value for the such shares of ESOP Convertible Preferred Stock, plus interest at a reasonable rate form [sic.] the date of Closing to the date of such payment. Such payment may be made either in cash, or in the form of shares, valued in accordance with their actual fair market value as of the Closing.

(Second Amended Compl., Ex A. 16.)

It was determined after a bench trial, in which all parties participated, that the actual value of the stock purchased was $ 52.25 million. *Henry v. Champlain Enters., 334 F. Supp. 2d 252, 274 (N.D.N.Y. 2004)*. [2] US Trust was found liable for breaching its fiduciary duty in managing the stock purchase and ordered to pay ESOP $ 7.75 million plus interest as the amount of damages sustained by ESOP as a result of US Trust's overpayment for the CommutAir stock.

> 2  US Trust filed a timely appeal of this decision which remains pending at the Second Circuit. US Trust appeals the decision, the judgment awarding damages, and the summary judgment order underlying the decision.

[*6] While that action was pending, in a letter dated February 6, 2004, the sellers and US Trust addressed the overpayment issue. The sellers agreed to pay US Trust in the form of stock, as permitted under Section 5.7. The arrangement was explained as follows:

> Without in any way conceding or admitting the original $ 60 million purchase price was other than fair and adequate consideration for the convertible preferred shares or that CEI's settlement with the IRS constituted a 'final determination' within the meaning of § 5.7 of the SPA, the shareholders will abide by the court's statement concerning the final determination issue and honor the terms of § 5.7 of the SPA by paying the $ 9,000,000 'difference in the form of 117,028 share of CEI stock, valued 'in accordance with their actual fair market value as of the Closing.'

(Second Amended Complaint. Ex. D.) US Trust representative, Norman Goldberg, in apparent agreement with its terms, signed the letter which relates in some detail the method by which the amount of stock required would be determined.

Plaintiffs claim that the exchange of stock was simply inadequate: "The ESOP received at best $ 197,261.37 in value - mere [*7] pennies on the dollar- on its contractual entitlement" to a return on the overpayment and interest. (Second Amended Compl. P 33.)

Case 1:08-cv-00706   Document 45-13   Filed 03/31/2008   Page 4 of 8

Page 3
2005 U.S. Dist. LEXIS 44247, *

## III. DISCUSSION

### A. *Review of Magistrate Judge's Orders Standard*

The standard for review of a magistrate judge's decision on non-dispositive matters is whether the magistrate judge's findings are "clearly erroneous or contrary to law." *28 U.S.C. § 636(b)(1)(A)*; *Fed.R.Civ.P. 72(a)*. "[T]hat 'reasonable minds may differ on the wisdom of granting a party's motion' does not mean that the decision is clearly erroneous or contrary to law." *Moss v. Enlarged City Sch. Dist., 166 F. Supp. 2d 668, 670 (N.D.N.Y. 2001)* (quoting *Pemrick v. Stracher, Civ. Act. No. 90-CV-849, 1992 U.S. Dist. LEXIS 3729 (N.D.N.Y. March 27, 1992))*. Clear error may be found "when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Stetz v. Reeher Enters., Inc., 70 F.Supp.2d 119, 120-21 (N.D.N.Y.1999)* (quoting *Vandewalker v. Quandt's Food Serv. Distribs., Inc., 934 F. Supp. 42, 48 (N.D.N.Y.1996))*; [*8] *United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)*.

### B. *Excused Delay*

As plaintiffs sought to amend their First Amended Complaint beyond an already-extended deadline, the defendant argues that plaintiffs' motion for leave to amend should have been denied on account of undue delay. *Fed. R. Civ. P. 15(a)* provides that leave to amend "shall be freely given when justice so requires." "The Supreme Court has made clear that "this mandate is to be heeded," and that leave to amend should be permitted in the absence of an apparent or declared reason, such as undue delay, bad faith, or undue prejudice to the opposing party." *Tokio Marine & Fire Ins. Co. v. Employers Ins. of Wausau, 786 F.2d 101, 103 (2d Cir. 1986)* (quoting *Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962))*.

