**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

---------------------------------------------------------------- x
                                                                 :
JOSEPH STEVENS & COMPANY, INC.,                                  :
                                                                 :
    Petitioner/Cross-Respondent,                                  :
                                                                 :
    vs.                                                            :    Case No. 08 C 706
                                                                 :
DAVID CIKANEK,                                                   :    Hon. Amy St. Eve
                                                                 :
    Respondent/Cross-Petitioner.                                   :
                                                                 :
---------------------------------------------------------------- X


**DAVID CIKANEK'S OPPOSITION TO JOSEPH STEVENS
& CO., INC.'S APPLICATION TO VACATE ARBITRATION AWARD**

**TABLE OF CONTENTS**

I.   **BACKGROUND**..................................................................................................1-3

II.  **ARGUMENT**........................................................................................................3

    A.  Stevens' Application Is Governed By Seventh, Not Second Circuit, Law.........3-4

    B.  The Standard of Review of Arbitration Awards in this Circuit is Very Limited. 4-5

    C.  Under Seventh Circuit Law, Arbitrators Need Not Explain How Damages Were Calculated and the Failure To Do So is Not Grounds To Set Aside An Award .................5-6

    D.  The Award Was Not In "Manifest Disregard of the Law" .......................... 6-7

    E.  Stevens Waived Its Claim That The Trust Was Not A Party............................. 8

        1.  **The Two Accounts**.......................................................................8
        2.  **Stevens' Answer, Discovery and Motions** ...........................................8-9
        3.  **The First Day of Hearing: Stevens' Objects to Proceeding**............ 9-10
        4.  **Mr. Cikanek's Counsel Responds**.....................................................10
        5.  **The Panel Chair Responds** ............................................................ 10-11
        6.  **Mr. Russo Admits He Knew The Trust Was Making Claims in The Arbitration**....................................................................................... 11-12
        7.  **The Chariman Rules** ..........................................................................12
        8.  **The Issue of Waiver Clearly Was Presented To The Panel**.................12
        9.  **Stevens Did Not Submit Any Law On The Subject of Waiver**...... 12-13

    F.  Stevens' Fundamental Fairness And Acting in Excess of Authority Arguments are Frivolous................................................................................................ 13-14

    G.  Stevens Has Failed To Demonstrate A Basis For Vacatur Under 9 U.S.C. 10 (A)(4) According To The Law Of This Circuit ........................................... 14-15

    H.  Stevens Has Failed To Show Fundamental Unfairness ........................... 15-16

    **CONCLUSION**................................................................................................17

Respondent/Cross-Petitioner David Cikanek ("Mr. Cikanek"), through his attorneys, submits this Opposition to Petitioner/Cross-Respondent Joseph Stevens & Co., Inc.'s ("Stevens") Application to Vacate Arbitration Award ("Application").

## I.   BACKGROUND

Mr. Cikanek, a native and lifelong resident of Chicago, is a retired janitor, in poor health, with a high school education, who was swindled out of almost his entire life savings by the criminal and fraudulent conduct of stockbrokers employed at Stevens. These brokers were ultimately indicted by the Manhattan District Attorney's Office and subsequently pled guilty to securities fraud related crimes.

On April 7, 2006, Mr. Cikanek filed a Statement of Claim with the National Association of Securities Dealers (NASD)[1], thereby initiating an arbitration proceeding against those brokers and their employer Stevens (NASD Case #06-1868) (hereinafter, the "Arbitration"). The Statement of Claim, attached as Exhibit A, asserted numerous causes of action against both the individual brokers and Stevens, as well as a number of theories of damages.[2] Mr. Cikanek also prayed that he be awarded interest, costs, expenses and attorney's fees.

---

[1] The NASD is now known as FINRA (Financial Industry Regulatory Authority) which was formed by a consolidation of the enforcement arm of the New York Stock Exchange, NYSE Regulation, Inc., and the NASD. The merger was approved by the United States Securities and Exchange Commission on July 26, 2007, several months after the award was rendered in the arbitration at issue.

