UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH STEVENS & COMPANY, INC., )<br>)<br>Petitioner, )<br>)<br>)<br>vs. )<br>)<br>DAVID CIKANEK, )<br>)<br>Respondent. ) | Civ. Case No. 08-CV-706<br><br>Hon. Amy St. Eve |

MEMORANDUM OF LAW IN SUPPORT
OF JOSEPH STEVENS & COMPANY, INC.'S
APPLICATION TO VACATE THE ARBITRATION AWARD

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................................1

FACTS ...........................................................................................................................................1

    I.    The IRA Account................................................................................................................1

    II.   The Trust Account.............................................................................................................2

    III.  The Arbitration ..................................................................................................................2

    IV.  The Award .........................................................................................................................6

ARGUMENT...................................................................................................................................6

    I.    The Standard Governing Vacatur Of Arbiration Awards..................................................6

    II.   The Panel Exceeded Its Power In Awarding Damages On Behalf Of The Trust Because The Trust Did Not File A Claim Against Joseph Stevens And Did Not Submit To Arbitration .......................................................................................................7

    III.  The Arbitration Was Fundamentally Unfair Because Joseph Stevens Was Deprived Of Its Right To Bring A Counter-Claim Against The Trust And A Cross-Claim Against Cikanek For His Acts As Trustee .......................................11

    IV.  The Arbitration Panel Acted In Manifest Disregard Of The Law In Rendering Its Award To Respondent David Cikanek............................................................13

CONCLUSION .............................................................................................................................13

Pursuant to 9 U.S.C. § 10, Petitioner Joseph Stevens & Company, Inc. ("Joseph Stevens"), through its attorneys, submits this memorandum of law in support of its application to vacate the arbitration award rendered in the arbitration between David Cikanek and Joseph Stevens & Company, Inc., Kevin Brody, Leonard Joseph Inserra, and Ross Inserra, NASD Arbitration No. 06-1868.

## PRELIMINARY STATEMENT

The arbitration award in favor of David Cikanek is the result of arbitrators exceeding their power and manifestly disregarding the laws of New York and Illinois. The claims filed by David Cikanek were styled in his individual capacity. David Cikanek had only one account at Joseph Stevens as an individual. In the course of five years, the trading in the account involved less than $2,000, and resulted in a loss of approximately $1,200. There were two trades – a single purchase and a single sale, resulting in only $325 in commissions. Nothing more. Yet, the Panel awarded $47,500 in compensatory damages and $166,250 in punitive damages. The only explanation for those numbers is that the Panel must have relied on evidence relating to a different account. That, in fact, is exactly what happened. The Panel considered evidence of the account of a non-party to the arbitration and awarded damages to David Cikanek. Despite objections from Joseph Stevens and a full explanation of the law, the arbitrators (two of which are practicing attorneys) chose to disregard the law, improperly consider evidence, and make an irrational award. As set forth more fully below, the law is clear that this Court must vacate the unlawful award.

## FACTS

I.  The IRA Account

David Cikanek ("Cikanek") opened an IRA account with Joseph Stevens in November 2000. (Russo Decl.,[1] Ex. A, p. 67; Ex. B). At that time, and throughout his relationship with Joseph Stevens, Cikanek represented that he was a sophisticated investor with an annual income of more than $100,000, and a net worth of more than $1,000,000. (Ex. A, pp. 104-05; Ex. M). On November 17, 2000, assets consisting of two stock positions with an approximate value of $17,000 were transferred into the IRA account. (Ex. B). Within thirty days, the market for these securities fell, and the value of the account was less than $2,000. By the end of December, 2000

---

[1] Unless otherwise indicated, references to exhibits are to those attached to the March 31, 2008 Declaration of Martin P. Russo ("Russo Decl.").

– 45 days after being transferred to Joseph Stevens, the existing position recovered a bit, but was only worth $4,510.22. (Exs. C, D). From November 2000 through June 30, 2006, there were only two transactions in the account: a sale of Globalnet for $1625.97 and a purchase of Portal Software for $1808.50. (Ex. E). The total commissions and fees charged on these trades, the only ones charged during the life of the account, amounted to $325. (*Id.*) On June 30, 2006, Cikanek transferred all positions out of his IRA account. At that time, the value of the assets was approximately $1,165.42. (Ex. F).

II.     The Trust Account

Cikanek also controlled and directed the David M. Cikanek Living Trust (the "Trust"); which was formed in September 2000. (Ex. G). Cikanek named himself trustee of the Trust, and continued in that role through at least March 23, 2007. (Ex. A, p. 93; Ex. G). The beneficiaries of the Trust are Cikanek's sisters and their children. (Ex. G; Ex. A, pp. 93-94). In November 2000, Cikanek caused the Trust to open an account with Joseph Stevens and transfer assets into the account. As is required by securities industry rules, a separate account was opened for the Trust to maintain the integrity of its distinct legal identity. (Ex. A, p. 92). In contrast to the IRA account, the Trust account had periods of active trading and significant losses (a large portion of which were due to the decline in value of stocks purchased at another firm) while at Joseph Stevens. (Ex. H). All of the trades conducted in the Trust were either authorized or ratified by Cikanek as trustee. (Ex. A, pp. 99-102). Even after experiencing losses, Cikanek exercised his judgment as trustee to transfer additional assets into the Trust account. (Ex. H).

