LEXSEE 2006 U.S. DIST. LEXIS 70533


Analysis
As of: May 15, 2008

SPHERE DRAKE INSURANCE LIMITED, Petitioner, v. THE LINCOLN NATIONAL LIFE INSURANCE COMPANY and FORT WAYNE HEALTH AND CASUALTY INSURANCE COMPANY, Respondents.

No. 05 C 6411

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

2006 U.S. Dist. LEXIS 70533

September 13, 2006, Decided
September 13, 2006, Filed

**PRIOR HISTORY:** *Sphere Drake Ins. Co. v. All Am. Life Ins. Co.*, 103 Fed. Appx. 39, 2004 U.S. App. LEXIS 15264 (7th Cir. Ill., 2004)

**COUNSEL:** [*1] For Sphere Drake Insurance Limited, Petitioner: James I. Rubin, Kevin Jason O'Brien, Mark A Schwartz, Teresa Lynn Snider, Butler Rubin Saltarelli & Boyd LLP, Chicago, IL.

For The Lincoln National Life Insurance Company, Fort Wayne Health and Casualty Insurance Company, Respondents: John Paul Flynn, Mark Jeremy Seifert, Latham & Watkins LLP, San Francisco, CA; John J Marhoefer, Latham & Watkins LLP (IL), Chicago, IL; Stephen Stublarec, Latham & Watkins, San Francisco, CA.

**JUDGES:** William T. Hart, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** William T. Hart

**OPINION**

*MEMORANDUM OPINION AND ORDER*

The underlying dispute in this case concerns four contracts (the "Lincoln Contracts") for reinsurance between plaintiff Sphere Drake Insurance Limited (an English reinsurance company) and defendant Lincoln, [1] the reinsured, which were among approximately 112 reinsurance contracts placed by English reinsurance brokers Stirling Cooke [2] with Sphere Drake underwriting agent Euro International Underwriters Ltd. ("EIU"). Sphere Drake dishonored all or most of these reinsurance contracts, contending they were void *ab initio* because EIU exceeded its authority to make placements on behalf of Sphere [*2] Drake and Stirling Cooke knew of this lack of authority. The dishonoring of the contracts has resulted in litigation on both sides of the Atlantic, as well as arbitrations. *See, e.g., Sphere Drake Insurance Ltd. v. American General Life Insurance Co.*, 376 F.3d 664 (7th Cir. 2004); *Sphere Drake Insurance Ltd. v. All American Life Insurance Co.*, 307 F.3d 617 (7th Cir. 2002), cert. denied, 538 U.S. 961, 123 S. Ct. 1754, 155 L. Ed. 2d 512 (2003); *Sphere Drake Insurance Ltd. v. Clarendon National Insurance Co.*, 263 F.3d 26 (2d Cir. 2001); *Sphere Drake Insurance Ltd v Euro International Underwriting Ltd.*, 2003 WL 21729222 (Q.B.D. Commercial Ct. July 8, 2003) (the "English Judgment" or "English Proceeding"). Lincoln initiated an arbitration of the dispute regarding the Lincoln Contracts. On

November 2, 2005, the arbitration panel applied collateral estoppel based on the English Judgment, ruling in Sphere Drake's favor. Sphere Drake has moved to confirm the arbitration award and Lincoln has moved to vacate the award.

> 1   There are two named defendants, Lincoln National Life Insurance Company and Fort Wayne Health & Casualty Insurance Company. The pleadings do not distinguish between the two defendants. As do the parties, the two defendants will be treated identically and referred to simply as "Lincoln."

[*3]
> 2   For purposes of today's ruling, it is unnecessary to detail or distinguish the Stirling Cooke entities.

In a letter dated December 9, 2004 (Snider Aff., Exh. 6, Attach. 4), Lincoln demanded arbitration based on the arbitration clause contained in each of the Lincoln Contracts. The clause in each contract is identical. As to the subject matter of arbitration, the clause provides: "Disputes between the parties arising out of this Reinsurance which cannot be resolved by compromise, including but not limited to any controversy as to the validity of this Reinsurance, whether such disputes arise before or after termination of this Reinsurance shall be submitted to arbitration." Snider Aff., Exh. 6, Attach. 4, App. A, Art. 24. The clause also provides: "The majority decision of the arbitration panel shall be in writing and shall be final and binding upon the parties. The arbitrators shall make their award with a view to effecting the intent of this Contract." *Id.* Among the disputes subject to arbitration that are listed in Lincoln's demand for arbitration is: "Sphere Drake is obligated to perform [*4] each of the Agreements by paying claims presented by Lincoln pursuant to the Agreements." Snider Aff., Exh. 6, Attach. 4 P 2(a). The demand for arbitration also recites relief that will be sought in arbitration, including a "declaration that Sphere Drake is obligated to perform under each of the Agreements" and "[s]uch further orders as deemed necessary to effect a just resolution of this dispute." *Id.* PP 3(a), (c).

