Case 1:08-cv-00706    Document 58-6    Filed 05/16/2008    Page 1 of 12
Case 1:08-cv-00706    Document 45-12    Filed 03/31/2008    Page 2 of 14

Page 1

LEXSEE 2004 U.S. DIST. LEXIS 18594

In the Matter of the Arbitration Before the New York Stock Exchange, Inc.;
CHANG RUEI-CHAN, Petitioner-Respondent, - against - MERRILL LYNCH
PIERCE, FENNER & SMITH, INC., Respondent-Claimant, NYSE DOCKET NO.
2002-0103616.

04 Civ. 488 (RWS)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
NEW YORK

*2004 U.S. Dist. LEXIS 18594*

September 7, 2004, Decided
September 8, 2004, Filed

**DISPOSITION:** Award confirmed. Merrill's application for attorney's fees granted.

**COUNSEL:** [*1] LAW OFFICES OF SEAN F. O'SHEA, Attorneys for Petitioner-Respondent, By: SEAN F. O'SHEA, ESQ., HARLAN J. PROTASS, ESQ. Of Counsel.

SPENCER B. SCHNEIDER, ESQ., Attorney for Respondent-Claimant, New York, NY.

**JUDGES:** ROBERT W. SWEET, U.S.D.J.

**OPINION BY:** ROBERT W. SWEET

**OPINION**

**Sweet, D.J.,**

Petitioner-respondent Chang Ruei-Chan ("Chang") has moved pursuant to Section 10 of the Federal Arbitration Act (the "FAA"), *9 U.S.C. § 1 et seq.*, to vacate the arbitration award rendered by an arbitration panel of the New York Stock Exchange ("NYSE") on October 15, 2003 (the "Award") in favor of respondent-claimant Merrill Lynch Pierce, Fenner & Smith, Inc. ("Merrill"). Merrill has cross-moved to confirm the Award, and both parties have requested attorney's fees. For the reasons that follow, the Award is confirmed and Merrill's application for attorney's fees is granted.[1]

> 1 Chang has alleged and Merrill has admitted that this Court has jurisdiction over the instant matter pursuant to *28 U.S.C. § 1332*, as the parties are diverse and the amount in controversy exceeds $ 75,000.

*Background*

The following facts are taken from the parties' motion papers and do not represent findings of fact.

Chang was the co-founder and chief executive officer of GigaMedia Limited ("GigaMedia"), a Taiwan-based internet company. (*See* Transcript of the Arbitration Hearing ("Tr. [*2] "), Exhibit 7 of the Affirmation of Sean F. O'Shea, dated Jan. 21, 2004 ("O'Shea Aff.", at 297-98, 303-04.) At the time of the GigaMedia initial public offering in February 2000, Chang held approximately 800,000 GigaMedia shares, which were maintained in a securities account at Merrill. *(See* Tr. at 305-06, 343-44.) By October 2003, Chang had sold all but 4,000 to 5,000 of his GigaMedia shares. *(See* Tr. at 357-58.)

On December 18, 2001, GigaMedia announced its intention to seek shareholder approval of a $ 2.00 per share return of capital dividend. *(See* O'Shea Aff., Exh. 4, at ML 1096.) On March 5, 2002, GigaMedia announced the $ 2.00 per share return of capital dividend, a record date of March 15, 2002 and a payment date of March 29, 2002.[2] *(See id.,* at ML 1099.) [*3] The ex-dividend date set by GigaMedia in conjunction with the announced capital dividend was April 1, 2002.[3] *(See* Tr. at 45; *see also* Tr. at 378-79.) On March 5, 2002, the day the dividend was announced, the bid and low price for GigaMedia shares was approximately $ 2.50 per share, which price dropped to approximately $ 0.50 per share on the ex-dividend date, April 1, 2002. *(See* Exhibit C to the Affidavit of Spencer L. Schneider, dated Mar. 10, 2004 ("Schneider Aff."); *see also* Tr. at 51-53.)

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 2 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 3 of 14

Page 2

2004 U.S. Dist. LEXIS 18594, *

2   The "record date" is the "date fixed by the trustee, registrar, paying agent or issuer for the purpose of determining the holders of equity securities, bonds, similar evidences of indebtedness or unit investment trust securities entitled to receive dividends, interest or principal payments or any other distributions *(See* NASD Uniform Practice Code Rule 11120(e), O'Shea Aff., Exh. 1; *see also* Tr. at 45.)* Put simply, the record date is the date on which one must be a stockholder of record "to receive a dividend declared by that company." *Limbaugh v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 732 F.2d 859, 861 (11th Cir. 1984)* (emphasis omitted). The payment or payable date is the date on which the dividend is to be paid. *(See* Tr. at 45.)

[*4]

3   The "ex-dividend date" is the "date on and after which the security is traded without a specific dividend or distribution." (NASD Uniform Practice Code Rule 11120(c), O'Shea Aff., Exh. 1; *see also* Tr. at 46.) In other words, the market price of stock sold before the ex-dividend date includes the amount of the dividend, but for shares sold on or after the ex-dividend date, the market price is "adjusted downward so that the amount of the distribution is reflected in the current stock price." (NASDNotice 00-54, Schneider Aff., Exh. B, at 2; *see also* Tr. at 51.)

In most situations, the ex-dividend date precedes the record date *(see* Tr. at 232), in which circumstances the stockholder of record on the record date is entitled to the dividend. *(See* NASD Uniform Practice Code Rule 11140(b)(1) Exhibit B to the Affidavit of Spencer L. Schneider, dated Mar. 10, 2004 ("Schneider Aff."), at 2). When the amount of the dividend exceeds twenty-five percent or greater of the value of the security, however, as was the case with the GigaMedia return of capital dividend in the spring of 2002, the ex-dividend date is "the first business day following the payable date." (NASD Uniform Practice Code Rule 11140(b)(2), Schneider Aff., Exh. B; *see also* Tr. at 46.) In those situations, the ex-dividend date is the cutoff date which determines the entitlement of a declared dividend: Whoever owns the shares as of the ex-dividend date, irrespective of the record date, is entitled to the dividend in question. *(See* NASDNotice 00-54, Schneider Aff., Exh. B; Tr. at 52-54.) Thus, under NYSE Rule 257 the purchaser of shares prior to the exdividend date is entitled to receive the dividends. *(See* NYSE Rule 257, Schneider Aff., Exh. D; *see also Silco v. United States, 779 F.2d 282, 283 (5th Cir. 1986)* ("According to the [NYSE] rules, the buyer receives the dividend when a stock sale contract is executed before the ex-dividend date."); *Limbaugh, 732 F.2d at 861* ("The fact that an individual is the holder of record on the record date . . . does not necessarily mean that such person is entitled to retain the dividend. In terms of entitlement, the *ex-dividend* date is the dividing line.") (emphasis in original).) This analysis presumes that after purchasing the stock prior to the ex-dividend date the purchaser does not then resell that stock before the ex-dividend date.