The magistrate judge considered both the diligence of the plaintiffs and their reasons for requesting an extension to amend and excused the delay for good cause. He determined that at least part of delay was attributable to the defendant; there was no bad faith on the part of the plaintiffs; and there would be little [*9] resulting prejudice from permitting the amendment. (Order 7.) Though defendant presents a reasonable interpretation of this matter, one that may very well have been adopted, it has not demonstrated a clear error of fact or law. The Magistrate's Judge's Order will not be disturbed on this ground.

### C. *Futility*

The defendant also opposed plaintiffs' motion for leave to amend on grounds of futility as to each of the three new counts. *See Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990)* ("where . . . there is no merit in the proposed amendments, leave to amend should be denied.") "An amendment to a pleading will be futile if a proposed claim could not withstand a motion to dismiss pursuant to *Rule 12(b)(6)*." *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 88 (2d Cir. 2002)* (citing *Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir.1991)*.

The magistrate judge found merit in each of the three proposed counts. (Order 18.) However, for the reasons explained below, the claims are legally insufficient and on that ground, the permission to amend will be reversed.

#### 1. *Count Two: Breached* [*10] *Fiduciary Duty*

In Count *Two* plaintiffs allege that the defendant breached its fiduciary duty in permitting the ESOP to engage in a transaction prohibited by ERISA. They claim that US Trust's agreement with the sellers, beginning in early 2004, for reimbursement of the Section 5.7 overpayment was simply financially inadequate. (Second Amended Compl. PP 35, 36.)

In *Henry I* it was pointed out that while courts have great discretion in fashioning remedies for breach of fiduciary duties, to avoid summary judgment, plaintiffs must allege "at least some loss that is causally connected to the breach." *Henry v. Champlain Enters., 288 F. Supp. 2d 202, 230 (N.D.N.Y. 2003)* (citing *Diduck v. Kaszycki & Sons Contractors, Inc., 874 F.2d 912, 917 (2d Cir. 1989))*. Plaintiffs have not alleged any specific loss on account of the breach of duty alleged in Count *Two*. Whether the defendant breached its duty by not seeking reimbursement, as alleged in *Henry I*, or by permitting an improper reimbursement as alleged here, the loss would be the same - the difference in the value of the stock and the amount paid. Plaintiffs have been already been awarded [*11] full payment with interest against US Trust in satisfaction of Section 5.7 of the SPA.

Plaintiffs admit they cannot demonstrate a separate loss: "Although there is currently a judgment against US Trust for $ 7.75 million plus interest, that judgment has not yet been satisfied and, therefore, a measure of loss currently exists with respect to Count Two." (Docket No. 58, Pls.'s Opp. Mem. p. 17, n. 5.) Plaintiffs' remedy in case of an unpaid judgment is an enforcement proceeding.

The potential of an unpaid judgment is not sufficient to demonstrate a loss as to the breach of duty alleged in Count *Two*. As Count *Two* fails to state a claim upon which relief could be granted, amending the complaint to add the claim is futile.

#### 2. *Count Three: Recoupment of Indemnity Payments*

Case 1:08-cv-00706    Document 45-13    Filed 03/31/2008    Page 5 of 8

Page 4
2005 U.S. Dist. LEXIS 44247, *

"Pursuant to Section 6.3 of the CommutAir Employee Stock Ownership Trust Agreement, US Trust has been receiving indemnity payments from CommutAir for the legal fees and expenses it has incurred since the inception of the CommutAir Litigation in an amount which exceeds $ 1.25 million." (Second Amended Compl. P 39.) Thus, in Count Three, plaintiffs allege that pursuant to Section 6.3 of the Trust Agreement, [*12] US Trust must return to CommutAir the indemnity payments it received to cover its legal defense in *Henry I* because it was found to have committed acts of negligence. *Id.* at P 40; *see Henry v. Champlain Enters., 334 F. Supp. 2d 252, 274 (N.D.N.Y. 2004)*.