[2] The claims against Stevens included violation of the Illinois Securities Act, fraud, churning, misrepresentation, omissions, unsuitable investment recommendations, unauthorized trading, negligence, negligent hiring, failure to supervise and breach of fiduciary duty.

The Arbitration hearing took place on March 19-23, 2007 at the NASD offices located in Chicago, Illinois. On March 30th, one week following the completion of the hearing, the three-member arbitration panel issued an award in favor of Mr. Cikanek and against Stevens (and others) in the amount of $47,500 in compensatory damages and $166,250 in punitive damages. (A copy of the award is attached as Exhibit B). The arbitrators rendered the award without explaining the basis of their decision.

On April 27, 2007, Stevens filed an application to vacate the award claiming it was in "manifest disregard of the law" as well as violative of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, (the "FAA"). Although the hearing was conducted in Chicago and Mr. Cikanek is a lifelong resident of Illinois who had never set foot in New York, Stevens chose to file the Application in the Southern District of New York. Mr. Cikanek subsequently moved to dismiss for lack of personal jurisdiction or in the alternative transfer venue under 28 U.S.C. § 1404(a). Approximately nine months later, on January 31, 2008, the Court granted Mr. Cikanek's venue motion and transferred the matter to this District. (A copy of the Decision and Order of United States District Court Judge Barbara Jones is attached as Exhibit C). The case was subsequently assigned to this Court.

On March 27, 2008, Mr. Cikanek filed a Cross-Petition seeking an order confirming the award and entering a judgment against Stevens. In addition, on March 31, 2008, at the request of the Court, Stevens refiled its Application. Mr. Cikanek now submits the following in opposition thereto and in support of his Cross-Petition.

## II. ARGUMENT

A.   Stevens' Application Is Governed By Seventh, Not Second Circuit, Law.

Stevens contends that there is "no dispute that the laws of the state of New York are applicable." (Application, p.1).  In fact, just the opposite is true.  Not only does Mr. Cikanek dispute that New York law is applicable, but it is beyond dispute that federal law--as interpreted by the Seventh Circuit--governs this Application.

As noted, the instant Application is based on the FAA, a federal statute.  Thus, the interpretation of that statute is a matter of federal law.  The same is true for interpreting the federally created, nonstatutory ground of "manifest disregard of the law," upon which Stevens heavily relies.  When faced with questions of federal law, it is well settled that the district court should apply the law established by the circuit in which it sits.  *Fossett Corp. v. Gearhart,* 694 F. Supp. 1325, 1328 (N.D. Ill. 1988) ("A federal judge has the obligation to decide issues of federal law correctly, and not according to the interpretation of a court sitting in another circuit").  *See also In Re Korean Air Lines Disaster,* 829 F.2d 1171, 1176 (D.C. Cir. 1987) (Ginsburg, J.)("Binding precedent for all [federal courts] is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit."); *accord*, *Dabertin v. HCR Manor Care, Inc.,* 177 F. Supp. 2d 829 (N.D. Ill. 2001). Accordingly, in so far as this case involves the FAA, this Court should look to Seventh Circuit precedent in interpreting its standards and rendering its decision.

In addition, contrary to Stevens' assertions that Mr. Cikanek is bound by a New York choice-of-law provision, it is clear from the record of the Arbitration hearing that Stevens was

never able to produce anything signed by Mr. Cikanek in which he agreed New York law would govern this dispute. Without that, Steven's argument that New York applies, must perforce fail. Stevens makes a tortured argument that Mr. Cikanek would have had to sign an account agreement to open his account; the account agreement would have had to contain a New York choice of law provision because all of them supposedly did; and thus he had to have agreed to a boilerplate New York choice of law provision.[3] That argument is based on inferences and assumptions and cannot substitute for hard evidence--i.e., a signed account agreement--which Stevens was never able to produce. Moreover, to accept such an argument would only reward Stevens for its sloppy record keeping. In deciding the Application, Stevens cannot expect this Court to go by anything other than the actual evidence before it, not supposition and "maybes" that are unsupported by the record.