III.    The Arbitration

In or about April 2006, Cikanek commenced an NASD arbitration against Joseph Stevens and his former brokers for losses he allegedly sustained at Joseph Stevens and another broker-dealer. (Ex. I). At the time he filed the statement of claim, Cikanek individually submitted to arbitration and executed a Uniform Submission Agreement. (Ex. J). As was required by the rules, Joseph Stevens executed a Uniform Submission Agreement consenting to arbitrate with Cikanek individually. (Ex. K). At no time did the Trust, either in its name or by Cikanek as trustee, file an arbitration against Joseph Stevens. (Russo Decl. ¶ 15). Similarly, at no time did the Trust, in its own name or by Mr. Cikanek as trustee, execute a Uniform Submission Agreement. (Russo Decl. ¶ 16). Joseph Stevens, therefore, did not (as it was not required to)

execute a Uniform Submission Agreement consenting to arbitrate with the Trust. (Russo Decl. ¶ 17).

At the hearing of this matter, Cikanek's counsel announced in his opening statement that he intended to introduce evidence relating to the trading and losses in the Trust, and that he would seek damages based upon the activity in the Trust account. Before opening, Joseph Stevens' counsel objected as follows:

> Before I open, I didn't object during counsel's opening statement because it's not permitted and it's rude and it breaks the flow, but I do object to some of the evidence he's claimed he's going to show you based on the fact that [it relates] to the Cikanek Living Trust which does not have a claim in this action. I move to strike those portions of the opening that relate to the Cikanek Living Trust. This action was brought by Mr. Cikanek individually . . . [B]ut the Cikanek living trust did not bring a claim in this case nor did it sign a submission agreement. Illinois [Statutes 760 I.L.C.S. 5/4] basically says that only a trustee has the power to commence litigation on behalf of a trust. The [Re]statement Second of Trusts which has been cited in many cases here in Illinois says it's the trustee who must bring the claim on behalf of the trust and it's only the trust that can recover [] – and that includes grantors are not permitted to bring a [] claim on behalf of the trust nor are the beneficiaries of the trust permitted to bring a claim on the trust except for certain special circumstances which are not met here and I'll cite for you [*Godfrey v. Kamin*, No. 99-C-3230, 2000 U.S. Dist. LEXIS 18213 (N.D. Ill. Dec. 14, 2000); *Pierce v. Chester Johnson Electric Co.*, 117 Ill. App. 3d 867, 454 N.E.2d 55 (App. Ct. Ill. 1983); *Levinfield v. Clinton*, No. 83 C 3677, 1986 U.S. District Lexis 27109 (N.D. Ill. Apr. 7, 1986); and *U.S. v. Two Million Seven Hundred Sixty-Seven Thousand Two Hundred and Two Dollars and Twenty Seven Cents ($2,767,202.27)*, No. 03-1289, 2006 U.S. Dist. LEXIS 47833 (C.D. Ill. July 13, 2006)], all of that law as well as the [R]estatement of [T]rust sections 177, 192 and 282 . . . . In this case, the Cikanek Living Trust has beneficiaries that are not Mr. Cikanek. The beneficiaries are various brothers and sisters and their progeny and so Mr. Cikanek is not even the beneficiary of the trust but seeks here apparently to recover individually for a trust asset that being a claim a trust owns. Importantly, [] the exclusion . . . of the Cikanek Living Trust would not, in fact, materially affect this case because the bulk of the losses that Mr. Cikanek suffered were with respect to his individual accounts which were at LCP and those losses occurred primarily between [] April of 2000 and September of 2000. It was in September of 2000 that Mr. Cikanek created his trust. At the same time at LCP, he had an IRA account which suffered like something like several hundred thousand dollars worth of losses. That IRA account went to Joseph Stevens and did, in fact, suffer losses at Joseph Stevens and so the preclusion of the Cikanek Living Trust evidence will not in any way prevent this case from going forward. It would simply provide Joseph Stevens the due process of law and the reason why I say that is because the Cikanek Living trust did not submit to arbitration, Joseph Stevens was unable to bring claims against the Cikanek Living Trust as a trust entity for a debit that they had incurred and was forgiven by Joseph Stevens in the amount of $40,000 and, in addition, Joseph Stevens was unable to cross-claim against Mr. Cikanek for [contribution relating to] his breach of the fiduciary [duty] of care. As a trustee, he owed a duty of care to the trust and

> to protect the assets of the beneficiaries and so I ask you at this point to strike any portion, without specifics, of the opening that relate to that evidence and to going forward issue a ruling which precludes Mr. Sugarman and Mr. Cikanek from introducing evidence regarding the Cikanek Living Trust account which is not at issue in this case.

(Ex. A, pp. 17-25).