Since it contended the Lincoln Contracts were void, Sphere Drake also believed the arbitration provisions were unenforceable. [3] Without waiving its right to contend the Lincoln Contracts were void, Sphere Drake agreed to arbitrate the parties' dispute. In response to Lincoln's December 9 demand, Sphere Drake sent a letter dated December 28, 2004 in which it stated in part:

> As Sphere Drake has previously advised Lincoln, Sphere Drake's position is that each of the purported reinsurance agreements between Lincoln and Sphere Drake is void. Under the Federal Arbitration Act, because the contracts themselves are void, the arbitration clauses are unenforceable. Notwithstanding (and fully reserving) its position that the contracts are [*5] void, Sphere Drake agrees to arbitrate the parties' dispute over the existence and enforceability of these contracts.

Snider Aff., Exh. 2 at 1.

> 3   In another lawsuit involving a different reinsured but the same issue regarding EIU's excess authority, the Seventh Circuit held that, if EIU exceeded its authority to act on Sphere Drake's behalf, the contract was void and the arbitration provision unenforceable. In determining whether the arbitration provision was enforceable, it was for the court to decide in the first instance whether EIU had proper authority. *See Sphere Drake Insurance Ltd. v. All American Insurance Co.*, 256 F.3d 587, 590-92 (7th Cir. 2001). *See also Sphere Drake Insurance Ltd. v. American General Life Insurance Co.*, 376 F.3d 664, 668 (7th Cir. 2004).

The parties' arbitration panel consisted of an arbitrator appointed by each party and an umpire apparently agreed upon by the two appointed arbitrators. All three are certified as arbitrators by the [*6] AIDA Reinsurance and Insurance Arbitration Society ("ARIAS i U.S."). [4] An initial organizational meeting was held. Sphere Drake moved for summary judgment based on the collateral estoppel (issue preclusion) effect of the English Judgment in which the court had ruled in favor of Sphere Drake and against EIU and Stirling Cooke. Lincoln was provided a full opportunity to oppose the motion for summary judgment, with each side filing a brief and exhibits in support of its position. Prior to ruling on the motion, the panel held a hearing at which both sides argued their positions. No evidentiary hearing was held.

4 The appointment procedure is consistent with ARIAS i U.S. rules. *See Sphere Drake Insurance Ltd. v. All American Life Insurance Co.*, 307 F.3d 617, 619-20 (7th Cir. 2002). It apparently is inconsistent with the arbitration clause of the Lincoln Contracts which provided that each side appoint one arbitrator and that they agree to the third arbitrator, but each arbitrator was to be "disinterested" and "not under the control of either party." In any event, the parties expressly or implicitly agreed to the appointment procedure that was followed and no objection was raised to the arbitrators that were selected.

[*7] After considering the written submissions and oral arguments, the panel (including Lincoln's appointee) unanimously agreed as to the "Final Award." The body of the Final Award reads in its entirety:

> Respondent Sphere Drake Insurance Limited ("Sphere Drake") has moved this Panel for an order granting summary judgment in its favor. In its motion, Sphere Drake asserts that the July 8, 2003 judgment rendered by the High Court of Justice in *Sphere Drake Insurance Limited v. Euro International Underwriting Ltd., et al*, Case No. 2000 Folio 249, 2003 WL 21729222 (Q.B. July 8, 2003) (the "English Judgment") should be given preclusive effect in this arbitration. Sphere Drake argues that the four purported reinsurance contracts between Sphere Drake and Petitioners The Lincoln National Life Insurance Company and Fort Wayne Health and Casualty Insurance Company ("Lincoln") at issue in this proceeding are void and unenforceable based on application of the laws of contract formation to the findings in the English Judgment. Accordingly, Sphere Drake contends that it is entitled to summary judgment in its favor. A list of the four contracts at issue (the "Lincoln Contracts") is [*8] appended as an Exhibit to this Final Award. Sphere Drake and Lincoln submitted briefs in support of and in opposition to Sphere Drake's Motion. On November 1, 2005, a hearing was held in Chicago, Illinois, during which the Panel heard oral argument on Sphere Drake's Motion.
>
> After deliberation, the Panel finds and concludes as follows:
>
> 1. The English Judgment precludes Lincoln from relitigating the following issues:
>
>> (a) whether Euro International Underwriting Ltd. ("EIU") was without authority to bind Sphere Drake to the Lincoln Contracts, and
>>
>> (b) whether Stirling Cooke Brown Reinsurance Brokers Limited and Stirling Cooke Brown Insurance Brokers Limited, agents for Lincoln, knew that EIU was without authority to bind Sphere Drake to the Lincoln Contracts.
>
> 2. Applying the law applicable to contract formation to the findings in the English Judgment, the Lincoln Contracts are void *ab initio*.
>
> 3. Because the Lincoln Contracts are void as a matter of law, there is no need for an evidentiary hearing in this matter and Judgment is entered in Sphere Drake's favor. Sphere Drake's Motion for Summary Judgment is granted and this arbitration is concluded.
>
> So ordered, [*9] this 2nd day of November, 2005.