[*5]   On the evening of March 19, 2002, Chang placed a telephone order from Taiwan to his Merrill broker in Singapore, Ginny Huang, to sell 150,000 shares of GigaMedia stock. *(See* Tr. at 311-12.) Later that evening, at 9:59 p.m., Singapore local time, Chang called Merrill's night trader in Singapore to lower the sell price on part of this order. *(See* Tr. at 139-40; Schneider Aff., Exh. F, at ML 1125-26.) At 11:06 p.m., Singapore local time, Chang again called Merrill's night trader in Singapore. *(See* Tr. at 140-42; Schneider Aff., Exh. E.) In this call, Chang first inquired as to whether the trade had been executed yet. *(See* Schneider Aff., Exh. F, at ML 1128.) After being informed that the trade had yet to be executed, Chang lowered the price to market for the entire order and then directed the trader to sell all of the remaining 170,950 shares of GigaMedia stock in his account. *(See* Tr. at 140-42; Schneider Aff., Exh. F, at ML 1128-30.) The trades were executed that evening, March 19, at prices averaging approximately $ 2.30 per share. *(See* Schneider Aff., Exh. G, at ML 1063; Tr. at 140-43.) The proceeds from the sale of Chang's GigaMedia shares totaled $ 384,479.02. [*6]   *(See* Schneider Aff., Exh. G, at ML 1063.) At no time during any of these calls did Chang inquire about his entitlement to any dividend. The parties dispute whether Merrill was the purchaser of the shares sold by Chang.

On the following day, March 20, 2002, at 2:08 p.m., Singapore local time, Chang called Ecia Tan ("Tan"), his broker's assistant, to inquire whether his shares had been sold. *(See* Tr. at 228-29; Schneider Aff., Exh. E.) Tan confirmed that all the shares had been sold and promised to send Chang a summary via e-mail. *(See* Tr. at 228-29; Schneider Aff., Exh. H, at ML 1115-16.) Chang did not inquire about any entitlement to a dividend during this call with Tan. *(See* Tr. at 393.)

At 3:23 p.m., Singapore local time, Chang called Tan again and inquired whether he would be entitled to the dividend on the shares he had sold the prior day. *(See* Tr. at 229-31, 393; Schneider Aff., Exh. E; Schneider Aff., Exh. H, at ML 1116-17.) Tan informed Chang that she believed he would be entitled to the dividend and

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 3 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 4 of 14

2004 U.S. Dist. LEXIS 18594, *

Page 3

Chang asked her to "double check this" for him. *(See* Schneider Aff., Exh. H, at ML 1117.) Tan and Chang spoke twice more that day and she repeated her [*7] belief to him and later confirmed her statement to Chang in an e-mail. *(See* Tr. at 234-238, 313-15; Schneider Aff., Exh. E; Schneider Aff., Exh. H, at ML 1117-19; O'Shea Aff., Exh. 8.) The e-mail sent by Tan to Chang contained a disclaimer as to accuracy. *(See* O'Shea Aff., Exh. 8.)

Like the rules of the NYSE, Merrill's internal rules also provide that the buyer of shares prior to the ex-dividend date is entitled to the dividend. *(See* Tr. at 55-57.) Because the GigaMedia shares at issue here were registered in Chang's name as of the record date, he was mailed the dividend checks from GigaMedia's transfer agent, although under the rules of both Merrill and the NYSE he was required to pay Merrill the amount of the dividend. *See* Tr. at 57-60, 63-65, 70-72; NYSE Rules 255 & 257, Schneider Aff., Exh. D; NASD Notice 00-54, Schneider Aff. Exh. B) Chang received the dividend checks, totaling $ 321,000. *(See* Tr. at 144.)

Merrill subsequently requested that Chang return the GigaMedia dividend to Merrill. *(See* Tr. at 146, 149, 198, 213, 214, 231-37, 323, 325; O'Shea Aff., Exh. 10.) Chang declined to return the GigaMedia dividend to Merrill *(see* Tr. at 323, 325-28), [*8] and on May 14, 2002, Merrill commenced an arbitration proceeding before the NYSE pursuant to the parties' brokerage agreement. *(See* Schneider Aff., Exh. I, at ML 1012; O'Shea Aff., Exh. 11). The Statement of Claim submitted by Merrill sought return of the dividend, interest on the amount of the dividend, and Merrill's attorney's fees and costs incurred in collecting the debit balance. *(See* O'Shea Aff., Exh. 11.) Chang executed a uniform submission agreement consenting to the proceeding *(see* Schneider Aff., Exh. J) and answered the Statement of Claim. *(See* O'Shea Aff., Exh. 12). In his answer, Chang requested an award of attorney's fees and costs. *(See id.)*

An arbitration hearing was held on October 14 and 15, 2003 at NYSE's office in Manhattan *(See* Tr. at 1, 262.) The chairwoman of the NYSE arbitration panel presiding at the hearing (the "Panel") was Marguerite B. Filson, Esq., and the panelists were Stephen J. Bury, Esq., and Kevin C. Hughes. *(See id.)*

In his answer submitted prior to the hearing, Chang asserted that Tan had told him prior to the trade that he was entitled to the dividend in question. *(See* O'Shea Aff., Exh. 12, at 2.) At the hearing, [*9] however, the audio recordings of Chang's conversations with Tan established that those conversations occurred the day after the trades were placed. *(See, e.g.,* Tr. at 9, 12.) Chang argued at the hearing that Chang and Merrill, the latter acting through Tan, had therefore "otherwise agreed" that Chang was entitled to the dividend. [4] (Tr. at 28; *see also* Tr. at 23-24, 26.)

> 4 The import of this phrase derives from NYSE Rule 237, which states: "*Unless otherwise agreed,* the buyer shall be entitled to receive all dividends, rights and privileges, except voting power, accruing upon securities purchased which are ex-dividend or ex-rights during the pendency of the contract." (NYSE Rule 237, O'Shea Aff., Exh. 3 (emphasis supplied).)

At the hearing, Tan openly admitted that she had answered Chang's question wrong. She stated that she had wrongly assumed that the GigaMedia dividend was like the "normal" case where the ex-dividend date precedes the record date and she had not known that in this transaction [*10] the ex-dividend date followed the record date. *(See* Tr. at 231-32, 251-56.)

Chang testified that before he placed the trade he had held a pre-existing belief that he would be entitled to both the dividend and the sale proceeds, and that he later inquired after the trade to confirm or "double-check" his prior-held belief. (Tr. at 309-11, 313-14, 393.) Chang further testified that, if Tan had given him the correct information, he would have repurchased GigaMedia shares from the market in order to receive the dividend. *(See* Tr. at 394.) He also stated that when he met with Merrill representatives two weeks after the trade to try to resolve the dispute regarding the dividend he did not consider asking Merrill to restore his position in the shares *(see* Tr. at 398-400), and acknowledged that, with the exception of the purchase of a few thousand shares over the previous two years, he had been liquidating his GigaMedia holdings. *(See* Tr. at 396-97).