The issue here is one of standing. US Trust argues that in order for plaintiffs to bring a derivative claim they must meet the pleading requirements of *Fed R. Civ. P. 23.1* ("*Rule 23.1*"). "*Rule 23.1* is a rule of pleading that creates a federal standard as to the specificity of facts alleged with regard to efforts made to urge a corporation's directors to bring the action in question. However, the adequacy of those efforts is to be determined by state law." *Burghart v. Landau, 821 F. Supp. 173, 178 (S.D.N.Y. 1993)*. Plaintiff did not file a demand on either ESOP or CommutAir before bringing this action. They claim that compliance with *Rule 23.1* is not required and they are excused from filing because ERISA provides an independent basis for standing

The magistrate judge cited *ERISA §§ 502(a)(2)* and *(3)* and noted that both provisions provided that a " [*13] **beneficiary** of a plan can bring a civil action to enjoin an act which would violate the terms of the plan or obtain other equitable relief." (Order 13 (with emphasis.)) However, it is not clear that the plaintiffs' beneficiary status alone should relieve them of compliance with *Rule 23.1*. No case law has been cited to that effect and there is persuasive case law to the contrary.

In *Diduck v. Kaszycki & Sons Contractors, Inc,* in an action to recover unpaid contributions to a plan, the court held that "[a] suit for unpaid contributions under *§ 502(g)(2)* is brought 'for or on behalf of a plan' and may only be maintained by an individual beneficiary derivatively... *Rule 23.1* is therefore applicable to derivative actions under *§ 502(g)(2)*." *974 F.2d 270, 287 (2d Cir. 1992)*; *see McGinnis v. International Brotherhood of Teamsters, etc., 1991 U.S. Dist. LEXIS 5033 (D. Ill. 1991)* (a plan participant may sue to collect delinquent contributions as a derivative action on behalf of the fund only if the participant first makes demand on the fund). More recently, in *Coan v. Kaufman,* a beneficiary brought a claim pursuant to *ERISA § 502 (a)(2)* alleging [*14] mishandling of a 401K plan. *349 F. Supp. 2d 271, 274 (D. Conn. 2004)*. The court carefully considered recent developments in the law and held that, under Second Circuit case law, *Rule 23.1* applies to a beneficiary's derivative suit. *Id. at 275*.

While the just-cited cases were not decided in the context of recoupment of indemnity payments under *§ 502(a)(2)* and *(3)*, they are analogous. Count *Three* is clearly brought on behalf of ESOP's interest in CommutAir and constitutes a derivative claim. Plaintiffs describe the claim as belonging to ESOP as "CommutAir paid the legal fees." (Second. Amended Compl. Ex. G.) As plaintiffs are plan beneficiaries who bring a claim on behalf of their plan they must comply with *Rule 23.1* by pleading that they met the demand requirement. This conclusion is not inconsistent with *ERISA § 502* and falls within the concerns addressed in both *Rule 23.1* and the principles of trust law:

> The true purpose of the demand requirement is to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs. Whether a corporation should bring a lawsuit is a business decision, and the directors [*15] are, under the laws of every state, responsible for the conduct of the corporation's business, including the decision to litigate. A shareholder demand that the corporation bring litigation is thus a method by which the appropriate corporate authority may be consulted about litigation to be brought in the name of the corporation.

*RCM Sec. Fund, Inc. v. Stanton, 928 F.2d 1318, 1326 (2d Cir. 1991)* (citations and quotations omitted).

Any argument that demand should be excused on grounds of futility is rejected. The assertion of futility requires a demonstration that CommutAir was unwilling to seek redress. CommutAir made a demand on US Trust for the indemnity payments at issue. (Docket No. 36, Scallott Dec. Ex. 3, Dec. 21, 2004 Letter.) A finding of futility would be logically inconsistent with the fact that CommutAir actually took the action that the beneficiaries desired. *See* (Docket No. 57, August 25, 2005 Memorandum-Decision and Order p. 10.)