B.      The Standard of Review of Arbitration Awards in this Circuit is Very Limited.

In this circuit, review of arbitration awards is so "tightly limited" that a court should only vacate an arbitration award in "very unusual circumstances." *Lee v. McDonald Securities Inc.*, 04 Civ. 2886, 2004 U.S. Dist. LEXIS 19293 at *5 (September 27, 2004) *citing Hasbro, Inc. v. Catalyst USA, Inc.*, 367 F. 3d 689, 691 (7th Cir. 2004) (*quoting First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 115 S. Ct. 1920 (1995). *See also IDS Life Ins. Co. v. Royal Alliance Assocs.,* 266 F.3d 645, 649 ("the grounds for challenging an arbitration award are narrowly limited, reflecting the voluntary contractual nature of

---

[3] Interestingly, the boilerplate choice of law language "any arbitration under this agreement shall be conducted pursuant to the *Federal Arbitration Act* and the laws of the State of New York" would actually support Mr. Cikanek's position that federal law applies.

- 4 -

commercial arbitration."). A disappointed party may not use the federal courts as a *de facto* appellate process to an unfavorable arbitration award, thus frustrating the very foundation of the arbitration process and the deference that Courts have granted arbitrators. *See Baravati v. Josephthal, Lyon & Ross,* 28 F.3d 704 at 706 ("[W]e do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision."). *See also Eljer Mfg., Inc. v. Kowin Development Corp.,* 14 F.3d 1250, 1253-54 (7th Cir. 1994) (Arbitration does not provide a system of 'junior varsity trial courts' offering the losing party complete and rigorous *de novo* review…A restrictive standard of review is necessary to…prevent arbitration from becoming a 'preliminary step to judicial resolution'").

C.  Under Seventh Circuit Law, Arbitrators Need Not Explain How Damages Were Calculated and the Failure To Do So is Not Grounds To Set Aside An Award.

The Seventh Circuit has made clear that there is no duty upon arbitrators to explain the basis for their decisions. *Wise v. Wachovia Securities, LLC,* 248 F.3d 265 (7th Cir. 2006)("Arbitrators have…no duty to explain"). Moreover, "an insufficiency of evidence supporting the decision" does not permit a reviewing court to "disturb the arbitrator's order." *Eljer,* 14 F.3d 1250 at 1253*,* citing *National Wrecking Co. v. International Brotherhood of Teamsters,* 990 F.2d 957 (7th Cir. 1993).

In this case, Steven's sole argument to vacate the award or have it sent back for clarification is that the arbitrators allegedly awarded some portion of the compensatory damages based on losses suffered by the Cikanek Living Trust (the "Trust"), which it claims

was not a proper party to the Arbitration because Mr. Cikanek's submission agreement was purportedly executed by him individually and not as trustee of the Trust. This entire argument hinges on the premise that a portion of the $47,500 compensatory damage award consists of damages for the Trust.[4] The problem for Stevens, however, is that the award is silent as to how the damages were calculated. Nowhere in the award does it state or can it be divined that the compensatory damages included losses from the Trust. Nor did the arbitrators have a duty to explain. In fact, there are a myriad of possibilities as to how the figure was reached.

Mr. Cikanek advanced many theories of damages. He advanced numerous causes of action which have different measures of damages. He sought interest for over six years. He sought reimbursement for costs and expenses including his expert witness fees. He sought attorneys' fees. He sought damages for violation of the Illinois Securities Act. The point is, the award did not explain how the damages were computed, nor did it have to and it is not for Stevens to ask this court to look behind the arbitrators' decision and try to decide how the damages were calculated. Neither this Court nor Mr. Cikanek is required to bear the burden of having to articulate a detailed basis for the award (thus rendering the arbitration panel the "junior varsity" court of which the Seventh Circuit warned).