In response, Cikanek's counsel argued that the motion was based on a "technical issue" which he could cure by amending his pleadings and submitting a submission agreement on behalf of the Trust. (Ex. A, pp. 21-23) ("we'll move to amend our pleadings and include the trust as a claimant and we'll submit a submission agreement on behalf the trust and Mr. Cikanek as the trustee"). Claimant never moved to amend the claim and the Trust never submitted a submission agreement. Instead, Claimant's counsel urged the panel to ignore the "legal technicality" as follows:

> Mr. Russo [] points out why the motion should be denied []. It suggests we bring another claim against Joseph Stevenson [] for the Cikanek living trust. The evidence and the testimony would be all the same, so he basically wants us to duplicate our efforts twice just as a matter of some technicality. It doesn't make any sense. That's what arbitrations are about. They're supposed to avoid all of the legal technicalities that Mr. Russo is trying to raise and allow a party to present his case and present his evidence not to have to come here and then file the same claim again because the issue has supposedly been joined because I made an opening statement and then have us to introduce the same testimony over again. It's very simple. If the panel is concerned about [their] not being [a party] technically, the living trust [] can amend, we'll submit a submission agreement. The same evidence would be presented if we would bring another claim which would just be duplicative and a waste of everybody's time and effort, so I, again, suggest that the motion should be denied.

(Ex. A, p. 24-25)[2]. Joseph Steven's counsel corrected the record as follows:

> That is factually incorrect. The evidence with respect to the Cikanek Living Trust involves different trades, different trading [patterns], different time periods. It's not the same evidence that would be introduced with respect to the IRA and also I'd like to point out that what Mr. Sugarman basically just did was say to you this is arbitration so ignore the law, it doesn't matter that this claimant didn't bring a claim against them, just bring it in now and let's have some quick justice here. [I]t's manifest disregard to the law if you do it.

---

[2] Notably, despite his acknowledgement that the Trust had never submitted to arbitration and that Cikanek did not bring the case as "trustee," counsel for Cikanek did not amend the Statement of Claim or submit a Uniform Submission Agreement on behalf of the Trust.

(Ex. A, pp. 25-26). Without consulting the other arbitrators, the chairman of the panel deferred ruling on the motion until after the evidence was admitted. (*Id.*) At that point, Joseph Stevens' counsel objected and made the following record:

> ... [I]f you're going to make us go forward, I need the opportunity to amend my answer to assert a counterclaim and a cross-claim, so I mean you can't go forward on the evidence with respect to one side without permitting me to go forward with the evidence on the other side. The issue has been joined with respect to the individual account. If now there is even the chance that at some point later on the panel might decide that with respect to the Cikanek Living Trust that you're going to accept the evidence, then [Joseph Stevens] will have been injured because I will not have been able to assert my counterclaim nor my cross-claim and so I urge you to consult with the full panel and to make a ruling either at this time or if you cannot do that to adjourn and seek having the parties submit briefs or something like that because it's just not fair to Joseph Stevens from a due process standpoint for us to have to go forward without asserting our claims as they could have been asserted had the Cikanek living trust submitted a uniform submission agreement and agreed to be party to this action.

(Ex.A, pp. 32-33). The chairman not only refused to entertain the motion and the request for adjournment – effectively denying them – but inappropriately failed to consult the other panel members in violation of the NASD Rules. (Ex. A, p. 33; Ex. L ("All rulings and determinations of the Panel shall be by a majority of the arbitrators.")). Instead, the chairperson forced Joseph Stevens to open and defend against evidence relating to the Trust. Counsel for Joseph Stevens objected as follows when the first evidence specific to the Trust was offered:

> I'd just like to note for the record my continuing objection to evidence with respect to the Cikanek Living Trust, [which] is not a party to this action.

(Ex. A, p. 268). The chairperson granted a standing objection. (*Id.* ("We'll consider that you have a standing objection to all evidence with respect to the trust.")).

Thereafter, the Panel accepted summary analysis and computations of trading data, account statements and confirmations relating to the Cikanek Living Trust account. The evidence having been presented, Joseph Stevens had no choice but to cross-examine the witnesses and present contradictory evidence regarding the Trust account in addition to the IRA account. In his closing, counsel for Joseph Stevens again addressed the issue of the impropriety of introducing evidence relating to the Trust as follows:

> With respect to the Cikanek Living Trust, ... [i]t should be disregarded or at least should be considered as not being relevant to Mr. Cikanek's claim here. Now, the relationship in this arbitration is contractual and there was no submission agreement from the Cikanek Living Trust. [It has] no claim here. There is no evidence of any assignment of the

> Cikanek Living Trust claim to Mr. Cikanek and they had the opportunity to present that but they didn't. There is evidence of the following in the record. We have the trust document in the record which shows that the trust exists. We have the statements in the record which show that the account was held in the name of the trust. We had the expert for the other side testified that the trust is a separate legal entity. We had the trust document which identifies that the beneficiary is third parties, not Mr. Cikanek. We have the trust document that says the trustee must bring the action on behalf of the trust. We have no evidence in this case presented by Mr. Cikanek that he is in fact bringing this claim on behalf of the trust and again no evidence of an assignment. [] The losses [in the Cikanek Living Trust Account were] suffered by the trust and not by David Cikanek individually the claimants in this case. And so it's a matter of law Mr. Cikanek cannot recover for those trust losses. As a matter of fact, he has not proven that he personally suffered any injury when that trust entity lost money. That does not deprive David Cikanek of seeking losses for activity. There's a David Cikanek account at LCP. There's an IRA account at LCP. There's an IRA account here.

(Ex. N).

IV.   The Award

On March 30, 2007, the NASD served the Arbitration Panel's Award. (Application to Vacate Award, Ex. 1). The Panel awarded Claimant David Cikanek $47,500.00 in compensatory damages and $166,250.00 in punitive damages. (*Id.*).