Snider Aff., Exh. 9.

The parties agree that both the Federal Arbitration Act ("FAA""), *9 U.S.C. §§ 1-16*, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), *9 U.S.C. §§ 201-08*, apply to

this case. Lincoln raises two overlapping grounds for denying enforcement of and vacating the arbitration award. Lincoln contends it was improperly denied an evidentiary hearing, which is a ground for vacating the award under *FAA § 10(a)(3)* ("arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy") or refusing enforcement under Convention Article V(1)(b) ("party against whom award is invoked . . . was otherwise unable to present his case"). As to this case, Lincoln does not contend that Article V(1)(b) is any different than *§ 10(a)(3)*. The second related ground is that the arbitration panel exceeded its authority by giving a preclusive effect to the findings of the English court instead of holding an evidentiary hearing and making its own findings. Lincoln contends that is a ground for denying [*10] enforcement under *FAA § 10(a)(4)* ("arbitrators exceeded their powers").

Regardless of whether the Lincoln Contracts were otherwise enforceable, Lincoln demanded and Sphere Drake agreed to arbitrate in accordance with the arbitration clause of the Lincoln Contracts. Implicit in that agreement to arbitrate in accordance with the clause was that the parties could agree to modify procedures, such as by agreeing to use ARIAS i U.S. arbitrators. Nothing in the arbitration clause itself nor the letters between the parties addresses the issue of an evidentiary hearing or the binding effect of other litigation or arbitrations. There is no language requiring that the arbitration panel hold an evidentiary hearing and find facts nor any language prohibiting the panel from according a preclusive effect to prior litigation. Also, the parties do not point to any ARIAS i U.S. rules or other rules that the parties may have agreed to follow that are pertinent to this issue.

Lincoln's second ground, that the arbitration panel exceeded its authority, will be addressed first. Unlike the issue of whether the parties agreed to arbitrate a claim, the question of whether the arbitrator exceeded its authority [*11] is subject to deferential review. *CUNA Mutual Insurance Society v. Office & Professional Employees International Union, Local 39, 443 F.3d 556, 562-63 (7th Cir. 2006)*. Also, when an agreement to arbitrate exists, any related procedural issues are presumed to be subject to arbitration and any ambiguities as to the scope of the arbitration are resolved in favor of arbitration. *Employers Insurance Co. of Wausau v. Century Indemnity Co., 443 F.3d 573, 577 (7th Cir. 2006); County of McHenry v. Insurance Co. of the West, 438 F.3d 813, 821 (7th Cir. 2006); United States Fire Insurance Co. v. National Gypsum Co., 101 F.3d 813, 817 (2d Cir. 1996), cert. denied, 521 U.S. 1120, 117 S. Ct. 2512, 138 L. Ed. 2d 1015 (1997)*.

Here, the parties agreed to have the arbitration panel resolve disputes arising out of the Lincoln Contracts, including disputes that arose after the contracts were terminated. The parties agree that their dispute regarding the enforceability of the Lincoln Contracts is subject to arbitration. The parties' arbitration agreement did not require that any specific hearing procedure be followed nor did it prohibit the arbitration panel [*12] from deciding issues of preclusion. Absent any such special provisions, issues that relate to the merits of the dispute, including the preclusive effect of prior rulings, are part of the dispute to be decided by the arbitration panel. *Consolidation Coal Co. v. United Mine Workers of America, District 12, Local Union 1545, 213 F.3d 404, 407 (7th Cir. 2000); Independent Lift Truck Builders Union v. NACCO Materials Handling Group, Inc., 202 F.3d 965, 968 (7th Cir. 1994); Chicago Typographical Union No. 16 v. Chicago Sun-Times, Inc., 860 F.2d 1420, 1424 (7th Cir. 1988); Chiron Corp. v. Ortho Diagnostic Systems, Inc., 207 F.3d 1126, 1132-33 (9th Cir. 2000); National Gypsum, 101 F.3d at 817; National Union Fire Insurance Co. of Pittsburgh, Pa. v. Belco Petroleum Corp., 88 F.3d 129, 135-36 (2d Cir. 1996); Little Six Corp. v. United Mine Workers of America, Local Union No. 8332, 701 F.2d 26, 28-29 (4th Cir. 1983)*.

Cases relied upon by Lincoln to support its § 10(a)(4) excess authority argument generally are distinguishable. In *International Union, United Mine Workers of America v. Marrowbone Development Co., 232 F.3d 383, 388-89 (4th Cir. 2000)*, [*13] [5] the arbitrator exceeded his authority because he failed to follow provisions in the parties' agreement requiring that the arbitrator "conduct a hearing in order to hear testimony, receive evidence and consider arguments" unless "the parties have agreed that there is no question of fact." No similar provision is contained in the agreement between Sphere Drake and Lincoln. In *Westvaco Corp. v. Local 579, United Paperworkers, International Union, 1992 U.S. Dist. LEXIS 18206, 1992 WL 121372 *7 (D. Mass. March 5, 1992)*, the court actually held that determining the effect of prior arbitrations was within the authority of the arbitrator. It was the manner in which the arbitrator relied on the prior