On the first day of the hearing, Merrill called Francis Liu ("Liu"), Associate Director in Merrill's Singapore office in charge of the Taiwan market at the time of the relevant events. Liu testified that Merrill made a mistake [*11] in agreeing with Chang That he, not Merrill, was entitled to the GigaMedia dividend. *(See* Tr. at 146, 198-99.) Liu further testified that Merrill had made several settlement offers to Chang in an effort to settle the matter shortly after Chang collected his GigaMedia dividend. *(See* Tr. at 146, 154-55, 157-58, 201-02, 207-08, 327.) According to Liu, among the offers made by Merrill was an offer to reinstate Chang's GigaMedia position so that he would be the holder of record of GigaMedia shares. *(See* Tr. at 154-55, 157-58, 201-02.) To do so, Merrill offered to "buy back from the market whatever shares that [Chang] had sold and reinstate his position." (Tr. at 157.) The record contains the following exchange with regard to Merrill's offer:

Q Mr. Liu, you testified that you met with Mr. Chang to try to resolve this matter?

A Yes, I did.

Q Did you offer him to make whatever trades were necessary to put him in the same position he was in before the trade?

A Yes. I spoke to him at his office, discussion -- discussing about the error. Subsequently I offered him to execute trades in the market to buy back the shares to put his position back into his original [*12] status, and for him to return us the sales proceeds which he kept in his account already.

Q So you would have bought shares on the market --

A Yes.

Q -- of GigaMedia?

A Yes.

Q And he would have been able to keep the dividend in that situation?

A Yes.

(Tr. at 201-02.)

On the morning after Merrill rested and before he was to present his case, Chang moved to dismiss the proceedings on the ground that Merrill had not proved that it had purchased the shares in question from Chang. *(See* Tr. at 264-68.) Merrill thereupon asked the Panel to recall Liu. The Panel's Chairwoman initially noted that "it's not really procedurally done," but the Panel subsequently decided in executive session to allow Merrill to oppose and rebut the motion to dismiss by re-calling Liu. (Tr. at 269-70. Liu testified that Merrill had purchased Chang's GigaMedia shares. *(See generally* Tr. at 270-88.) Liu produced two internal Merrill business records which Merrill argues showed that Merrill had been the buyer of the shares in question. *(See* Tr. at 272-86; O'Shea Aff., Exhs. 16 & 17.) Liu also testified that Merrill continued to own the shares after the ex-dividend [*13] date and as of the time of the hearing *(See* Tr. at 293, 295.) Chang disputes Merrill's suggestion that the documents independently establish that Merrill purchased Chang's GigaMedia shares from him, and contends that, even if either document establishes that Merrill purchased Chang's shares, neither shows that Merrill still owned those shares on the ex-dividend date, April 1, 2002. *(See* Pet. Mem. at 22 n.14.)

During Liu's testimony, Chang's counsel once again voiced objections, arguing that the Panel had unfairly granted Merrill a "do-over" to prove an essential fact. (Tr. at 272-73). In response, the chairwoman of the Panel stated: "Yes, [your objection] is noted. And for the record, the Panel will state that the object of the arbitration is to get at the truth and the facts, and we are not here at any point to elevate procedure over substance." (Tr. at 273.) Chang's counsel cross-examined Lieu and re-cross-examined him. *(See* Tr. at 281-84, 287-88.)

After Chang presented his case and before the summations, the Panel denied Chang's motion to dismiss. *(See* Tr. at 410.) The parties thereafter presented summations which argued the facts and law of the case. *(See* [*14] Tr. at 410-44.) The Panel decided the matter on October 15, 2003, issuing the Award at stake in the instant motions. *(See* O'Shea Aff., Exh. 13.) The Award contains no factual findings, but states that "Respondent [Chang] shall pay to claimant [Merrill] the amount of $ 321,900.00 as an award on the claim. The forum fees in the amount of [$ ] 3,000.00 are assessed against the claimant." *(Id.* at 2.) The Award's list of claim data sets the attorney's fees sought at $ 0, and awards neither attorney's fees nor costs. *See id.* at 1.)

### *Discussion*

Chang argues that the Award should be vacated because (i) it manifestly disregarded the facts established at the arbitration hearing in this matter; (ii) it manifestly disregarded the law applicable to the facts established at the arbitration hearing in this matter; and (iii) the arbitration panel exceeded its power, abused its discretion, demonstrated an institutional bias in Merrill's favor, and otherwise deprived Chang of fundamental fairness. Merrill opposes Chang's petition and argues that the Award should be confirmed. Both parties have sought attorney's fees.

### I. *Standard of Review*

The review [*15] of arbitration awards is generally governed by the FAA. *See Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 201 (2d Cir. 1998), *cert. denied*, 526 U.S. 1034, 143 L. Ed. 2d 378, 119 S. Ct. 1286 (1999).

"Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (citations and internal quotation marks omitted); *see also Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co.*, 956 F.2d 22, 24 (2d Cir. 1992). Pursuant to *9 U.S.C. § 9,*

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 5 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 6 of 14

2004 U.S. Dist. LEXIS 18594, *                                         Page 5

any party to an arbitration may apply to a federal court for an order confirming the award resulting from the arbitration, and the court "must grant . . . an order [confirming the arbitration award] unless the award is vacated, modified, or corrected as prescribed in *sections 10 and 11* of this title." *9 U.S.C. § 9*; see *First Interregional Equity Corp. v. Haughton, 842 F. Supp. 105, 108 (S.D.N.Y. 1994)* [*16] ("A district court must grant a petition to confirm an arbitration award that is properly brought unless one of the bases for vacating or modifying the award is established."). The Court of Appeals for the Second Circuit "adhere[s] firmly to the proposition . . . that an arbitration award should be enforced, despite a court's disagreement with it on the merits, if there is a 'barely colorable justification for the outcome reached.'" *Landy Michaels Realty Corp. v. Local 32B-32J, 954 F.2d 794, 797 (2d Cir. 1992)* (citation omitted); see also *Fahnestock & Co., Inc. v. Waltman, 935 F.2d 512, 516 (2d Cir. 1991)*; *In re Marine Pollution Serv., Inc., 857 F.2d 91, 94 (2d Cir. 1988)*.

The FAA provides that an arbitration award may be vacated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by [*17] which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*9 U.S.C. § 10(a)*. The burden of establishing the existence of one of the grounds for vacatur rests with the party seeking that form of statutory relief. See *Willemijn Houdstermaatschappij, 103 F.3d at 12*; *Blue Bell, Inc. v. Western Glove Works Ltd., 816 F. Supp. 236, 240 (S.D.N.Y. 1993)* (noting the "heavy burden" of proving the standards for overturning an award have been met).