Plaintiffs' derivative claim brought pursuant to *ERISA § 502 (a)(2)* and *(3)* is subject to the pleading requirements of *Fed. R. Civ. P. 23.1*. The plaintiffs did not plead [*16] that they filed a proper demand. Therefore, plaintiffs have failed to state a claim upon which relief may be granted. Thus, an amendment to add the claim in Count *Three* would be futile.

**3. Count Four: Faithless Servant Claim**

Under the faithless servant doctrine, "[o]ne who owes a duty of fidelity to a principal and who is faithless in the performance of his services is generally disentitled to recover his compensation, whether commissions or salary." *Phansalkar v. Andersen Weinroth & Co., L.P., 344 F.3d 184, 200 (2d Cir. 2003)* (citing *Feiger v. Iral Jewelry, Ltd., 41 N.Y.2d 928, 928, 363 N.E.2d 350, 394 N.Y.S.2d 626 (1977))*. In Count *Four* plaintiffs assert that they are entitled to recover compensation paid to US Trust during the period of its "infidelity and faithlessness" during the course of events that led to *Henry I* and this case. (Second Amended Compl. P 50.) Plaintiffs allege:

> Following the "final determination" on October 28, 1999, the ESOP's claims against the sellers were ripe under section 5.7 of the Stock Purchase Agreement.. . .Not only did US Trust not pursue the section 5.7 claims on behalf of ESOP, but US Trust actively opposed the [*17] efforts of plaintiffs to seek relief under section 5.7.

*Id.* PP 46, 47. This portion of the Second Amended Complaint addresses conduct that was at issue in *Henry I. See Henry v. Champlain Enters., 288 F. Supp. 2d 202, 227 (D.N.Y. 2003)* ("The third primary basis for Count One . . . failing to pursue payment from the sellers after the IRS settlement was a breach of fiduciary duty").

Res judicata precludes "second suits involving "the same 'claim' -- or 'nucleus of operative fact -- as the first suit." *Interoceanica Corp. v. Sound Pilots, 107 F.3d 86, 90 (2d Cir. 1997)*. To the extent that plaintiffs' faithless servant claim is founded on conduct related to the failure of US Trust to seek redress after the 1999 IRS "final determination" it is a claim asserted simply as an alternative remedy against US Trust that could have, and should have, been brought in *Henry I. St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000)*. The claim, in Count *Four*, is based on the same allegations brought by the same parties, on the same facts and the claim was determined on the merits.

Plaintiffs' argument that a faithless servant claim does [*18] not arise until there is a judicial finding of a breach is rejected. That proposition appears untenable in practice and plaintiffs do not cite case law for the argument.

However, Count *Four* does contain allegations of a subsequent breach of fiduciary duty.

> US Trust thereafter agreed, as alleged in Count Two above, that sellers had satisfied their obligation under Section 5.7 through a de minimis transfer of stock and US Trust attempted to use the stock transfer as a set-off to the damages awarded in the CommutAir litigation.

(Second Amended Complaint P 48.) This portion clearly relates to the 2004 stock transaction. Plaintiffs argue to save Count *Four* from the doctrine of res judicata by articulating a narrow view of the pleading which focuses on *this* allegation of a subsequent breach.

Plaintiffs point out that the magistrate judge held that res judicata does not apply to bar claims in second suits based on separate and subsequent transactions. He specifically noted that "[t]he events set forth in the . . .Second Amended Complaint could not have occurred until after the District Court found US Trust did not engage in a good faith duty to investigate [*19] the merits of the transaction." (Order 17.) Plaintiffs argue:

> While Plaintiffs certainly view US Trust's faithlessness as going back to the time if the IRS final determination in October of 1999, the event, that spurred the assertion of Count Four in conjunction with Count Two was US Trust's Feb. 6, 2004 agreement that Sellers had satisfied their obligations under Section 5.7 through the de minimis transfer of substantially devalued CommutAir stock to the ESOP.