D.   The Award was not in "Manifest Disregard of the Law."

In its Application, Stevens asks this Court to vacate or remand the Award arguing that it is in "manifest disregard of the law." Although "manifest disregard of the law" is not one

---

[4]   Stevens does not challenge the award of $166,250 in punitive damages.

of the grounds listed in the FAA to vacate an arbitral awards, federal courts, including the Seventh Circuit, have recognized it as a valid nonstatutory ground. *Wise*, *supra* at 267. However, the Seventh Circuit has defined "manifest disregard of the law" extremely narrowly confining it to cases in which the arbitrators "direct the parties to violate the law." *Id., See also George Watts & Son, Inc. v. Tiffany & Co,* 248 F. 3d 577, 580-81 (7th Cir. 2001); *IDS Life Ins. Co. v. Royal Alliance Associates, Inc*, 266 F.3d 645, 650 (7th Cir. 2001); *Cremin v. Merrill Lynch*, 434 F. Supp. 2d 554, 564 (N.D. Ill. 2006). From even cursory review of the Application, it is obvious that this is not such a case.[5]

Nowhere in its Application does Stevens allege nor remotely suggest that the Panel directed the parties to violate the law. Stevens merely argues that the arbitrators acted in manifest disregard of the law by allegedly awarding damages sustained by the Trust. While Mr. Cikanek totally disagrees with that argument (see Section C, *supra*), even were it true, that would not constitute "manifest disregard of the law" as defined in this Circuit.

The *Cremin* decision is instructive in this regard. In that case, in quickly distinguishing the type of contentions raised here by Stevens from those that rise to the level of "manifest disregard of the law," the court stated:

> They [Petitioner] must not be confused with whether the arbitrators' award was correct or even reasonable, since **neither error nor clear error nor even gross error is a ground for vacating an award**. If the district judge is satisfied that the arbitrators resolved the entire dispute and can figure out what the resolution is, he must confirm the award.

---

[5] Tellingly, Stevens does not cite any Seventh Circuit precedent regarding the interpretation of "manifest disregard of the law," apparently recognizing that it cannot meet the narrow standard applied in this Circuit.

*Cremin*, 434 F. Supp. 2d at 556 (emphasis added).

In short, since the arbitrators never directed the parties to violate the law, nor does Stevens even allege that they did. Therefore, the award may not be vacated based on the nonstatutory grounds of "manifest disregard of the law."

E.   <u>Stevens Waived Its Claim that the Trust Was Not a Party.</u>

    1.   **The Two Accounts**

All of Mr. Cikanek's claims related to two accounts at Stevens. Neither of the two accounts was in Mr. Cikanek's individual name. The accounts were (1) Mr. Cikanek's IRA account--an account which Stevens curiously calls "the individual account" in its Memorandum of Law (Account #4A0150601), of which Mr. Cikanek was custodian and (2) The Cikanek Living Trust account (Account #4A0150601), of which he was the trustee. Both accounts were specifically identified in the Statement of Claim. Moreover, the Statement of Claim sought actual damages of $800,000 plus attorney fees, expert fees, interest, lost opportunity damages and punitive damages.

When Mr. Cikanek submitted his claims to arbitration, he signed an NASD form, called a Uniform Submission Agreement. He did not sign in any specific capacity. He simply signed it.

    2.   **Stevens' Answer, Discovery and Motions**

Stevens filed its Statement of Answer (the "Answer") on July 5, 2006. (A copy is attached as Exhibit "D"). The Answer included fourteen affirmative defenses. Nowhere in that Answer, nor in its fourteen affirmative defenses, did Stevens ever raise any issue regarding Mr. Cikanek's alleged deficient submission agreement. Nor did Stevens raise the issue at the Initial Pre-hearing Conference. As to discovery, Stevens produced all documents related to the Trust without any objection. As to any motion to dismiss before the hearing, Stevens made no such motion. Nor did Stevens make *in limine* motion to limit the proof at trial. Instead, Stevens held back until the first day of the Arbitration hearing to raise this issue for the first time.