## ARGUMENT

I.   **THE STANDARD GOVERNING VACATUR OF ARBITRATION AWARDS**

Review of an arbitration award is governed generally by the Federal Arbitration Act, which provides that an arbitration award may be vacated on the following grounds:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a). *See also, Wise v. Wachovia Sec., LLC*, 450 F.3d 265, 268 (7th Cir. 2006) (citing 9 U.S.C. § 10); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Savino*, 06 Civ. 868, 2007 U.S. Dist. LEXIS 23126, at *17 (S.D.N.Y. March 23, 2007) (citing 9 U.S.C. § 10).

Moreover, in interpreting the Federal Arbitration Act or applying any extra-statutory grounds for vacatur of the arbitration award, New York law applies. "Illinois courts generally adhere to a contract's choice of law provisions." *Sound of Music Co. v. 3M*, 477 F.3d 910, 915 (7th Cir. 2007). Here, laws of the State of New York are applicable to the instant action because

the "Cash Account Agreement" that Mr. Cikanek must have signed to open and maintain an active account at Joseph Stevens contains an arbitration provision that specifically calls for New York law. The provision reads, "Any arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act and *the laws of the State of New York* . . . ." (Application to Vacate, ¶ 6) (emphasis added). Accordingly, this Court must rely on Second Circuit precedent in reviewing the instant Application to Vacate the Arbitration Award.

The Second Circuit has also recognized that an arbitration award may be vacated if it was made in manifest disregard of the law. *Id.* (quoting *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 201-03 (2d Cir. 1998)); *see also, Hakala v. Deutsche Bank AG*, No. 01 Civ. 3366, 2004 U.S. Dist. LEXIS 8297, at * 2 (S.D.N.Y. May 11, 2004) (An award may also be vacated based on the arbitrators' manifest disregard of the law, manifest disregard of the evidence, or violation of well-established public policy). Finally, pursuant to 9 U.S.C. § 10(a)(3), both New York and Illinois courts recognize that an arbitration award may be vacated due to a lack of "procedural due process" or if the decision rendered is fundamentally unfair and consequently prejudiced the losing party. *See Wise*, 450 F.3d at 268 (recognizing 9 U.S.C. §10(a)(3) as the provision that "authorizes vacating an award for "'refusing to hear evidence pertinent and material to the controversy'"); *Tempo Shain Corp. v. Bertek*, 120 F.3d 16, 20 (2d Cir. 1997); *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 757 F. Supp. 283, 292 (S.D.N.Y. 1991).

In the instant action, the Arbitration Panel acted in manifest disregard of the law, exceeded its powers, and violated Petitioner's due process rights when it heard and considered evidence relating to the Trust account and issued an award in favor of Cikanek in the amount of $47,500.00 in compensatory damages and $166,250.00 in punitive damages.

II. **THE PANEL EXCEEDED ITS POWER IN AWARDING DAMAGES ON BEHALF OF THE TRUST BECAUSE THE TRUST DID NOT FILE A CLAIM AGAINST JOSEPH STEVENS AND DID NOT SUBMIT TO ARBITRATION**
Section 10(a)(4) of the FAA provides that an arbitration award may be vacated "where the arbitrators exceeded their powers." 9 U.S.C. § 10(a)(4). "The test for vacating an award under section *10(a)(4)* of the Arbitration Act is whether the arbitrator exceeded the powers delegated to him by the parties." *Eljer Manufacturing, Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994); *see also, Ruei-Chan v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, No. 04 Civ. 488, 2004 U.S. Dist. LEXIS 18594, at *27 (S.D.N.Y. Sep. 8, 2004) ("10(a)(4), '[the] inquiry . . . focuses "on whether the arbitrators had the power, based on the parties' submissions or the

arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'" ) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 220 (2d Cir. 2002)).

An arbitration panel exceeds it power if it determines the rights or obligations of non-parties to the arbitration. *See, e.g., In re Eljer Manufacturing, Inc.*, 14 F.3d at 1256 ("the arbitration clause . . . cannot be construed to delegate to the arbitrator the power to arbitrate between Eljer and a third party."); *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) (citing *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama*, 312 F.2d 299, 301 (2d Cir. 1963)); *Techcapital Corp. v. Amoco Corp.*, No. 99 Civ. 5093, 2001 U.S. Dist. LEXIS 2822, at *14 (S.D.N.Y. Mar. 16, 2001) ("As the Intervenors correctly argue, arbitrators exceed their authority when they determine the rights and obligations of one who is not a party to the arbitration proceeding."); *Bowen v. 39 Broadway Assoc.*, No. 91 Civ. 4673, 1992 U.S. Dist. LEXIS 3935, at * 11 (S.D.N.Y. Apr. 1, 1992) ("'A decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator when that issue has not been submitted to him is not within the province of the arbitrator himself but only of the court.'") (quoting *A/S Ganger Rolf v. Zeeland Transp., Ltd.*, 191 F. Supp. 359, 363 (S.D.N.Y. 1961)) (both relying on *Orion Shipping & Trading Co. v. Eastern States Petr. Corp. of Panama*, 312 F.2d 299 (2d Cir. 1963).