Case 1:08-cv-00706   Document 58-2   Filed 05/16/2008   Page 5 of 9

Page 5
2006 U.S. Dist. LEXIS 70533, *13

arbitration that was inconsistent with the parties' contract and therefore exceeded his authority, including that he ruled certain additional evidence was pertinent, but then refused to consider it. *See id. 1992 U.S. Dist. LEXIS 18206, WL at *7-8.* One case does support Lincoln. In *Union Appointed Trustees of Tapers Industry Insurance & Annuity Funds v. Employer-Appointed Trustees of Tapers Industry Insurance & Annuity Funds, 714 F. Supp. 104, 106 (S.D.N.Y. 1989), aff'd by unpublished order, 898 F.2d 137 (2d Cir. 1990),* [*14] the court held it was improper to simply give a *res judicata* (claim preclusion) effect to prior court rulings because the issue for arbitration was interpretation of the parties' collective bargaining agreement, not interpretation of prior court decisions. Unless this case should be read as relying on the specific language of the parties' statement of the issue for arbitration, this case is inconsistent with the Seventh Circuit precedents cited above, as well as the subsequent Second Circuit precedents that are cited. This case will not be followed.

    5    Below, *Marrowbone* is discussed in greater detail regarding Lincoln's § 10(a)(3) argument.

Enforcement of the arbitration will not be denied based on the arbitration panel exceeding its authority. Deciding the issue of the collateral estoppel effect of the English Judgment was within the scope of the parties' arbitration agreement.

As to the other ground raised by Lincoln, nonenforcement under *§ 10(a)(3)* is to be based on refusal to hear evidence that [*15] is "pertinent and material to the controversy." Hearing evidence is not pertinent and material to a controversy if the pertinent facts or issues can be resolved based on other methods of resolution, such as issue or claim preclusion, *Marshall v. Green Giant Co., 942 F.2d 539, 550-51 (8th Cir. 1991)* ("the evidence could have had no bearing on the case because the arbitrator decided that Green Giant was collaterally estopped from relitigating the meaning of the contracts"); summary judgment, *Wise v. Wachovia Securities LLC, 2005 U.S. Dist. LEXIS 13630, 2005 WL 1563113 *2-3 (N.D. Ill. May 4, 2005), aff'd, 450 F.3d 265, 268 (7th Cir. 2006); In re Arbitration between InterCarbon Bermuda, Ltd. & Caltex Trading & Transport Corp., 146 F.R.D. 64, 72-74 (S.D.N.Y. 1993);* a ruling on the pleadings, *Sheldon v. Vermonty, 269 F.3d 1202, 1207 (10th Cir. 2001); Warren v. Tacher, 114 F. Supp. 2d 600, 602 (W.D. Ky. 2000); Max Marx Color & Chemical Co. Employees' Profit Sharing Plan v. Barnes, 37 F. Supp. 2d 248, 252 (S.D.N.Y. 1999);* or stipulations, *Sphere Drake Insurance Ltd. v. All American Life Insurance Co., 2004 U.S. Dist. LEXIS 3494, 2004 WL 442640* [*16] *4-8 (N.D. Ill. March 8, 2004), aff'd by unpublished order, 103 F. App'x 39 (7th Cir. 2004); Swift Independent Packing Co. v. District Union Local One. United Food & Commercial Workers International Union, AFL-CIO. C.L.C., 575 F. Supp. 912, 918 (N.D.N.Y. 1983).* Also, a denial of enforcement based on a refusal to hear evidence must be based on "misconduct" of the arbitrator, which has been read as meaning the procedure employed was fundamentally unfair. *Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 280 & n.13 (7th Cir. 1992); Lee v. McDonald Securities Inc., 2004 U.S. Dist. LEXIS 19293, 2004 WL 2535277 *3 (N.D. Ill. Sept. 27, 2004).* See also *Generica Ltd. v. Pharmaceutical Basics, Inc., 125 F.3d 1123, 1129-30 (7th Cir. 1997)* (Convention Article-V(1)(b)'s provision regarding being "unable to present his case" equates to due process, requiring that the procedures provided be fundamentally fair).

As previously discussed, it was within the authority of the arbitration panel to apply rules of collateral estoppel. In that circumstance, it is not misconduct on the part of an arbitration panel simply because it resolved a dispute [*17] based on collateral estoppel and thereby eliminated the need to hear evidence. *Marshall, 942 F.2d at 550-51; R.M. Perez & Associates, Inc. v. Welch, 960 F.2d 534, 539-40 (5th Cir. 1992); Miller v. Runyon, 77 F.3d 189, 194 (7th Cir.), cert. denied, 519 U.S. 937, 117 S. Ct. 316, 136 L. Ed. 2d 231 (1996) (dictum).* Lincoln was provided a full and fair opportunity to brief and argue the collateral estoppel issue to the arbitration panel. It was not denied a fair hearing on the issue of the applicability of collateral estoppel. *Cf. Sheldon, 269 F.3d at 1207; Sphere Drake Insurance Ltd. v. All American Life Insurance Co., 2004 U.S. Dist. LEXIS 3494, 2004 WL 442640 *4-5 (N.D. Ill. March 8, 2004), aff'd by unpublished order, 103 F. App'x 39 (7th Cir. 2004).*