In addition to the statutory grounds stated in the FAA, the Second Circuit has recognized that an arbitration award may be vacated "if it is in 'manifest disregard of the law.'" *Halligan, 148 F.3d at 202* (citing *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 888 F.2d 260, 265 (2d Cir. 1989)*; *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986))*. Manifest disregard "'clearly means more than error or misunderstanding [*18] with respect to the law.'" *Halligan 148 F.3d at 202* (quoting *Bobker, 808 F.2d at 933*). To vacate an arbitration award on the grounds of manifest disregard of the law,

> [A] reviewing court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case."

*Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 28 (2d Cir. 2000)* (quoting *DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997)* (internal quotation marks and alterations omitted) *cert. denied, 531 U.S. 1075, 148 L. Ed. 2d 669, 121 S. Ct. 770 (2001)*; see also *GMS Group LLC v. Benderson, 326 F.3d 75, 77-78 (2d Cir. 2003)*. Where there is a "colorable justification" or a "rational basis" for an award, it is not in "manifest disregard of the law." *Carte Blanche (Singapore) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 683 F. Supp. 945, 951 (S.D.N.Y. 1988), aff'd, 888 F.2d 260 (2nd Cir. 1989)*; see also *Benderson, 326 F.3d at 78*. [*19] Review of arbitration awards for manifest disregard is "severely limited." *Greenberg, 220 F.3d at 28* (citing *DiRussa, 121 F.3d at 821*).

Where, as here, arbitrators decline to provide a full explanation for their decision, the court, nevertheless must confirm the award "if a ground for the arbitrators' decision can be inferred from the facts of the case [,] . . . even if the ground for their decision is based on an error of fact or an error of law." *Willemijn Houdstermaatschappij, 103 F.3d at 13*; see also *Benderson 326 F.3d at 78*. On the other hand, "when a reviewing court is inclined to hold that an arbitration panel manifestly disregarded the law, the failure of the arbitrators to explain the award can be taken into account." *Halligan, 148 F.3d at 204*. The party seeking vacatur bears the burden of proving manifest disregard. See *Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002)*; *Willemijn Houdstermaatschappij, 103 F.3d at 12*.

***II. Manifest Disregard of the Facts Is Not a Basis for Vacatur***

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 6 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 7 of 14

Page 6
2004 U.S. Dist. LEXIS 18594, *

Chang asserts that he established at the [*20] arbitration hearing in this matter that he and Merrill agreed that he, not Merrill, was entitled to the GigaMedia dividend after he sold his GigaMedia shares. He further argues that Merrill failed to establish facts showing that (i) it did not otherwise agree with Chang that he was entitled to the GigaMedia dividend; (ii) Merrill purchased Chang's GigaMedia shares before April 1, 2002 (the ex-dividend date); and (iii) Merrill held the GigaMedia shares purchased from Chang as of April 1, 2002. Accordingly, Chang argues that the Award was issued in manifest disregard of the evidence established at the arbitration hearing.

The Second Circuit has recently explained that it "'does not recognize manifest disregard of the evidence as [a] proper ground for vacating an arbitrator's award.'" *Wallace v. Buttar*, 378 F.3d 182, 2004 WL 1753392, at *10 (2d Cir. Aug. 5, 2004) (quoting *Success Sys., Inc. v. Maddy Petroleum Equip., Inc.*, 316 F. Supp. 2d 93, 94 (D. Conn. 2004)). Rather,

> We recognize only the doctrine of manifest disregard of the law, which doctrine holds that an arbitral panel's legal conclusions will be confirmed in all but those instances [*21] where there is no colorable justification for a conclusion. To the extent that a federal court may look upon the evidentiary record of an arbitration proceeding at all, it may do so *only* for the purpose of discerning whether a colorable basis exists for the panel's award so as to assure that the award cannot be said to be the result of the panel's manifest disregard of the law.

*Wallace*, 378 F.3d 182, 2004 WL 1753392, at *10 (emphasis in original).

[*22] In light of the ruling in *Wallace*, Chang's argument that the NYSE arbitration panel manifestly disregarded the evidence -- an argument premised on decisions rendered by this and other lower courts that preceded the Second Circuit's pronouncement in *Wallace*[5] -- must be rejected.

---

5 In his moving papers, Chang relies on *Wallace v. Buttar*, 239 F. Supp. 2d 388 (S.D.N.Y. 2003), and *Broome & Wellington v. Levcor Int'l, Inc.*, 2003 U.S. Dist. LEXIS 7585, No. 02 Civ. 6566 (LTS) (AJP), 2003 WL 21032008 (S.D.N.Y. May 7, 2003), for the proposition that courts may vacate arbitration awards if the arbitrators manifestly disregarded the evidence. As the Second Circuit observed in reversing this Court's earlier pronouncement in *Wallace*, numerous district courts have articulated the same principle in reliance on *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998) or its progeny. See *Wallace*, 378 F.3d 182, 2004 WL 1753392, at *9 (collecting cases). That reliance, according to the Second Circuit, was "mistaken." *Id.*

### III. The Panel Did Not Manifestly Disregard the Law in Rendering Its Award

Chang argues that the arbitration panel manifestly disregarded the law of unilateral mistake in issuing the Award. Specifically, Chang contends that he and Merrill entered into a contract for the sale of his GigaMedia shares in March 2002 and that, in connection with that contract, Merrill has repeatedly acknowledged that it had made a mistake in telling Chang that he, not Merrill, was entitled to the GigaMedia dividend issued that same month. To be entitled to remedy that unilateral mistake, Chang explains, Merrill would have had to establish fraud in connection with the contract, the existence of which, Chang insists, Merrill has not demonstrated. As Merrill offered no evidence of fraud in connection with the contract for the sale of Chang's GigaMedia shares at the arbitration hearing, Chang argues, the Panel's [*23] issuance of the Award in favor of Merrill manifestly disregarded the law of unilateral mistake, a legal principle that Chang characterizes as governing in this matter. In opposition, Merrill argues that the March 19, 2002 order placed by Chang to sell his GigaMedia shares was executed that day, and discussions following the completion of the contract are both irrelevant to the original terms of the contract and insufficient to establish the existence of a separate agreement.