(Docket 58, Pls.'s Opp. Mem. 16.)

The faithless servant claim in Count *Four* as related to the 2004 stock transfer is not barred by res judicata and is viable. This portion of Count *Four* could not, of course, have been brought in *Henry I* because it had not occurred. Thereafter plaintiffs were unaware of the transaction. However, this now requires a determination as to whether Count *Four* has been narrowed beyond the scope of federal court jurisdiction.

"The lack of jurisdiction is so fundamental a defect that [*Fed. R.Civ. P. 12(h)(3)*] permits a judge to recognize it sua sponte at any time." *Bernstein v. Universal Pictures, Inc., 517 F.2d 976, 979 (2d Cir. 1975)*. [*20] This state law claim is brought pursuant to *28 U.S.C. § 1332*, which provides federal courts with jurisdiction over diversity actions wherein the amount in controversy exceeds $ 75,000. It appears from responses by the parties at oral argument that the amount in controversy related to the alleged 2004 breach of fiduciary duty does not meet the $ 75,000 threshold.

Case 1:08-cv-00706　　Document 45-13　　Filed 03/31/2008　　Page 7 of 8

Page 6
2005 U.S. Dist. LEXIS 44247, *

Counsel for US Trust explained that it was paid approximately $ 50,000 or $ 60,000 a year to administer the plan. Plaintiffs' counsel never disputed this amount. When asked about compensation owed in relation to the alleged 2004 breach, defendant's counsel responded that "there may be ten or fifteen thousand dollars of fees at issue. . . certainly less than twenty thousand dollars." (Tr. of Oral Argument.) Plaintiffs' counsel was unable, without discovery, to estimate an amount of the fees owed because he was unsure of the exact date of US Trust's resignation.

Giving plaintiffs the benefit of the longest term of infidelity as it is alleged in the complaint - from February 2004, when the letter agreement was signed, through October of 2004, when plaintiff alleges that the defendant resigned - the seven-month [*21] term would involve at the most $ 40,000 considering an annual compensation of $ 60,000. This is simply insufficient to meet the amount in controversy requirement of *28 U.S.C § 1332* and subject matter jurisdiction is lacking. Considering this jurisdictional defect in Count *Four,* amending the complaint to add the claim is futile.

### IV. *CONCLUSION*

Plaintiffs have not demonstrated a loss as required to maintain the breach of fiduciary duty claim alleged in Count *Two*. Plaintiffs failed to plead that they made a proper demand as required to support their derivative claim for the return of indemnity payments under Count *Three*. Res judicata bars most of plaintiffs' claim in Count *Four*. Plaintiffs' viable faithless servant claim in Count *Four* is insufficient to meet the amount in controversy requirement of *28 U.S.C. § 1332*. Thus, amending the First Amended Complaint to add these three claims would be futile. The magistrate's judge's order will be reversed.

As previously noted, the only claim in the First Amended Complaint (Count *One* of the Second Amended Complaint) has been previously dismissed. (Docket No. [*22] 57.) The defendants are entitled to a judgment of dismissal.

Therefore it is

ORDERED that

1. The Magistrate's Order Granting Leave to File a Second Amended Complaint is REVERSED;

2. The motion to amend the First Amended Complaint is DENIED; and

3. The Second Amended Complaint is VACATED;

The Clerk is directed to enter a judgment dismissing the First Amended Complaint and close the file.

IT IS SO ORDERED.

David N. Hurd

United States District Judge

Dated: November 22, 2005

Utica, New York.

108RBK

********** Print Completed **********

Time of Request: Monday, March 31, 2008   16:54:27 EST

Print Number:    1861:84318919
Number of Lines: 306
Number of Pages:

Send To:   CUNNINGHAM, EILEEN
           NIXON PEABODY LLP
           437 MADISON AVE FL 24
           NEW YORK, NY 10022-7001