3.   **The First Day of Hearing: Stevens, Counsel Objects to Going Forward**

On the first day of trial, Martin Russo, the attorney for Stevens, told the panel that the only evidence it could hear was evidence as to losses in the "individual" account--an account that moments later he conceded was actually an IRA account. Mr. Russo, evidently well aware of the risk that he might be viewed as having waived the entire issue, implied that he was surprised by Mr. Cikanek's counsel's opening statement and would have objected immediately to the reference to claims asserted by the Trust, except that it would be impermissible, "and rude and breaks the flow." Mr. Russo stated:

> **MR. RUSSO**: *Before I open, I didn't object during counsel's opening statement because it's not permitted and it's rude and it breaks the flow, but I do object to some of the evidence he's claimed he's going to show you based on the fact that they relate to the Cikanek living trust which does not have a claim in this action…*
> *This action was brought by Mr. Cikanek individually and he does have an individual account that he had at Joseph Stevens which was an IRA…., but the*

- 9 -

> *Cikanek living trust did not bring a claim in this case nor did it sign a submission agreement.*
>
> Hearing Transcript, Stevens' Exhibit Q, pages 16-17

Contrary to the implication that he was surprised by the opening, Russo proceeded to orally cite Illinois cases to the panel.

### 4. Mr. Cikanek's Counsel Responds

The first response of Mr. Sugarman, Mr. Cikanek's Counsel, presented a factual issue. He argued that Mr. Russo had been "well aware" that the trust was "part of this case:"

> *MR. SUGARMAN: First of all, Mr. Chairman and members of the panel, I think <u>**this is the inappropriate time for this matter to have been raised**</u>. If Mr. Russo actually believed that he had a legal motion of this sort where he was going to be citing cases trying to preclude or claim that there is a certain party not involved, <u>**he's been more than well aware that Mr. Cikanek'**</u>s individual account which was a <u>**living trust account was part of this case**</u>, <u>**he could have made this motion, could have made a written motion**</u>, could have responded to it.*

### 5. The Panel Chair Responds

The Chairman of the Panel of the arbitration panel was Terry F. Peppard, the former Chief Attorney for the Wisconsin Commissioner of Securities. Chairman Peppard immediately addressed the factual issue as to whether the Trust had a claim in the arbitration. He first questioned Mr. Sugarman about the identity of the accounts set forth in the Statement of Claim in the arbitration:

> *ARBITRATOR PEPPARD: Let's do a couple of things factually here if we can. First, Mr. Sugarman, what I have in my pleading file includes under date of April 7th, 2006, a letter formatted signed by yourself on behalf of Mr. Cikanek, you have that document?*

- 10 -

>    MR. SUGARMAN:  Yes, sir.
>    ARBITRATOR PEPPARD:  *So your statement of claim is in that format under that date signed by yourself on behalf of Mr. Cikanek*.  When I turn to the second page of that document, *I see a reference to two accounts and it isn't clear to me what those two accounts are* except that one of them is described as a margin account and the other by number is described as an IRA account.  Can you give us a little more description of those?
>    MR. SUGARMAN:  Absolutely. What's been dubbed as the margin account is the David Cikanek living trust account and the second account there is the David Cikanek IRA account.
>    ARBITRATOR PEPPARD:  *So what you're telling us is that 4A0150601 as described in your letter in th*e *statement of claim as the margin account, that is the trust account?*
>    MR. SUGARMAN:  *Yes, sir*.
>    ARBITRATOR PEPPARD:  Then the second account which is described as an IRA account, what is that, sir?
>    MR. SUGARMAN:  That is an IRA account, an individual retirement account.
>    ARBITRATOR PEPPARD:  I guess my question is in whose name?
>    MR. SUGARMAN:  David Cikanek.
>    ARBITRATOR PEPPARD:  So we, of course haven't seen the documents in support of this.  As I recall, the attachments to your statement of claim were fairly spare [sic], a fact for which I'm grateful, but sometimes people attach what seems like an entire pleading or evidence file to these statements of claim and others we have no documentation.  In this instance, we have documentation as to the character of those accounts or even the identity of the account holders, but *I hear you telling us that the David Cikanek Living Trust is the owner of what is styled here the margin account?*
>    MR. SUGARMAN:  Yes, sir.