The "'first principle' of federal arbitration law [is that] '[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Geneva Securities, Inc. v. Johnson, et al.*, 138 F.3d 688, 691 (7th Cir. 1998) (holding that the arbitration panel exceeded its powers pursuant to 9 U.S.C. § 10(a)(4) by relying on an claim ineligible for arbitration in rendering its award) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 4 L.Ed. 2d 1409, 80 S.Ct. 1347 (1960)); *see also, Schaad v. Susquehanna Capital Group*, No. 03 Civ. 9902, 2004 U.S. Dist. LEXIS 15772, at *12 (S.D.N.Y. Aug. 10, 2004) ( "'Arbitration is contractual by nature – 'a party cannot be required to submit to arbitration any dispute which he has not agreed to submit.'") (quoting *Thomson-CSF, S.A. v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). As such, "a party may not be compelled to arbitrate with another party unless it agreed to such arbitration." *Donel Corp. v. Kosher Overseers Ass'n of Am.*, No. 92 Civ. 8377, 2001 U.S. Dist. LEXIS 2314, at *10 (S.D.N.Y. March 9, 2001) (citing *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648 (1986)).

In *Eljer*, the Seventh Circuit vacated part of an arbitration award that provided damages for a loss suffered by an entity not a party to the arbitration agreement. *See,* 14 F.3d 1256. There, an arbitration proceeding commenced between Eljer and Kowin Development Inc. ("Kowin") pursuant to a contract between Eljer's subsidiary and Kowin. *See, id.* at 1252. The Seventh Circuit determined that part of the award represented a fee which Eljer received from a third party. *See, id.* at 1256. Since the fee was earned pursuant to a separate transaction outside the scope of the agreement between Eljer and Kowin, the Seventh Circuit vacated that portion of award and held that the arbitrator exceeded his powers by arbitrating a dispute between Eljer and a party that was not subject to the particular contract at issue in the arbitration. *See id.* at 1257.

The Sixth Circuit's decision in *Nationwide* is also instructive. In that action, Nationwide commenced an arbitration against Home. As part of its ruling, the arbitration panel ordered Nationwide to reimburse a non-party to the arbitration. Nationwide subsequently filed a motion in district court to vacate the award. The district court vacated the award in part on the ground that the Arbitration Panel exceeded its authority by directing that payment be made to a third party. *Nationwide*, 330 F.3d at 845. The court agreed with the district court that the arbitrators lacked the power to make an award that vested any rights in a non-party to the arbitration:

> An arbitration panel may not determine the rights or obligations of non-parties to the arbitration. *See Eljer Mfg., Inc. v. Kowin Dev. Corp.*, 14 F.3d 1250, 1256 (7th Cir. 1994); *Int'l Brotherhood of Elec. Workers, Local No. 265 v. O.K. Elec. Co.*, 793 F.2d 214, 216 (8th Cir. 1986) order payment directly; *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp. of Panama*, 312 F.2d 299, 301 (2d Cir. 1963). In *NCR Corp. v. Sac-Co, Inc.*, 43 F.3d 1076 (6th Cir. 1995), we held that an arbitrator exceeded his authority by ordering payment of punitive damages to non-parties. In that case, the arbitrator erred by creating legal rights in the recipients of the punitive damage award, all of whom were non-parties to the arbitration. In the instant case, Home and Nationwide agree that CIGNA and its affiliate, AISUK, are non-parties to the contract and to the arbitration. Thus, the arbitration award exceeds the panel's authority.

*Id.* at 846-47; *see also,, Intercity Co. Establishment v. Ahto*, 13 F. Supp. 2d 253, 261 (D. Conn. 1998) (Court states in dicta that it would have been "improper" had the arbitration panel awarded claims against a third party who had not signed the Submission Agreement).

Here, the Arbitration was brought pursuant to the contract between Cikanek individually (IRA) and Joseph Stevens. It is undisputed that the Trust did not file an arbitration against Joseph Stevens and had never executed a submission agreement agreeing to participate in the

arbitration. (Ex. A, pp. 24-25). It is also undisputed that Joseph Stevens *never* signed a submission agreement in an arbitration with the Trust.

In this case, the IRA account – the only Joseph Stevens account in Mr. Cikanek's name – was transferred to Joseph Stevens from another firm with approximately $17,000. Due to market forces, the price of its positions fell substantially in the first 45 days. The entire trading history of the IRA account during the five years it was at Joseph Stevens consisted of two trades (a sell and a buy) involving the same $1,800 and commissions totaling $325. (*See* Ex. E.) There was no evidence presented at the hearing to demonstrate churning, excessive commissions, unauthorized trading, breach of contract, breach of fiduciary duty, fraud, failure to supervise or any other misconduct with respect to the IRA account. Indeed, neither of the two trades in the IRA account were identified as problematic in the Statement of Claim. (*See* Ex. I.) As a consequence, there was no basis to award any damages based on the trading activity in the IRA account.[3] Even assuming *arguendo*, that such evidence existed, the loss in the IRA based on the one stock recommended for purchase would be the difference between its purchase price of $1,808.50 and it value upon transfer of $634.40, for a total of $1,174.10. Even if one were to include the commissions, the total would only be $1499.10. Moreover, even if one were to blame Joseph Stevens for the sudden loss in value of the positions purchased at a prior brokerage firm – which one should not – the loss to the Trust was only $15,803.20. Nevertheless, the arbitrators awarded Cikanek $47,500 in compensatory damages, and $166,250 in punitive damages.