Citing to *Marrowbone, 232 F.3d at 389-90,* and *Westvaco, 1992 U.S. Dist. LEXIS 18206, 1992 WL 121372 at *7-9,* Lincoln contends: "The wholesale refusal to permit a party to present *any* evidence, based on an inappropriate application of collateral estoppel, presents a[] . . . compelling case for vacating an arbitration award." Lincoln Br. at 5. These two cases do not [*18] support that proposition. *Marrowbone* is not a

Case 1:08-cv-00706   Document 58-2   Filed 05/16/2008   Page 6 of 9

Page 6
2006 U.S. Dist. LEXIS 70533, *18

collateral estoppel case. Instead it is a case in which the arbitrator unilaterally applied a ruling in a related court case to the arbitration that was before him. The arbitrator had remanded the parties to a prior step of the grievance procedure in which they were to attempt to resolve the dispute themselves. Prior to the completion of that step, however, the arbitrator read a court case regarding a related arbitration and unilaterally ruled in the employer's favor based on the court case without giving the parties an opportunity to complete the prior step or the union an opportunity to present evidence showing the circumstances of the present arbitration were different from the related arbitration. Thus, the arbitrator was applying case precedent, not collateral estoppel, and did not let the union present an argument regarding the related court case, let alone present evidence. [6] That is unlike the present situation where Lincoln was provided a full opportunity to argue against the application of collateral estoppel. To the extent *Marrowbone* should be read as broadly as Lincoln contends, this court will instead follow *Marshall* [*19] , *Perez*, and the Seventh Circuit's *dictum* in *Miller*. Also, as is discussed below, inappropriate application of a legal rule such as collateral estoppel can only be a basis for denying enforcement in very limited circumstances.

> 6  Sphere Drake contends that *Marrowbone* is distinguishable because it involves a situation where the arbitrator exceeded his authority in that the parties' arbitration agreement specifically required that he hear evidence. *See id.*, *232 F.3d at 388-89*. The Fourth Circuit, however, made two distinct and sufficient holdings. One was based on excess authority and the other, which Lincoln relies upon, is based on failure to provide an opportunity for a full and fair hearing. *See id. at 389-90*.

In *Westvaco*, the arbitrator's error was not that he found evidence need not be considered because collateral estoppel conclusively resolved the issue. Instead, the arbitrator stated that, based on collateral estoppel, he would follow the ruling [*20] in a prior similar arbitration unless that ruling was clearly erroneous. He also indicated that additional evidence not submitted at the prior arbitration would be relevant to deciding the clearly erroneous issue, but refused to permit the employer to submit the additional evidence on the ground that precluding the evidence would decrease disputes. The court held that such a procedure was inconsistent with the parties' contractual agreement. *Westvaco, 1992 U.S. Dist. LEXIS 18206, 1992 WL 121372 at *8*. That is not the situation in the present case; applying collateral estoppel is not barred by the parties' agreement to arbitrate and the arbitration panel permitted Lincoln to make a full presentation regarding why collateral estoppel should not apply.

Lincoln also argues the merits of the panel's collateral estoppel ruling, contending that this goes to the fundamental fairness of the arbitration proceeding. Ordinarily, an arbitrator's factual or legal error or other type of mistake in ruling on the merits of a dispute cannot be a basis for a court denying enforcement of the arbitrator's award. *Wise, 450 F.3d at 268-69*; *Baxter International, Inc. v. Abbott Laboratories, 315 F.3d 829, 831* [*21] *(7th Cir.), cert. denied, 540 U.S. 963, 124 S. Ct. 387, 157 L. Ed. 2d 305 (2003)*; *Flexible Manufacturing, Systems Pty. Ltd. v. Super Products Corp., 86 F.3d 96, 99-100 (7th Cir. 1996)*; *Miller, 77 F.3d at 194 (dictum)*; *Holden v. Deloitte & Touche LLP, 390 F. Supp.2d 752, 772-73 (N.D. Ill. 2005)*; *Refino v. Feuer Transportation, Inc., 480 F. Supp. 562, 567 (S.D.N.Y. 1979), aff'd by unpublished order, 633 F.2d 205 (2d Cir. 1980)* (declining to review merits of arbitrator's application of *res judicata*). Courts recognize "manifest disregard of the law" as a ground for denying enforcement, but the Seventh Circuit has narrowly construed that ground as being limited to a situation where the arbitrator has exceeded his or her powers--a § *10(a)(4)* ground--by "direct[ing] the parties to violate the law." *Wise, 450 F.3d at 268-69* (quoting *George Watts & Son, Inc. v. Tiffany & Co., 248 F.3d 577, 580 (7th Cir. 2001))*. Lincoln does not contend that the manifest error of law standard has been satisfied.