Chang has not established that the Panel manifestly disregarded the law of unilateral mistake in rendering its Award because he has not know shown that the law of unilateral mistake was "clearly applicable" to the case presented to the Panel. *Greenberg*, 220 F.3d at 28 (internal quotation marks and citation omitted). To begin, there is more than a barely colorable justification for the conclusion that may be inferred from the Award here, namely that Chang's conversations and correspondence with Tan -- conducted after the sale of his GigaMedia shares -- were insufficient to establish the existence of an agreement concerning Chang's entitlement to the GigaMedia dividend. As Merrill notes, none of [*24] the hallmarks of a legally binding agreement are present here, as there was no bargained-for consideration exchanged and no promise made, and, at best, conflicting evidence concerning the existence of any detrimental reliance. Moreover, although Chang contends that evidence was submitted to the Panel demonstrating the exis-

Case 1:08-cv-00706    Document 58-6    Filed 05/16/2008    Page 7 of 12
Case 1:08-cv-00706    Document 45-12    Filed 03/31/2008    Page 8 of 14

Page 7
2004 U.S. Dist. LEXIS 18594, *

tence of an agreement, the evidence cited pertains to incorrect information being provided to Chang and subsequent apologies for such misinformation rather than any facts adequate to demonstrate the existence of an agreement. The evidence of Chang's communications with Merrill after March 19, 2002, is, thus, more than adequate to justify the conclusion that no agreement regarding dividend entitlement existed between Chang and Merrill. In the absence of such an agreement, the law of unilateral mistake is irrelevant, as is Merrill's purported failure to offer proof of fraud at the arbitration hearing. Accordingly, the Panel did not act with manifest disregard of the law in declining to apply the law of unilateral mistake.

### IV. The Panel Did Not Exceed Its Power, Harbor an Institutional Bias, Abuse Its Discretion, or Otherwise Deprive Chang of Fundamental Fairness

[*25] Chang argues that, by permitting Merrill to reopen its case to offer testimony that Merrill had purchased Chang's GigaMedia shares, the Panel acted in excess of its power, abused its discretion, demonstrated a clear institutional bias in favor of Merrill, and otherwise deprived Chang of a fundamentally fair proceeding. Chang also argues that he was prejudiced by the Panel's decision to permit Merrill to reopen its case, insofar as he structured his cross-examination of Merrill's witnesses with the goal of moving to dismiss Merrill's statement of claim based on Merrill's failure to prove that it had purchased Chang's GigaMedia shares and owned those shares as of April 1, 2002. Finally, Chang contends that the Panel should have rejected Liu's testimony provided on the second day of the hearing because, according to Chang, the testimony provided by Liu on the first day and that provided on the second day are irreconcilable. Specifically, Chang asserts that Liu's testimony at the first day of the hearing to the effect that Merrill had offered to restore his position by purchasing GigaMedia shares for Chang in the open market was contradicted by his testimony on the second day of the [*26] hearing that Merrill purchased Chang's GigaMedia shares from him. Chang argues that the Panel should have rejected Liu's later testimony because it was contradictory, unsupported by documentary evidence, and "possibly fabricated." (Pet. Mem. at 18.)

### A. The Panel Did Not Act in Excess of Its Powers or Violate Fundamental Fairness

Section 10(a)(4) of the FAA provides that an arbitration award may be vacated "where the arbitrators exceeded their powers." *9 U.S.C. § 10(a)(4)*. The Second Circuit has explained that when a petitioner relies on Subsection 10(a)(4), "'our inquiry . . . focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.'" *Westerbeke, 304 F.3d at 220* (quoting *DiRussa, 121 F.3d at 824*); *see also C&D Techs. v. Int'l Ass'n of Heat & Frost Insulators, 303 F. Supp. 2d 468, 469 (S.D.N.Y. 2004)*. Subsection 10(a)(4) "does not exist so that a party dissatisfied with the result may attempt to destroy it, but so that the arbitrator may [*27] decide only the dispute that the parties submitted to him." *Blue Bell, 816 F. Supp. at 240*; *see also Huntington Hosp. v. Huntington Hosp. Nurses' Ass'n, 302 F. Supp. 2d 34, 40 (E.D.N.Y. 2004)* ("When determining whether the arbitrator exceeded his powers, the focus is on the issue submitted by the parties. If the award disposes of that issue, correctly or not, the arbitrator will be deemed to have acted within the scope of his authority.") citing *Banco de Seguros del Estado v. Mutual Marine Office, Inc., 344 F.3d 255, 262 (2d Cir. 2003))*. Accordingly, the Second Circuit has "consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards [pursuant to § 10(a)(4),] especially where that language has been invoked in the context of arbitrators' alleged failure to correctly decide a question which all concede to have been properly submitted in the first instance." *Westerbeke, 304 F.3d at 220* (quoting *Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 703 (2d Cir. 1978))*.

The scope of an arbitrator's powers "'generally depends on the intention of [*28] the parties to an arbitration, and is determined by the agreement or submission.'" *Local 1199, Drug, Hosp. & Health Care Employees Union, 956 F.2d at 25* (quoting *Synergy Gas Co. v. Sasso, 853 F.2d 59, 63-64 (2d Cir. 1988)* (quoting *Ottley v. Schwartzberg, 819 F.2d 373, 376 (2d Cir. 1987)))*. "'Such an agreement or submission serves not only to define, but to circumscribe, the authority of arbitrators.'" *Id.* (quoting *Ottley, 819 F.2d at 376* (citation omitted)). In the instant case, parties' arbitration agreement provides for an arbitration of "all controversies which may arise between us, including, but not limited to those involving any transactions or the construction performance, or breach of this or any other agreement between us . . . ." (Schneider Aff., Exh. I, at ML 1012.) As Chang has not argued that the Panel decided anything other than the dispute before it or that the dispute was not covered by the parties' arbitration agreement, his claim -- to the extent it may be understood under the rubric of Subsection 10(a)(4) -- must be denied.

Even construing Chang's argument as one made under Subsection 10(a)(3) [*29] rather than Subsection 10(a)(4), as Chang himself appears to do in his reply papers, the argument fails. Subsection 10(a)(3) provides that an award may be vacated "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evi-

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 8 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 9 of 14

Page 8
2004 U.S. Dist. LEXIS 18594, *

dence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." *9 U.S.C. § 10(a)(3)*. "Courts have interpreted *section 10(a)(3)* to mean that except where fundamental fairness is violated, arbitration determinations will not be opened up to evidentiary review." *Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir. 1997)*. A fundamentally unfair proceeding may result if an arbitration panel does not "'give each of the parties to the dispute an adequate opportunity to present its evidence and argument.'" *Id.* (quoting *Hoteles Condado Beach v. Union De Tronquistas Local 901, 763 F.2d 34, 39 (1st Cir. 1985)*).