6. **Mr. Russo admits he knew the Trust was making claims in the Arbitration**

The Chairman then turned to Stevens' attorney, Marty Russo.  He elicited an obvious admission from Mr. Russo--that from the very beginning of this case, Stevens had known that the Statement of Claim seeking relief as to the "margin account" was, in fact, seeking relief as to the Cikanek Living Trust:

>    **ARBITRATOR PEPPARD**:  *Mr. Russo, how do you respond to those*

11

> *facts as alleged? We haven't had anything proven to us.* **_If those are the facts, if they turn out to be the facts, then what do you say?_**
> MR. RUSSO: **_Well, sir, I will admit that the margin account is, in fact, the Cikanek living trust account_**[.] Hearing Transcript, Stevens' Exhibit Q, pages 26-28 (emphasis added)

7. **The Chairman Rules**

Chairman Peppard then ruled on the motion, saying: "Mr. Russo has made his motion. He's made the grounds as to what he believes is clear. **The pleadings say what they say**." *Id.*, page 31 (emphasis added). He then went on: "We'll simply allow the parties to put in their various proofs. We'll ask Mr. Russo or permit Mr. Russo to renew his motion at the close of the presentation of evidence and we'll see what the state of the record is at that point and we'll take the motion under advisement and deal with it appropriately." *Id.*

8. **The Issue of Waiver Clearly Was Presented To The Panel**

Stevens waited until the first day of the arbitration hearing to try to exclude all evidence of damages sustained by the Trust. Counsel for Mr. Cikanek pointed out that this was not the appropriate time for the matter to be raised. He then argued that had Stevens seriously intended to press this issue, it should have made a written motion prior to the hearing.

Thus, Stevens can hardly deny that the issue of timeliness was squarely presented to the panel. Indeed, the record reflects that the Chairman of the panel immediately made a factual inquiry of Mr. Russo to determine whether or not he was aware that the trust account was one of the two accounts in the Statement of Claim. He admitted that he knew that it was.

9. **Stevens Did Not Submit Any Law on The Subject Of Waiver**

With the factual issues relating to waiver and timeliness resolved, Stevens submitted not a single case to rebut Mr. Sugarman's claim that "this is… the inappropriate time for this matter

12

to be raised." Stevens' exegesis of "manifest disregard of the law" comes from authorities very distant from the Seventh Circuit, but even Stevens' explanation of the standard does not require courts to consider setting aside an award unless the arbitrators knew of a governing legal principle yet refused to apply it. To quote from Stevens own Memorandum of Law, filed on March 31, 2008:

> A court may vacate an award based upon manifest disregard of the law where it finds that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997), *cert. denied*, 139 L.Ed. 2d 639, 118 S. Ct. 695 (1998)).

Stevens' Memo of Law, at page 7 (Document 45 in this case, p. 9).

In that same Memorandum of Law, Stevens trumpets how it "directed arbitrators to the governing law" (Stevens' Memo. of Law at page 9), but fails to point out that Stevens never cited a single case on the governing law relating to waiver or timeliness. Accordingly, Stevens' argument that these circumstances constitute "manifest disregard of the law" is frivolous.