---

[3] "Compensatory damages are such as will compensate the injured party for the injury sustained, and nothing more." BLACK'S LAW DICTIONARY, (4th ed. 1968); *see also* BLACK'S LAW DICTIONARY (7th ed. 1999) (defining "actual damages" and noting that they are "also termed 'compensatory damages'"). The theories of compensatory damages in securities arbitration generally fall under five categories: (1) the out-of-pocket theory, which compensates a customer of all out of pocket losses (the difference between the fair value of all that the purchaser received and the fair value of what he would have received had there been no fraudulent conduct); (2) the benefit of the bargain theory which compensates a customer with the amount an investment would have been worth if the representations by the broker were true (given if the customer can show reasonable certainty what the specific price promised was); (3) the well-managed account theory, which measures the difference between how the account performed during the period of alleged misconduct to how it would have performed had it been invested consistently with the customer's objectives; (4) disgorgement, which compensates the customer when a wrongdoer has been enriched from his misconduct (i.e. excessive commissions); and (5) rescission, which seeks to put the customer in the position he would have been in had the fraud not taken place. *See* SECURITIES ARBITRATION PROCEDURE MANUAL § 6-8 (3rd ed. 1998) (and cases cited therein).

As explained above, the arbitrators in this case awarded damages allegedly incurred by the Trust to Cikanek individually. In doing so, the arbitrators effectively determined the rights of a non-party and assigned the damages to Cikanek. Similar to Nationwide and Eljer, Joseph Stevens did not agree to have the arbitrators consider the non-party's claim and the arbitrators exceeded their power when they made the award. Consequently, as in *Eljer* and *Nationwide*, the arbitration award should be vacated.

III. **THE ARBITRATION WAS FUNDAMENTALLY UNFAIR BECAUSE JOSEPH STEVENS WAS DEPRIVED OF ITS RIGHT TO BRING A COUNTER-CLAIM AGAINST THE TRUST AND A CROSS-CLAIM AGAINST CIKANEK FOR HIS ACTS AS TRUSTEE**

Parties to an arbitration must be given a fundamentally fair hearing. The Seventh Circuit and courts in this district recognize § 10(a)(3) as a basis for vacating an arbitration award. *See generally, Wise v. Wachovia Sec.*, LLC, 450 F.3d 265, 268 (7th Cir. 2006) ("the provision in section 10(a)(3) that authorizes vacating an award for 'refusing to hear evidence pertinent and material to the controversy.'") (quoting 9 U.S.C. § 10(a)); *Sphere Drake Ins., Ltd. v. Lincoln Nat'l Life Ins. Co.*, No. 05 C 6411, 2006 U.S. Dist. LEXIS 70533, at * 9 (N.D. Ill. Sept. 13, 2006). While there have not been challenges to arbitration awards pursuant to section 10(a)(3) based on facts similar to the instant case in the Seventh Circuit or the federal courts in Illinois, parties have prevailed on similar motions under similar facts in other federal courts.

"The mandate for fundamental fairness is found in § 10(a)(3) of the [Federal Arbitration] Act." *Home Indem. Co. v. Affiliated Food Distribs.*, No. 96 Civ. 9797, 1997 U.S. Dist. LEXIS 19741, at *9 (S.D.N.Y. Dec. 12, 1997), and courts will hear evidentiary challenges to arbitral awards under section 10(a)(3) where the decision appears fundamentally unfair. *See In re Tempo Shain Corp. v. Bertek*, 120 F.3d 16, 20 (2d Cir. 1997); *see, e.g., Int'l Longshoremen's Ass'n v. West Gulf Maritime Ass'n*, 605 F. Supp. 723, 727 (S.D.N.Y.), *aff'd*, 765 F.2d 135 (2d Cir. 1985) ("[A]n arbitrator's ruling on procedural issues will not be overturned . . . unless it had the effect of denying the parties a fundamentally fair hearing, or was otherwise an unreasonable decision that prejudiced the rights of a party."). "A fundamentally fair hearing requires that the parties be permitted to present evidence and cross-examine adverse witnesses." *Kaplan v. Alfred Dunhill of London*, 156 L.R.R.M. 2080, 1996 U.S. Dist. LEXIS 16455, at *14 (S.D.N.Y. 1996).

As explained in Point II above, the Trust did not submit to arbitration with Joseph Stevens. Since the Trust was not a party, Joseph Stevens did not assert its viable counter-claim

against the Trust: losses stemming from a $41,000 debit in the Trust account in 2001. Similarly, because there was no claim and, therefore, no possible recovery by the Trust, Joseph Stevens could not assert a contribution[4] cross-claim against Cikanek for his breach of fiduciary duty of care and for fraud. As a trustee, Cikanek owed a fiduciary duty of care to the Trust. It is clear from the evidence that Cikanek breached this duty many times in many ways; one of which was by continuing to trade in the Trust account after significant losses and continuing to send money to the broker to make those trades. (*See* Ex. H.) It is likewise clear from the evidence that Cikanek defrauded Joseph Stevens in his capacity of trustee of the Trust when he submitted false information on the new account form and the private placement submissions. Because the Trust was not a party to the Arbitration, Joseph Stevens was prevented from making these cross-claims. (*See* Exs. I; J; K; Russo Decl. ¶¶ 16-17).