Lincoln instead attempts to fit its argument as to the panel's improper application of [*22] collateral estoppel under § *10(a)(3)* by invoking due process concerns regarding the application of collateral estoppel. "It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard." *Parklane Hosiery Co. v. Shore, 439 U.S. 322, 327 n.7, 99 S. Ct. 645, 58 L. Ed. 2d 552 (1979)* (citing *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 329, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971))*. *See also Hansberry v. Lee, 311 U.S. 32, 40-41, 61 S. Ct. 115, 85 L. Ed. 22 (1940)*; *Tice v. American Airlines, Inc., 162 F.3d 966, 973 (7th Cir. 1998), cert. denied, 527 U.S.*

Case 1:08-cv-00706   Document 58-2   Filed 05/16/2008   Page 7 of 9

Page 7
2006 U.S. Dist. LEXIS 70533, *22

*1036, 119 S. Ct. 2395, 144 L. Ed. 2d 795 (1999).* Stirling Cooke was a party in the English Proceeding. Lincoln was not. [7] Specifically as to the Lincoln Contracts, as well as the other 108 reinsurance contracts brokered by Stirling Cooke, the English Judgment found that the contracts were void because Stirling Cooke knowingly conspired with EIU to exceed EIU's authority under its agreement with Sphere Drake. The arbitration panel found the English Judgment to be binding on Lincoln. Although, the arbitration panel's award does not specifically [*23] refer to the application of privity, Sphere Drake argued to the panel that collateral estoppel should be applied based on Lincoln being in privity with Stirling Cooke because Stirling Cooke was Lincoln's agent. There would have been no other basis for the panel's decision that the English Judgment had a preclusive effect on Lincoln. Lincoln contends that it was error to find it to be in privity with Stirling Cooke and therefore the procedures employed by the arbitration panel violated due process, resulting in a fundamentally unfair procedure.

> 7   Although Lincoln itself did not participate in the English Proceeding, it was fully aware of the Proceeding. It does not dispute the representation in Sphere Drake's brief before the arbitration panel (page 29, n.15) that Lincoln received daily copies of transcripts of the English Proceeding.

As regards the Convention, the Seventh Circuit has held that a fundamentally fair arbitration hearing is one that essentially equates with due process. *Generica, 125 F.3d at 1129-30* [*24] (Article V(1)(b)); *Slaney v. International Amateur Athletic Federation, 244 F.3d 580, 592 (7th Cir.), cert. denied, 534 U.S. 828, 122 S. Ct. 69, 151 L. Ed. 2d 35 (2001)* (same). See also *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 364 F.3d 274, 298-99 (5th Cir.), cert. denied, 543 U.S. 917, 125 S. Ct. 59, 160 L. Ed. 2d 202 (2004).* The same rule has been applied under the FAA. *Sphere Drake Insurance Ltd. v. All American Life Insurance Co., 2004 U.S. Dist. LEXIS 3494, 2004 WL 442640 *4 (N.D. Ill. March 8, 2004) (§ 10(a)(3)), aff'd by unpublished order, 103 F. App'x 39 (7th Cir. 2004); Stulberg v. Intermedics Orthopedics, Inc., 1999 U.S. Dist. LEXIS 14284, 1999 WL 759608 *9 (N.D. Ill. Aug. 31, 1999)* (FAA). The focus is on adequate notice, a hearing on the evidence, and an impartial decision meeting the minimal requirements of fairness. See *Generica, 125 F.3d at 1130* (quoting *Sunshine Mining Co. v. United Steelworkers of America, AFL-CIO, CLC, 823 F.2d 1289, 1295 (9th Cir. 1987)); Slaney, 244 F.3d at 592* (same). Stated another way, it "is the opportunity to be heard 'at a meaningful time and in a meaningful [*25] manner.'" *Mathews v. Eldridge, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)* (quoting *Armstrong v. Manzo, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)); Generica, 125 F.3d at 1129; Stulberg, 1999 U.S. Dist. LEXIS 14284, 1999 WL 759608 at *9.* "Nevertheless, parties that have chosen to remedy their disputes through arbitration should not expect the same procedures they would find in the judicial arena." *Slaney, 244 F.3d at 592. accord Generica, 125 F.3d at 1130.*