While an arbitrator must grant the parties a fundamentally fair hearing, the arbitrator "'need not follow all the niceties observed by the federal courts. [*30] '" *Id.* (quoting *Bell Aerospace Co. Div. of Textron v. Local 516,500 F.2d 921, 923 (2d Cir. 1974)*). Although the evidentiary rules and other procedures followed in arbitrations "might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunities for review of the courtroom for the simplicity, informality, and expedition of arbitration.'" *Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991)* (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628, 87 L. Ed. 2d 444, 105 S. Ct. 3346 (1985)*); *see also Northeast Sec., Inc. v. Quest Capital Strategies, Inc., 2003 U.S. Dist. LEXIS 20025, No. 03 Civ. 2056 (RWS), 2003 WL 22535093, at *2 (S.D.N.Y. Nov. 7, 2003)* (noting that "arbitrators are 'not constrained by formal rules of evidence and procedure'" in rejecting a claim that the arbitration panel manifestly disregarded the law when it decided not to follow the Federal Rules of Civil Procedure) (quoting *Areca, Inc. v. Oppenheimer & Co., Inc., 960 F. Supp. 52, 56 (S.D.N.Y. 1997)*). As the Second Circuit has explained,

> "Federal courts [*31] do not superintend arbitration proceedings. Our review is restricted to determining whether the procedure was fundamentally unfair." See *Teamsters, Local Union 657 v. Stanley Structures, Inc., 735 F.2d 903, 906 (5th Cir. 1984); accord Concourse Beauty School, Inc. v. Polakov, 685 F. Supp. 1311, 1318 (S.D.N.Y. 1988)* ("The misconduct must amount to a denial of fundamental fairness of the arbitration proceeding in order to warrant vacating the award." (quoting *Transit Cas. Co. v. Trenwick Reinsurance Co., 659 F. Supp. 1346, 1354 (S.D.N.Y. 1987), aff'd mem., 841 F.2d 1117 (2d Cir. 1988)*)).

*Tempo Shain, 120 F.3d at 19*. Thus, "an arbitrator's ruling on procedural issues will not be overturned . . . unless it had the effect of denying the parties a fundamentally fair hearing, or was otherwise an unreasonable decision that prejudiced the rights of a party." *Int'l Longshoremen's Ass'n v. West Gulf Maritime Ass'n, 605 F. Supp. 723, 727 (S.D.N.Y.), aff'd, 765 F.2d 135 (2d Cir. 1985); see also Desilva v. First Union Secs., 249 F. Supp. 2d 286, 290 (S.D.N.Y. 2003)* [*32] (finding no violation of fundamental fairness where, after the respondent changed its position with regard to a defense, an arbitration panel allowed the respondent to submit evidence concerning the revised defense over the petitioner's objections, noting that "this was not a situation where petitioner's objections fell on deaf ears").

The Panel's decision to permit Merrill to recall Liu to testify about previously produced (and, in one instance, admitted) evidence concerning the ownership of the GigaMedia shares sold by Chang was reasonable and not a violation of fundamental fairness. [6] First, assuming the legal principles pertaining to reopening a trial record in federal court applied to arbitration hearings -- which, for the reasons set forth above, they do not -- the cases cited by Chang are nonetheless distinguishable from the matter at bar, as each of the cases cited involves an application to reopen the record brought either after the resolution of the proceeding or after both parties had rested their cases. *See Ortho Diagnostic Sys. v. Abbott Lab., 926 F. Supp. 371, 372 (S.D.N.Y. 1996)* (declining to reopen the record after granting summary judgment); [*33] *John v. Sotheby's, Inc., 858 F. Supp. 1283, 1288-89 (S.D.N.Y. 1994)* (denying a motion to reopen the record made two weeks after the conclusion of the trial), *aff'd, 52 F.3d 312 (2d Cir. 1995); Bradford Trust Co. of Boston v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 622 F. Supp. 208, 213-14 (S.D.N.Y. 1985)* (rejecting the plaintiff's "belated request" to reopen the trial record after both parties had rested where the circumstances demonstrated that the plaintiff had not been diligent in procuring evidence vital to its case), *aff'd, 805 F.2d 49 (2d Cir. 1986)*. In this matter, the Panel did not reopen a closed record but instead, the morning after Merrill had rested and before Chang's direct case had commenced permitted a witness to be recalled in rebuttal to Chang's motion to dismiss.

> 6 Chang also claims that the Panel abused its discretion by permitting Merrill to recall Liu. Chang has cited no authority for the proposition that an arbitration award may be vacated under an abuse-of-discretion standard independent and distinct from the standards associated with *9 U.S.C. §§ 10(a)(3)* and *10(a)(4)* and articulated above.

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 9 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 10 of 14

Page 9
2004 U.S. Dist. LEXIS 18594, *

Accordingly his abuse-of-discretion claim need not and shall not be addressed.

[*34] Second, Chang's objections to Liu being recalled were amply aired before the Panel and addressed. In particular, the Panel heard Chang's considerable objections to Merrill's request to recall Liu:

> What is relevant here is they [Merrill] have had a full and fair hearing. They had the opportunity to put their case here. They failed to do that. Now we have an admission of another "oops." Whose fault is this one?
>
> They did not prove their case. They had a fair and square opportunity to do that. This is not a situation where the panel should bend over backwards for the institution with all their resources that has not proved their case. We move to dismiss.
>
> . . . .
>
> I just want to say this -- this is unprecedented. That a case can be closed; that a clear failure of proof can be pointed out; and that the institution in this case, in an arbitration run before the New York Stock Exchange, gets a do-over. I want my -- in the strongest terms my objection noted for the record.

(Tr. at 269-70, 272-73.) In overruling Chang's objections, the Chairwoman of the Panel explained that "the object of the arbitration is to get at the truth and the facts, and we are not [*35] here at any point to elevate procedure over substance." (Tr. at 273.) This was, accordingly, not a situation where Chang's objections went unacknowledged.

Third, the inclusion of Liu's testimony on the second day of the hearing did not so taint the fundamental fairness of the arbitral proceedings as to warrant vacatur of the Award. Chang's mere speculation that Liu's later testimony concerning Merrill's purchase or and ownership of Chang's former shares was possibly fabricated is insufficient, in the absence of any support for his allegation, to establish that the proceedings before the Panel were fundamentally unfair. Moreover, to the degree that Chang relies on what he terms contradictory testimony from Liu as the grounds for his allegation, there is more than a colorable basis here for the Panel to have concluded that Liu's earlier testimony that Merrill could have assisted Chang in buying GigaMedia shares back from the market to restore his position *(see* Tr. at 154-55, 156-57) was not inconsistent with Liu's subsequent testimony that Merrill itself purchased the GigaMedia shares from Chang and continued to own the shares after the ex-dividend date. *(See* Tr. at 293, 295). [*36] As Merrill points out, in acting as a holder of shares for its own account, Merrill may not want to use those shares in its own inventory to restore a seller to his or her original position; accordingly, an offer to purchase shares from the market to restore a seller such as Chang to his original position does not disprove Merrill's continued ownership of the shares in question.