F.     Stevens' Lack of Fundamental Fairness and Acting In Excess Of Authority Arguments <u>are Frivolous</u>

As set forth above, Stevens' attorney Martin Russo did not deny that he was well aware that the Trust was part of the Arbitration. Nevertheless, Stevens has the temerity to tell this Court that it was denied "fundamental fairness" when it made the tactical decision to attempt to derail the hearing, rather than making a pre-hearing motion to dismiss or motion *in limine*. Stevens also has the temerity to tell this Court that the arbitrators exceeded their authority when Stevens only agreed to arbitrate with Cikanek individually – though Stevens knew the whole time that the two Stevens accounts set out in the Statement of Claim were not individual

13

accounts, but an IRA account and a trust account. For these reasons, Stevens' claims on this point are frivolous and should be summarily rejected.

    G.    Stevens' Has Failed To Demonstrate A Basis For Vacatur Under 9 U.S.C. §10(A)(4) According To The Law Of This Circuit

Stevens next argues that the arbitration award should be vacated under 9 U.S.C. §10(a)(4), as the arbitrators allegedly exceeded their power in awarding damages on behalf of the Trust. (Petitioner's Memo. pp. 11-13). Stevens relies on a Sixth Circuit holding, *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003), where a Court held that vacatur was appropriate as arbitrators had exceeded their power by determining rights and obligations of a non-party. Stevens' argument should be rejected.

First, Stevens has not shown that Nationwide is the law in this Circuit.

Second, this case is distinguishable from *Nationwide*. Here, the damages were awarded to Mr. Cikanek who was a party to the Arbitration. Thus, the determinations made by the Panel were of the rights and obligations of a party.

Third, the Trust was also a party because Stevens by never making any motion, objection or affirmative defense prior to the hearing, waived its right to object. Moreover, Mr. Cikanek, who was the trustee of his Trust, was present at the hearing.

Finally, as demonstrated earlier, there is no evidence that the award determined rights and obligations of the Trust--the alleged non-party. The award contains no explanation of the basis for the award. There are a myriad of possibilities for how the arbitrators reached the damages they awarded. They could easily have been based solely on the IRA account, and could have included interest, costs, expenses, expert witness and attorney's fees. Indeed, Mr. Cikanek's damage claims were not limited to his net out-of-pocket losses. The damages could also stem

14

not just from account losses but the overall outrageous conduct of Stevens in hiring the brokers who swindled and defrauded Mr. Cikanek and failing to supervise them once hired, claims that Mr. Cikanek asserted in his Statement of Claim and were therefore before the Panel.

H.      Stevens Has Failed To Show Fundamental Unfairness

Stevens' final argument, that it was somehow deprived of due process, also fails. As the basis for this claim, Stevens asserts that because Mr. Cikanek did not submit a uniform submission agreement as trustee for the Trust, Stevens was left in a "fundamentally inequitable position--unable to assert counter claims or cross-claims, but forced to address prejudicial evidence relating to a non-party." (Petitioner's Memo, p. 13). Putting aside Mr. Cikanek's position *supra* that Stevens has not and cannot establish that the compensatory award was based on the Trust account, Stevens' argument that the arbitration was so fundamentally unfair and inequitable that it was in warrants vacatur under §10(a)(3) of the FAA still fails.

In keeping with the strong deference given to the arbitration process, this Court has established a very narrow standard by which it grants vacatur under FAA §10(a)(3). For example, not all failures to receive relevant evidence constitute misconduct, requiring a court to vacate an arbitration award. *Lee at \*8* citing *Newark Stereotypers' Union No. 18 v. Newark Mourning Ledger Co.,* 397 F. 2d 594, 599 (3d Cir. 1968). Rather, misconduct warranting vacatur "occurs when an arbitration panel fails to employ 'basic notions of fairness and due process and '**grossly and totally block[s]**' a party's right to be heard." *Lee* at \*9 citing *Plumbers' Pension Fund, Local 130, U.A. v. A-Best Plumbing & Sewer, Inc.,* 1991 U.S. Dist. LEXIS 834, 1991 WL 10006 at \*3 (N.D. Ill. 1991) (citing *Lebda v. Charles Schwab & Co., Inc.,* 1990 U.S. Dist. LEXIS 3627, 1990 WL 43531 at \*5 (N.D.Ill. 1990)).