At the hearing, when Cikanek sought to introduce evidence regarding activity and losses incurred by the Trust, Joseph Stevens objected and sought to exclude the evidence. At that point, counsel for Cikanek offered to amend the Statement of Claim and have the Trust submit to arbitration. In response, counsel for Joseph Stevens raised the issues of counter-claims, cross-claims and the need to amend. These arguments fell on the deaf ears of the chairman (who failed to consult with the other arbitrators), but were not lost on Cikanek, who then intentionally did not amend the Statement of Claim or cause the Trust to submit to arbitration. The arbitrators did not require that the Trust submit to arbitration, and simply ignored Joseph Stevens' request for leave to amend[5] its answer and its request for an adjournment. As a result, Joseph Stevens was left in an fundamentally inequitable position – unable to assert counter-claims or cross-claims, but forced to address prejudicial evidence relating to a non-party. With Joseph Stevens at an unfair disadvantage, Cikanek's counsel promoted theories of liability which almost exclusively related to activity in the Trust account because there was nothing to pursue with respect to the IRA

---

[4] "'The theory of contribution at common law is that one who is compelled to pay more than his aliquot share of an obligation upon which several persons are equally liable is entitled to contribution from the others to obtain from them payment of their respective shares.'" *Too, Inc. v. Kohl's Dep't Stores, Inc.*, No. 01 Civ. 8200 (VM), 2003 U.S. Dist. LEXIS 2268, at *8 (S.D.N.Y. Feb. 14, 2003) (internal citations omitted).

[5] Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). By ignoring Joseph Steven's request to amend the answer, the chairperson essentially refused to grant the motion without explanation. "Outright refusal to grant the leave without any justifying reason for the denial is an abuse of discretion." *Min Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002).

account. The arbitrators accepted all of this evidence, without permitting Joseph Stevens an opportunity to pursue its claims. In doing so, the arbitrators denied Joseph Stevens fair hearing.

IV. **THE ARBITRATION PANEL ACTED IN MANIFEST DISREGARD OF THE LAW IN RENDERING ITS AWARD TO RESPONDENT DAVID CIKANEK**

A court may vacate an award based upon manifest disregard of the law where it finds that "(1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir. 1998) (citing *DiRussa v. Dean Witter Reynolds, Inc.*, 121 F.3d 818, 821 (2d Cir. 1997), *cert. denied*, 139 L. Ed. 2d 639, 118 S. Ct. 695 (1998)). The standard for manifest disregard of the law in the Seventh Circuit differs from the standard applied in the Second Circuit and other federal courts. *George Watts & Son v. Tiffany & Co.*, 248 F.3d 577, 581, (7th Cir. 2001) (recognizing that "the doctrine of manifest disregard has been substantively uniform in the federal courts") (concurring). In the instant case, however, the law of the Second Circuit applies. Here, the arbitrators acted in manifest disregard of the laws of both Illinois and New York when they allowed Cikanek, in his individual capacity (not as a trustee of the Trust), to present evidence and recover for damages allegedly sustained in the Trust account.

The Statement of Claim and the Uniform Submission Agreement filed in this case were on behalf of Cikanek individually. Joseph Stevens filed an answer and prepared a defense to the individual claims of Cikanek, not the Trust. At the hearing, Joseph Stevens timely objected to the presentation of evidence regarding the Trust account. (Ex. A, pp. 17-25). Joseph Stevens' counsel, citing to relevant and well-settled Illinois law, informed the arbitrators that David Cikanek could not bring a claim in arbitration in his name against Joseph Stevens for any losses to the Trust account. (*Id.*).

In Illinois, a trust is considered a separate legal entity. *See Pierce v. Chester Johnson Electric Co.*, 117 Ill. App. 3d 867, 868 (App. Ct. Ill. 1983) ("a written trust in Illinois possesses a distinct legal existence which is recognized by statute"). The same is true in New York. *In re Estate of Klosinski*, 192 Misc. 2d 714, 718 (N.Y. Sur. Ct. 2002) ("The trust arises because the parties intend to create it, and once created, the trust becomes a legal entity.") (citing 106 N.Y. Jur. 2d Trusts § 44). In fact, under Illinois statute, the trustee in his representative capacity, is the <u>only</u> party who may bring a claim for damages on behalf of the trust. 760 Ill. Comp. Stat. 5/4 (2007); 760 Ill. Comp. Stat. 5/4.11 (2007). Specifically, the Illinois Compiled Statute states that

the trustee has the power to "compromise, contest, prosecute or abandon claims or other charges in favor of or against the estate." 760 Ill. Comp. Stat. 5/4.