Lincoln mistakenly assumes that all aspects of privity go to due process. The issue is not whether, under Seventh Circuit law, Lincoln was in privity with Stirling Cooke, but whether the arbitration panel's finding of privity comported with the minimal requirements of due process necessary for an arbitration proceeding to be fundamentally fair. Privity is no longer a specific doctrine, but a label. "'[P]rivity' is now seen as 'a descriptive term for designating those with a sufficiently close identity of interests. . . . [T]he privity label simply expresses a conclusion that preclusion is proper.'" *Tice, 162 F.3d at 971* (quoting *In re L & S Industries, Inc., 989 F.2d 929, 932-33 (7th Cir. 1993)).* [*26] See also Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure; Jurisdiction 2d* § 4448 at 326-27 (2002) ("As to privity, current decisions look directly to the reasons for holding a person bound by a judgment. This method should be adopted generally, so that a privity label is either discarded entirely or retained as no more than a convenient means of expressing conclusions that are supported by independent analysis."). The determination of privity "is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Tice, 162 F.3d at 971* (quoting *In re Schimmels, 127 F.3d 875, 881 (9th Cir. 1997)).* The overarching fact-specific question is "whether there was (or should be implied at law) the kind of link between the earlier and later plaintiffs that justifies binding the second group to the result reached against the first. . . . A proper functional analysis of privity, focusing on the general question whether the earlier parties were in some sense proper agents for the later parties, would therefore support preclusion. . . ." *Tice, 162 F.3d at 971.* [*27]

While particular jurisdictions can set their own limits

Case 1:08-cv-00706   Document 58-2   Filed 05/16/2008   Page 8 of 9

Page 8
2006 U.S. Dist. LEXIS 70533, *27

as to what types of relationships and circumstances satisfy privity, due process analysis only defines the outer limits and extremes to which privity may go. *See Richards v. Jefferson County, Alabama, 517 U.S. 793, 797-98, 116 S. Ct. 1761, 135 L. Ed. 2d 76 (1996)*. While Lincoln contends that collateral estoppel requires *both* that it have participated in the prior litigation and be adequately represented by its privity, there is no such due process limitation. Instead, privity is the type of relationship where a party who did not actually participate in the prior litigation may nevertheless be bound by it. *Id. at 798*. The due process limits of privity are no more precisely defined than privity in general. The adequacy of the representation appears to be the principal focus of the due process inquiry into privity. *See Richards, 517 U.S. at 798* (quoting *Martin v. Wilks, 490 U.S. 755, 762 n.2, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989)*); *Kourtis v. Cameron, 419 F.3d 989, 996-98 & n.5 (9th Cir. 2005)*; *Bittinger v. Tecumseh Products Co., 123 F.3d 877, 881 (6th Cir. 1997)*. If, in the due process [*28] sense, Stirling Cooke cannot be considered an adequate representative of Lincoln, then it was fundamentally unfair to deny Lincoln its own evidentiary hearing before the arbitration panel.

But who is to decide whether Lincoln and Stirling Cooke were in privity? Although collateral estoppel has procedural implications regarding how facts are decided, it is considered to be substantive law not procedural law. *Extra Equipamentos e Exportacao Ltda. v. Case Corp., 361 F.3d 359, 364 (7th Cir. 2004)*. The parties contracted to have an arbitration panel decide the dispute between them. The panel decided that the relationship between Lincoln and Stirling Cooke was one of privity for purposes of collateral estoppel. Ordinarily, a court accords great deference to the decision of the arbitrator. *See Dexter Axle Co. v. International Association of Machinists & Aerospace Workers. Dist. 90. Lodge 1315, 418 F.3d 762, 768 (7th Cir. 2005)*; *American Postal Workers Union, AFL-CIO, Milwaukee Local v. Runyon, 185 F.3d 832, 835 (7th Cir. 1999)*; *Cremin v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 434 F. Supp. 2d 554, 559 (N.D. Ill. 2006)*. [*29] In *Marshall, 942 F.2d at 550-51*, the court deferred to the arbitrator's decision regarding collateral estoppel even though it eliminated the need for a hearing. But there, the challenges to applying collateral estoppel apparently did not themselves involve due process issues. *See Marshall v. Green Giant Co., 1990 U.S. Dist. LEXIS 12294, 1990 WL 134425 *2 (D. Minn. Sept. 13, 1990), aff'd in part, vacated in part, Marshall, 942 F.2d 539* (losing party contended identity of issues requirement was not satisfied and that arbitrator ignored other prior decisions in losing party's favor). Here, the due process aspect of collateral estoppel is raised, which goes directly to the fairness of applying collateral estoppel and thereby precluding a hearing. But even if complete deference is not owed to the arbitrator's ruling, substantial deference is owed it. *Cf. CUNA, 443 F.3d at 562-63* (in challenge based on exceeding authority, defer to arbitrator's construction of issues within arbitration); *Crye-Leike, Inc. v. Thomas, 196 F. Supp. 2d 680, 686-87 (W.D. Tenn. 2002)* (in § 10(a)(3) challenge based on refusal to hear evidence, [*30] "unusual deference" is owed to arbitrator's decision to exclude evidence); *National Football League Players Association v. Office & Professional Employees International Union Local 2, 947 F. Supp. 540, 545-46 (D.D.C. 1996), aff'd by unpublished order, 1997 U.S. App. LEXIS 16355, 1997 WL 362761 (D.C. Cir. May 6, 1997)* (when challenging arbitrator's decision based on misconduct, deference is owed to evidentiary and procedural rulings absent there being an abuse of discretion); *Nitram, Inc. v. Industrial Risk Insurers, 848 F. Supp. 162, 165 (M.D. Fla. 1994)* (in § 10(a)(3) challenge based on evidentiary rulings, court gives great deference to arbitrator's evidentiary rulings), *aff'd sub nom., Industrial Risk Insurers v. M.A.N. Gutehoffnungshette GmbH, 141 F.3d 1434 (11th Cir. 1998), cert. denied, 525 U.S. 1068, 119 S. Ct. 797, 142 L. Ed. 2d 659 (1999)*.