Finally, Chang's argument that he was prejudiced by the Panel's decision to permit Merrill to recall Liu is insufficient to warrant vacatur under the doctrine of fundamental fairness. Although Chang's claims that he would have structured his cross-examinations of Merrill's witnesses, including Liu, differently and that he would have moved to dismiss Merrill's claims at the conclusion of his defense rather than at the conclusion of Merrill's case may give rise to an appearance of unfairness, any such appearance is illusory, as Chang has pointed to no specific or actual prejudice he sustained as a result of the Panel's decision. While Chang asserts that he would have cross-examined Merrill's witnesses differently had Merrill offered evidence on the first day of the hearing that it purchased Chang's GigaMedia [*37] shares, the record does not suggest that Chang attempted to recall any of Merrill's witnesses following the Panel's decision to permit Merrill to recall Liu, nor does Chang explain how cross-examining Liu differently on the first day of the hearing would have led to a result different from that produced by his cross-examination and re-cross-examination of Liu on the second day of the hearing. It is also not evident that the Panel would have reached a different conclusion with regard to the discretionary ruling to recall Liu if Chang had waited to move to dismiss until the close of his defense, rendering Chang's argument of prejudice in this regard hypothetical at best. [7]

> 7  Similarly, Chang has not demonstrated that the Panel violated fundamental fairness in accepting Liu's testimony on the second day of the hearing, as the sole basis for Chang's contention in this regard is his argument that Liu's earlier testimony was irreconcilable with his later testimony, an argument that this Court has rejected, as set forth above.

[*38] In light of the foregoing, Chang has not shown that the Panel's decision to permit Merrill to recall Liu resulted in a fundamentally unfair arbitral proceeding.

**B. *Chang Has Not Established Institutional Bias on the Part of the Panel***

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 10 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 11 of 14

2004 U.S. Dist. LEXIS 18594, *

Page 10

Subsection 10(a)(2) of Title 9 permits an arbitration award to be vacated "where there was evident partiality or corruption in the arbitrators." *9 U.S.C. § 10(a)(2)*. The burden of proof is on the party asserting bias, *see Polin v. Kellwood Co., 103 F. Supp. 2d 238, 258 (S.D.N.Y. 2000)* (citing *Reed & Martin, Inc. v. Westinghouse Elec., 439 F.2d 1268, 1275 (2d Cir. 1971))*, aff'd, 34 Fed. Appx. 406 (2d Cir.) (unpublished), cert. denied sub nom. *Wisehart v. Kellwood Co., 537 U.S. 1003, 154 L. Ed. 2d 399, 123 S. Ct. 499 (2002)*, and more than "the mere appearance of bias" is necessary to vacate an arbitration award. *Morelite Constr. Corp. v. New York City Dist. Council Carpenters Ben. Funds, 748 F.2d 79, 83-84 (2d Cir. 1984); see also Sunoco Overseas, Inc. v. Texaco Int'l Trader, Inc., 69 F. Supp. 2d 502, 504-05 (S.D.N.Y. 1999)* ("Courts are [*39] reluctant to set aside an award based on a claim of evident partiality, and will do so only if bias of the arbitrator is direct and definite; mere speculation is not enough.") (quoting *Sofia Shipping Co., Ltd. v. Amoco Transport Co., 628 F. Supp. 116, 119 (S.D.N.Y. 1986))* (quotation marks omitted); *Alberti v. Morgan Stanley, 1998 U.S. Dist. LEXIS 11843, No. 97 Civ. 9385 (RO), 1998 WL 438667, at *6 (S.D.N.Y. July 31, 1998)* (rejecting the claim that a NYSE arbitration panel treated Morgan Stanley, Dean Witter deferentially due to the size, volume and stature of its dealing on the Exchange and observing that "allegations of bias must be specific; the appearance of bias is insufficient and mere speculation is not enough") (internal quotation marks and citations omitted). Rather, the party seeking to establish partiality or bias bears the burden of showing that "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration" *Morelite Const., 748 F.2d at 83-84;* accord *Lucent Techs., Inc. v. Tatung Co.,379 F.3d 24, 2004 WL 1729832, at *6 (2d Cir. Aug. 3, 2004)*, or against a party. [*40] *See Polin, 103 F. Supp. 2d at 258* (citing *Sun Ref. & Mktg. Co. v. Statheros Shipping Corp. of Monrovia, Liberia, 761 F. Supp. 293, 302 (S.D.N.Y.), aff'd, 948 F.2d 1277 (1991))*.

"Courts should consider the totality of the circumstances in deciding the existence of evident partiality, because proof of actual bias or 'outright chicanery' is often impossible to obtain." *Carina Int'l Shipping Corp. v. Adam Maritime Corp., 961 F. Supp. 559, 568 (S.D.N.Y. 1997)* (citations omitted). Circumstances, however, "give rise to evident partiality only when they are substantive and material." *Sun Ref. & Mktg. Co. v. Statheros Shipping Corp. 761 F. Supp. 293, 299 (S.D.N.Y.), aff'd, 948 F.2d 1277 (2d Cir. 1991); see also Teamsters, Chauffeurs, Warehousemen & Helpers v. E.D. Clapp Corp., 551 F. Supp. 570, 576 (N.D.N.Y 1982)* (stating that proof of partiality "must be clear and convincing and may not simply be speculation or hard feelings on the part of the [petitioner]"), aff'd, 742 F.2d 1441 (2d Cir. 1983). There is, accordingly, a "high standard in order to prevail [*41] on such a claim." *Sunoco Overseas, 69 F. Supp. 2d at 505*.

Chang's allegation that the Panel demonstrated clear institutional bias in favor of Merrill in permitting it to recall Liu is inadequate to raise a serious question as to the existence of an institutional bias. The mere fact that arbitrators find in favor of the opposing party does not establish the existence of partiality or bias in favor of that party. *See Polin, 103 F. Supp. 2d at 259-60* (citing *LLT Int'l Inc. v. MCI Telecomms. Corp., 18 F. Supp. 2d 349, 354 (S.D.N.Y. 1998))*. Similarly, determinations reached by arbitrators during the course of an arbitration proceeding with regard to the production of documents or witnesses will not, on their own, support an inference of bias, as "arbitrators have the power to determine what is relevant, material and cumulative and to interpret the procedural rules of the proceeding." *Id. at 260; see also Bell Aerospace, 500 F.2d at 923*.

Chang's citation to federal cases recognizing the problem of institutional bias in favor of member firms appearing before self-regulatory organizations such as the NYSE for arbitrations, [*42] [8] while topically pertinent, does little to assist him in meeting his burden to show that the Panel in the arbitration in which he appeared evidenced partiality or bias in favor of Merrill. Chang has offered no additional support for his claim of institutional bias other than his contention that the Panel's purported violation of a clearly established rule against reopening closed trial records, a contention already disposed of herein. As there is nothing in the record suggesting any partiality on the part of the Panel and, accordingly, no reasonable person would have to conclude that the Panel was partial to Merrill, Chang's claim of institutional bias is hereby rejected.