15

Here, Stevens alleges that it had viable cross-claims and counter-claims against the Trust Account, but was entirely blocked from raising any of these because Mr. Cikanek had not filed a Uniform Submission Agreement on behalf of the Trust. Petitioner's Memo, p. 13. The key point, however, is that it was not the arbitrators who "blocked" Stevens' right to be heard. Stevens had more than ample opportunity to assert a claim against the Trust if it so chose. Indeed, Stevens states in its Application as a given, undisputed fact that the Trust signed an arbitration agreement that bound it to arbitrate any disputes with Stevens. Thus, there was nothing and is nothing which served as an impediment to Stevens filing counter-claims, cross-claim or wholly separate new arbitration claims with regard to the alleged debit that it had written-off some 5 years earlier.[6]

Stevens' due process argument also fails because the record reflects that Stevens knew of and had adequate opportunity to raise claims of lack of standing in its substantive answer and affirmative defenses to the Statement of Claim. Stevens chose not to. Stevens continued to exercise that choice through the progress of the case until the hearing had already started. Nothing in the concepts of fundamental fairness and due process allow Stevens to play such a waiting game, and then seek to overturn an award that it claims resulted from its own tactics. The mere fact that the chairperson did not grant an adjournment after the hearing had already started--at which time Stevens finally raised a claim that could have been raised in its Answer or by Motion to Dismiss or to Strike Discovery or *in limine* to limit damages--hardly means that Stevens was "grossly" and "totally" blocked from asserting any claims against the Trust.

---

[6] Stevens omits to tell the Court that its own witnesses testified that (a) the debit arose as a result of unlawful "free-riding" which occurred in Mr. Cikanek's account, (b) once the firm discovered the "free-riding" violation it reversed the trades and removed the resultant debit from the account and that Mr. Cikanek testified that he (a) had no idea what "free-riding" was, (b) had no understanding of the nature or size of the trades placed by his Stevens' brokers which created the "free-riding" violation and debit and (c) never even knew of the existence of a debit.

16

### III.   CONCLUSION

For the reasons stated, this Court should deny Petitioner's Application to Vacate Arbitration Award rendered in the Matter of the Arbitration between David Cikanek and Joseph Stevens & Company, Inc., Kevin Brody, Leonard Joseph Inserra and Ross Inserra, NASD Arbitration No. 06-1868, and should confirm the award and enter judgment in favor of David Cikanek in accordance with 9 U.S.C. §9, as requested in Mr. Cikanek's Cross-Application filed with this Court on March 28, 2008.

Respectfully Submitted,

DAVID CIKANEK

BY:

| | |
|---|---|
| /s/ Leslie A. Blau | /s/ Renan Sugarman |
| Leslie A. Blau, Esq. | Renan I. Sugarman, Esq. |
| Co-Counsel for David Cikanek | Co-Counsel for David Cikanek |
| BLAU & MALMFELDT | LAW OFFICE OF RENAN SUGARMAN, PC |
| 140 South Dearborn, Suite 1610 | 30 North LaSalle, Suite 1530 |
| Chicago, IL  60603-5202 | Chicago, IL  60602 |
| (312) 443-1600   fax-1665 | (312) 578-9411   fax-9431 |

Dated:  April 23, 2008

## CERTIFICATE OF SERVICE

The undersigned certifies that this document, **David Cikanek's Response to Application of Petitioner Joseph Stevens & Co., Inc. to Vacate Arbitration Award** was filed electronically in compliance with the General order on Electronic Case Filing, Section III (B)(1). As such, these documents were served on all counsel, who are deemed to have consented to electronic service. Fed. R. Civ. 5(b)(2)(D) and Local Rule 5.9.

        /s/   Ari Madoff
One of the Attorneys for Respondent,
David Cikanek