Both federal and state courts in Illinois have long recognized that the trustee is the only party with legal standing to bring suit on behalf of the trust. *See Godfrey v. Kamin*, No. 99-C-3230, 2000 U.S. Dist. LEXIS 18213, at *12 (N.D. Ill. Dec. 14, 2000) ("'a trustee is the only one who has the legal right to sue'") (quoting *Mosay v. Buffalo Bros. Mgmt.*, 20 F.3d 739, 742 (7th Cir. 1994)); *Pierce*, 117 Ill. App. 3d at 868, 454 N.E.2d at 56 ("trustees possess a specific statutory power to sue in a representative capacity on behalf of a trust"). The same can be said of the federal and state courts of New York. *See Henry v. von Elbe*, No. 1:04-cv-201, 2005 U.S. Dist. LEXIS 442478, at * 13 (N.D.N.Y. Aug. 25, 2005) (A plaintiff only has standing to sue on behalf of a trust where there is "a showing of a demand on the trustees to bring the suit, and a refusal so unjustifiable as to constitute an abuse of . . . discretion; or a showing that suit should be brought and that because of . . . conflict of interest . . . it is futile to make such a demand."); *Orentreich v. Prudential Ins. Co. of Am.*, 275 A.D.2d 685, 685 (N.Y. App. Div. 2000) (holding that where a party was suing on an action arising out of the purchase of life insurance policies, where the policies are owned by a trust, "only the trustee, who was not named as a plaintiff in that capacity, may seek their recession or damages attributable to their issuance") (citing to Restatement [Second] of Trusts §§ 280-282); *Gebbie Found., Inc. v. Rogerson*, 310 N.Y.S.2d 919, 923 (N.Y. Sup. Ct., Erie Co. 1970) ("As long as the trustee is ready and willing to take the proper proceedings against the third person, the beneficiaries cannot maintain a suit against him."). Moreover, the trust document governing the Trust explicitly states that only the trustee may file a claim on behalf of the Trust. (Ex. G). All of this information was produced to the Panel.

Here, Cikanek brought a claim in arbitration against Joseph Stevens as an individual, and not in his representative capacity on behalf of the Trust account.[6] As a consequence, he lacked

---

[6] Although Cikanek was the grantor of the trust, a grantor has no standing to bring a claim on behalf of a trust and cannot receive any award of damages to the trust. *See U.S. v. Two Million Seven Hundred Sixty-Seven Thousand Two Hundred and Two Dollars and Twenty Seven Cents ($2,767,202.27)*, No. 03-1289, 2006 U.S. Dist. LEXIS 47833, at *5-6 (C.D. Ill. July 13, 2006) (finding that the grantor of a trust lacked standing to bring a claim on behalf of the trust or to recover losses on an investment made by the trust); *Levenfeld v. Clinton*, No. 83-C-3677, 1986 U.S. Dist. LEXIS 27109 (N.D. Ill. April 7, 1986).

the requisite standing under Illinois law to pursue any claims for damages to the Trust account. Indeed, Cikanek's counsel acknowledged this bar to recovery, which he mischaracterized as a "legal technicality," and admitted that the Trust had neither brought a claim nor filed a Uniform Submission Agreement. (Ex. A, pp. 24-25). In the face of the well established law and the admissions of Cikanek, and after admitting that the law had been made clear, the chairman allowed all the presentation of evidence regarding the Trust and awarded damages on that basis.

The Panel was aware that David Cikanek, as an individual, lacked any standing to bring suit on behalf of the Trust and that he failed to bring the claim in arbitration against Joseph Stevens in his capacity as the trustee of the Trust account. Joseph Stevens' counsel directed the arbitrators to the governing law which prohibited the award of alleged damages incurred by the Trust to Cikanek and maintained a running objection to Cikanek's presentation of evidence relating to the Trust. (Ex. A, pp. 17-25). Moreover, the arbitrators were aware that the beneficiaries of the Trust were persons other than Cikanek who had no representation at the hearing. (Ex. A, pp. 93-94; Ex. G). Nevertheless, the arbitrators fashioned an award for damages to the Trust and allowed Cikanek to recover them personally.

As explained above in Part II, the account activity and any alleged losses in Mr. Cikanek's individual account were minimal and could not have merited an award to Cikanek of $47,500 in compensatory damages, and $166,250 in punitive damages. Viewed in a vacuum, the award is, at best, irrational. However, when viewed in light of the arbitrators' behavior in this case, it is clear that the award is based upon their consideration of evidence regarding the Trust. Consequently, the award should be vacated because pursuant to the laws of both New York and Illinois. David Cikanek cannot recover damages that should rightfully belong to the Trust and the Panel acted in manifest disregard of the law when it entered the award.

## CONCLUSION

Based on the foregoing, Petitioner Joseph Stevens respectfully requests that this Court vacate the arbitration award rendered in Matter of the Arbitration between David Cikanek and Joseph Stevens & Company, Inc., Kevin Brody, Leonard Joseph Inserra, and Ross Inserra, NASD Arbitration No. 06-1868, or, in the alternative, remand it for clarification of the basis of the compensatory and punitive damages.

Dated: May 16, 2008

                              Respectfully submitted,

                              **BUTZEL LONG**

                By:    /S/ Alison B. Cohen_____
                         Alison B. Cohen
                         380 Madison Avenue
                         New York, New York 10017
                         Cohen@butzel.com
                         Phone: 212-818-1110
                         Fax: 212-818-0494

                         Attorneys for Petitioner
                         Joseph Stevens & Company, Inc.

## CERTIFICATE OF SERVICE

The undersigned certifies that **Petitioner's Memorandum of Law in Support of Joseph Stevens & Company, Inc.'s Application to Vacate the Arbitration Award** was filed electronically in compliance with the General Order on Electronic Case Filing, Section III(B)(1). As such, these documents were served on all counsel who are deemed to have consented to electronic service. Fed. R. Civ. P. 5(b)(2)(D) and Local Rule 5.9.

                              /s/ Alison B. Cohen
                              One of the Attorneys for Petitioner
                              Joseph Stevens & Company, Inc.