Here, there is no dispute that Lincoln had a full opportunity to be heard on the question of whether it should be considered to be in privity with Stirling Cooke. Also, in the English Proceeding, Stirling Cooke vigorously disputed that it had knowingly and improperly conspired with EIU. Lincoln contends that Stirling [*31] Cooke cannot be considered to have been an adequate representative because the two were in conflict at the time of the English Proceeding. The two parties having the same interests is essential to privity satisfying due process. *Richards, 517 U.S. at 798* (quoting *Wilks, 490 U.S. at 762 n.2*). The conflict apparently relied upon by Lincoln is that Lincoln contended that Stirling Cooke would be liable to Lincoln for any improper procurement of reinsurance performed on behalf of Lincoln. However, the identity of interests requirement for privity is to be based on the parties' interests in the prior litigation itself. *See Tice, 162 F.3d at 973*; *Hutcherson v. Lauderdale County, Tenn., 326 F.3d 747, 759-60 (6th Cir. 2003)*. In

Case 1:08-cv-00706   Document 58-2   Filed 05/16/2008   Page 9 of 9

Page 9
2006 U.S. Dist. LEXIS 70533, *31

the prior litigation itself, however, Lincoln's interest was identical to that of Stirling Cooke. Both had an interest in proving that the Lincoln Contracts were enforceable, either because EIU had not exceeded its authority under its agreement with Sphere Drake or because Stirling Cooke was unaware that authority had been exceeded. As to the litigation itself, Lincoln contends there were differing [*32] interests because Stirling Cooke was concerned with 112 contracts that were the subject of the English Proceeding, whereas Lincoln's interest was limited to its four contracts. Lincoln contends its contracts were entered into early during the time period that Stirling Cooke brokered the 112 contracts with EIU. Lincoln contends it could have succeeded by a showing that Stirling Cooke was eventually aware of EIU's breach of duty, but not until after the Lincoln Contracts had been consummated. Lincoln contends that Stirling Cooke never attempted to make this alternative showing because it was defending as to 112 contracts. Even if Stirling Cooke did not expressly raise this alternative approach that would have limited its liability if successful, the burden was on Sphere Drake to prove Stirling Cooke's knowledge and involvement in the alleged conspiracy. It was in Stirling Cooke's interest to counter and challenge Sphere Drake's evidence regardless of the time period. Stirling Cooke opposed Sphere Drake's evidence, but the English court found it was proven that Stirling Cooke was involved in the fraudulent conspiracy from the beginning. Lincoln's and Stirling Cooke's interests in the [*33] English Proceeding were sufficiently identical to fall within the due process limitations for satisfying identity of interests.

Lincoln also contends that it was improper to base privity on Stirling Cooke having been its agent for procuring reinsurance. The panel, however, was not limited to basing its decision solely on the prior relationship. The panel was also aware that Stirling Cooke had vigorously defended the claims against it and that Stirling Cooke's interests in the litigation were identical to those of Lincoln. As previously discussed, the exact contours of the due process limitation on privity is not precisely established. The arbitration panel took briefs on the issue and heard lengthy oral arguments on the issue. It cannot be found that the arbitration panel's decision to apply collateral estoppel was clearly outside the parameters of due process limitations on applying collateral estoppel, an abuse of discretion, or otherwise outside the deference owed to the arbitration panel. The court will defer to the arbitration panel's decision that applying collateral estoppel did not represent a fundamentally unfair application of collateral estoppel. The arbitration panel's [*34] decision will be confirmed.

A status hearing will be set for September 27, 2006 at 11:00 a.m. At that status hearing, the court will consider the form of judgment to be entered. Sphere Drake shall promptly meet with Lincoln to discuss an appropriate form of judgment. The parties shall discuss whether the judgment should include any provisions regarding the return of any premiums that were previously paid by Lincoln and which likely should be refunded in light of the contracts being void. *Cf. Sphere Drake Insurance Ltd. v. American General Life Insurance Co., 376 F.3d 664, 679 (7th Cir. 2004).* By September 20, 2006, Sphere Drake shall submit to chambers a draft judgment order. Any objections to the draft must be filed by September 25, 2006.

IT IS THEREFORE ORDERED that petitioner's motion for confirmation of the arbitration award [1] is granted. Respondents' motion to vacate [20] is denied. By September 20, 2006, petitioner shall submit to chambers a draft judgment order. Any objections must be filed by September 25, 2006. A status hearing will be held on September 27, 2006 at 11:00 a.m.

William T. Hart

UNITED STATES DISTRICT JUDGE

DATED: SEPTEMBER 13, 2006