    8  *See Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202-03 (2d Cir. 1998)* (noting that industry self-regulatory organizations have been criticized for the role they play in determining the pool of available arbitrators and selecting the arbitrators who will hear a particular discrimination claim against a member firm of the self-regulatory organization); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 995 F. Supp. 190, 210-12 (D. Mass. 1998)* (discussing the possibility of institutional bias due to industry influence over self-regulatory organizations such as the NYSE which, in turn, set the rules that govern arbitral procedure and the selection of arbitrators who preside over arbitrations involving industry members), aff'd, 170 F.3d 1 (1st Cir. 1999).

[*43] *V. Merrill Is Entitled to Attorney's Fees*

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 11 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 12 of 14

Page 11
2004 U.S. Dist. LEXIS 18594, *

In its cross-motion to confirm the Award, Merrill has requested that its attorney's fees incurred in connection with its cross-motion and with defending against Chang's motion be awarded pursuant to the parties' brokerage agreement. In opposition to Merrill's cross-motion Chang argues that the parties' brokerage agreement does not provide for a dispute relating to Chang's brokerage account and does not offer support for Merrill's claim. In addition, he asks that Merrill's request be denied and that, instead, he be awarded the full amount of attorney's fees and disbursements that he incurred in litigating Merrill's claims and in seeking to vacate the Award. In reply, Merrill notes that the Panel denied Chang's application for fees.

To the extent that Chang is seeking an award of fees with regard to fees incurred while litigating before the Panel, his request is denied, as he has not alleged must less established any grounds for vacating or modifying the Panel's denial of his application for fees embodied in the Award. Insofar as Chang is seeking attorney's fees and disbursements in connection with his motion to vacate the Award [*44] and Opposition to Merrill's cross-motion, his request is also denied. "Absent statutory authorization or contractual agreement between the parties, the prevailing American rule is that each party in federal litigation pays his own attorneys' fees, and 'there is nothing in the *Federal Arbitration Act* itself that would authorize a district court to go beyond confirming an arbitrators' award and independently award additional attorneys' fees.'" *Briamonte v. Liberty Brokerage, Inc.*, 2000 U.S. Dist. LEXIS 6907, No. 99 Civ. 2735 (LAP), 2000 WL 666350, at *2 (S.D.N.Y. May 19, 2000) (quoting *Menke v. Monchecourt*, 17 F.3d 1007, 1008 (7th Cir. 1994)); see also *Alcatel Space, S.A. v. Loral Space & Communications Ltd.*, 2002 U.S. Dist. LEXIS 11343, No. 02 Civ. 2674 (SAS), 2002 WL 1391819, at *6 (S.D.N.Y. June 25, 2002) (explaining that "the general rule is that each party in a federal litigation pays its own attorneys' fees" and setting forth the three recognized exceptions to that rule: "(1) where a statute or enforceable contract provides for an award of attorneys' fees; (2) where the prevailing plaintiff confers a common benefit upon a class or fund; and (3) where a party wilfully disobeys a court [*45] order or 'when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59, 44 L. Ed. 2d 141, 95 S. Ct. 1612) (1975) (internal quotation marks and citations omitted)). The FAA does not provide for an award of attorneys' fees, see, e.g., *N.Y. City Dist. Council of Carpenters Pension Fund v. Eastern Millenium Constr., Inc.*, 2003 U.S. Dist. LEXIS 21139, No. 03 Civ. 5122 (DAB), 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003); *Asturiana De Zinc Marketing, Inc. v. LaSalle Rolling Mills, Inc.*, 20 F. Supp. 2d 670, 675 (S.D.N.Y. 1998), nor has Chang pointed to any statutory contractual or other proper basis that warrants making an exception to the general rule and awarding attorney's fees to Chang.

Merrill, on the other hand, has cited to the parties' brokerage agreement as the basis for its claim for attorney's fees. Merrill points to Section 13 of the agreement as relevant here, which provides: "To the extent permitted by the laws of the state of New York, [Chang] agree[s] to pay [Merrill] the reasonable lawyers and/or professional advisors' fees, for any debit [*46] balance and any unpaid deficiency that [Chang] owes." (Schneider Aff., Exh. I, at ML 1013.) There appears to be no dispute between the parties as to whether the brokerage agreement is an enforceable agreement. Chang's only arguments against the applicability of the brokerage agreement are that the clause in question "does not relate to or in any way support Merrill's claim for attorney's fees or disbursement" and that there is no provision made for the payment of attorney's fees and disbursements arising from a dispute relating to Chang's brokerage account in the brokerage agreement. (Pet. Reply Mem. at 19 n.20.)

Although the identified clause is less than felicitously phrased, when read in conjunction with the heading that precedes it, "Liability for Costs of Collection," it is reasonably understood to permit recovery of reasonable attorney's fees incurred in connection with the collection of "any debit balance and any unpaid deficiency" owed by Chang, to the extent permitted by the laws of the State of New York. [9] (Schneider Aff., Exh. I, at ML 1013.) In view of the broad nature of the contractual language and in the absence of any suggestion that the dividend proceeds at issue [*47] here do not constitute a "debit balance" or "unpaid deficiency," Chang's bare assertion that the cited clause does not relate to Merrill's request for attorney's fees provides scant basis for denying Merrill's application. Accordingly, as Merrill filed the instant cross-motion in order to confirm and enforce the Panel's Award and has prevailed on its application Chang shall pay reasonable attorney's fees to Merrill in connection with Merrill's cross-motion and its Opposition to Chang's motion in an amount to be determined by the Court.

> 9 Under New York law, "when a contract provides for the payment of attorney's fees and expenses, the court must order the losing party to pay the amounts actually incurred by the prevailing party, 'so long as those amounts are not unreasonable.'" *Sony Music Entm't Inc v. Pedestal Prods., Inc.*, 2002 U.S. Dist. LEXIS 6662, No. 01 Civ. 4033 (RLC) (FM), 2002 WL 1226861, at *4 (S.D.N.Y. Apr. 9, 2002) (quoting *F.H. Krear &*

Case 1:08-cv-00706   Document 58-6   Filed 05/16/2008   Page 12 of 12
Case 1:08-cv-00706   Document 45-12   Filed 03/31/2008   Page 13 of 14

Page 12

2004 U.S. Dist. LEXIS 18594, *

*Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1263 (2d Cir. 1987))*.

[*48] *Conclusion*

For the reasons set forth, Chang's motion to vacate the Award is denied and Merrill's cross-motion to confirm the Award is granted. Attorney's fees are awarded to Merrill as set forth above.

It is so ordered.

New York, NY

September 7, 2004

ROBERT W. SWEET

U.S.D.J.