LEXSEE 2004 U.S. DIST. LEXIS 8297

**JONATHAN HAKALA, Petitioner, -against- DEUTSCHE BANK AG (FORMERLY BANKER'S TRUST CORPORATION), AND DEUTSCHE BANK, INC. (FORMERLY BT SECURITIES, INC.), Respondents.**

**01 Civ. 3366 (MGC)**

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*2004 U.S. Dist. LEXIS 8297*

**May 11, 2004, Decided**
**May 12, 2004, Filed**

**PRIOR HISTORY:** *Hakala v. Deutsche Bank AG, 343 F.3d 111, 2003 U.S. App. LEXIS 18408 (2d Cir. N.Y., 2003)*

**DISPOSITION:**    On remand, petitioner's motion to vacate arbitration award denied.

**COUNSEL:** [*1] For Deutsche Bank AG, (formerly Bankers Trust Corp.), Deutsche Banc Alex. Brown Inc., (Formerly BT Securities Inc.), Defendants: Clifford Hale Fonstein, O'Melveny & Myers, L.L.P., New York, NY. Kenneth J. Turnbull, O'Melveny & Myers, LLP, New York, NY.

**JUDGES:** MIRIAM GOLDMAN CEDARBAUM, United States District Judge.

**OPINION BY:** MIRIAM GOLDMAN CEDARBAUM

**OPINION**

**Cedarbaum, J.**

Petitioner *pro se* Jonathan Hakala seeks to vacate an arbitration award rendered against him and in favor of his former employer, BT Securities, Inc. (now Deutsche Bank, Inc.), and its parent company, Banker's Trust Corporation (now Deutsche Bank AG). For the following reasons, the petition is denied.

*Background*

In July of 1989, BT Securities hired Hakala to serve as the head of its high-yield bond trading division. In August of 1991, BT Securities terminated Hakala. In August of 1997, Hakala initiated an arbitration proceeding against BT Securities and Banker's Trust Corporation, with the National Association of Securities Dealers (NASD). His statement of claim comprised two counts: wrongful termination and breach of contract. Hakala claimed that BT Securities terminated him in retaliation for his refusal to [*2] fraudulently inflate the value of his bond portfolio. Hakala also claimed that when he was hired in 1989, BT Securities orally guaranteed that he would receive a bonus in 1989 as well as a bonus the following year. Later, he agreed to forego a portion of the 1990 bonus in exchange for a guaranteed bonus in 1991 that would include the portion of the 1990 bonus that he did not receive. BT Securities breached these agreements, Hakala argued, by refusing to pay him the agreed-upon bonus in 1991.

Over the course of a year, a panel of three arbitrators held fifty hearing sessions on Hakala's claims. Hakala called 13 witnesses and offered 117 exhibits into evidence. At the conclusion of the proceeding, the arbitrators ruled unanimously in favor of BT Securities and Banker's Trust. The panel did not issue a written ruling that explained the basis of its decision.

Hakala timely filed a petition to vacate the arbitration award in this court. The court dismissed the petition *sua sponte* because Hakala failed to allege subject matter jurisdiction. *See Hakala v. Deutsche Bank, 2000 U.S. Dist. LEXIS 14016, 00 Civ. 1335 (RWS), 2000 WL 1425049 (S.D.N.Y. Sept. 26, 2000).* Hakala filed a second petition in [*3] state court. Respondents removed the case to federal court on diversity grounds. The court then dismissed Hakala's second petition for failure to adhere to *N.Y. C.P.L.R. § 7511(a)*, which sets a 90-day time limit on petitions to vacate or modify arbitration awards. *See Hakala v. Deutsche Bank AG, 2002 U.S. Dist. LEXIS 5542, 01 Civ. 3366 (CBM), 2002 WL*

2004 U.S. Dist. LEXIS 8297, *

498629, at *5 (S.D.N.Y. Apr. 1, 2002). On appeal, the Second Circuit held that *N.Y. C.P.L.R. § 205(a)*, which grants a six-month grace period to a party that wishes to refile an action terminated because of a curable defect, applies to petitions to vacate arbitration awards timely commenced under *N.Y. C.P.L.R. § 7511(a)*. *See Hakala v. Deutsche Bank AG, 343 F.3d 111, 116 (2d Cir. 2003)*. Because Hakala's first petition was timely under *§ 7511(a)*, and his second petition was filed within the six-month grace period, the Second Circuit reversed the district court's dismissal of the petition. *See id.*

## Discussion

A reviewing court must accord great deference to the decisions of an arbitration panel. *See Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003)*. [*4] Judicial review of arbitration awards is "very narrowly limited. . . . [and] the burden of proving a ground for vacating an award rests on the party who seeks to vacate it." *Application of National Association of Broadcast Employees and Technicians, 707 F. Supp. 124, 128 (S.D.N.Y. 1988)* (citations omitted). Limited review serves to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993)*.

*The Federal Arbitration Act (FAA)* empowers federal courts to vacate arbitration awards in four narrow circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their [*5] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

*9 U.S.C. § 10(a)*. To these, the Second Circuit has added several additional grounds for vacating an arbitration award: manifest disregard of the law, manifest disregard of the evidence, and violation of well-established public policy. *See Greenberg v. Bear, Stearns & Co., 220 F.3d 22, 27 (2d Cir. 2000); Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 202, 204 (2d Cir. 1998); Wallace v. Buttar, 239 F. Supp. 2d 388, 392 (S.D.N.Y. 2003)*.

Hakala offers four reasons why the arbitration award against him should be vacated: (1) respondents procured the award by corruption, fraud, or undue means; (2) the arbitration panel demonstrated evident partiality or misbehavior; (3) the arbitration panel manifestly disregarded the law and the facts; and (4) the decision is contrary to public policy.

## 1. Fraud, Corruption, or Undue Means

Hakala argues that BT Securities and Banker's Trust engaged in a pattern of fraud during the course of the arbitration proceeding, thereby engineering [*6] an award in their favor. Hakala makes two specific claims of fraud. First, he argues that respondents committed a number of willful discovery violations. According to Hakala, respondents denied the existence of critical documents during discovery and waited until the first day of the proceeding to admit that the documents had been found in an offsite storage facility. Respondents' intentional disregard of their discovery obligations, Hakala contends, forced him to devote significant amounts of hearing time to examining witnesses on the existence and discovery of the documents, thus curtailing the amount of time he could spend presenting his case. Hakala also notes that respondents failed to produce witnesses on several occasions and were fined accordingly.

Second, petitioner claims that respondents suborned perjury. Hakala alleges that respondents coordinated the false testimony of a number of witnesses concerning Hakala's job performance in order to rebut his claim of retaliatory firing. Hakala argues that the testimony to the effect that he was a poor employee was "patently incredible," and points out that one of respondents' witnesses admitted to reviewing the testimony of another [*7] witness before testifying in the proceeding himself.

In order to establish that respondents procured the arbitration award by corruption, fraud, or undue means, Hakala must make a three-part showing. First, he must demonstrate that respondents engaged in fraudulent activity. Second, he must show that the fraud was material to an issue in dispute during the arbitration. Third, he must show that he could not have discovered the fraud before or during the arbitration proceeding through the exercise of due diligence. *See Karppinen v. Karl Kiefer Mach. Co., 187 F.2d 32, 35 (2d Cir. 1951); McCarthy v.*

2004 U.S. Dist. LEXIS 8297, *

*Smith Barney, Inc.*, 58 F. Supp. 2d 288, 293 (S.D.N.Y. 1999).

While respondents dispute petitioner's claims of fraud, it is not necessary to weigh the merits of each side's arguments, because the third requirement stated above precludes review of Hakala's claims. Hakala does not offer a persuasive justification for his failure to discover the alleged fraud before the arbitration panel issued its ruling. Indeed, at least with respect to respondents' alleged discovery violations, he appears to have done so. He argued to the panel that these violations were deliberate [*8] attempts to obstruct the proceeding. With respect to respondents' alleged subornation of perjury, the fact that the accusation is based only on the recorded statements of witnesses indicates that Hakala was well aware of the basis for the claim during the pendency of the proceeding. The purpose of requiring fraud to be "newly discovered" before vacating an arbitration award on that ground is "to avoid reexamination, by the courts, of credibility matters which either could have been or were in fact called into question during the course of the arbitration proceedings." *A. Halcoussis Shipping Ltd. v. Golden Eagle Liberia Ltd.*, 1989 U.S. Dist. LEXIS 11401, 88 Civ. 4500 (MJL), 1989 WL 115941, at *3 (S.D.N.Y. Sept. 27, 1989). Hakala had the opportunity to present to the arbitrators evidence of this alleged fraudulent behavior of respondents. The arbitrators, as the finders of fact, had the opportunity to assess firsthand the credibility of the allegedly perjured testimony and of respondents' explanations for their last-minute document production. Accordingly, Hakala may not now seek review of those issues in this court.

## II. *Evident Partiality or Misbehavior*

Hakala also argues that the arbitration [*9] award should be vacated because of evident partiality or misbehavior on the part of the arbitration panel. At one point in the proceeding, Hakala explains, respondents' counsel sought an *ex parte* hearing with the arbitrators in order to explain why a scheduled witness could not appear that day. Respondents' counsel stated on the record that he sought a confidential conversation because the witness's absence related to matters that could affect the then-pending merger of Banker's Trust and Deutsche Bank. The arbitrators granted the request. According to Hakala, the panel denied him the opportunity to cross-examine the witness on his unavailability when he did appear, and the panel chairman's attitude toward respondents was "markedly more favorable" after the *ex parte* communication.

An arbitration award may be set aside on the basis of evident partiality only when "a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." *Morelite Constr. Corp. v. New York City Dist. Counsel Carpenters Benefit Funds*, 748 F.2d 79, 84 (2d Cir. 1984); *see also National Association of Broadcast Employees*, 707 F. Supp. at 131. [*10] To vacate an award on the basis of *ex parte* communications between the panel and one party to the arbitration, petitioner must make a two-part showing. First, he must demonstrate "that [the *ex parte*] conversation deprived him of a fair hearing and influenced the outcome of the arbitration." *Spector v. Torenberg*, 852 F. Supp. 201, 209 (S.D.N.Y. 1994). Second, he must show that "the subject matter of the conversation [went] to the heart of the dispute's merits." *Id.* at 210.

Hakala's claim of partiality must be denied, because he has failed to establish that the *ex parte* conversation influenced the outcome of the proceeding, deprived him of a fair hearing, or dealt with the merits of the dispute. He offers only conclusory allegations of the arbitrators' partiality toward respondents. Respondents point out that the panel made several rulings in favor of the petitioner after the conversation, which belie his claim of bias. Furthermore, both respondents' counsel and the panel chairman stated on the record that the witness's unavailability was the topic of the *ex parte* conversation. It was a "merely peripheral matter" that had nothing [*11] to do with Hakala's breach of contract and wrongful termination claims. *See Spector*, 852 F. Supp. at 210. The fact that the panel refused to permit Hakala to question the witness on this peripheral matter does not show partiality. Indeed, such cross-examination would have defeated the stated purpose of the *ex parte* communication. Nothing in the record or in Hakala's arguments supports a finding that counsel for respondents or the chairman of the panel misstated the subject of the communication on the record.

Neither has Hakala shown that the arbitrators were guilty of misconduct. "Misconduct typically arises where there is proof of either bad faith or gross error on the part of the arbitrator." *Agarwal v. Agrawal*, 775 F. Supp. 588, 589 (S.D.N.Y. 1991). The fact that the panel granted one party's request for an *ex parte* conversation does not amount to bad faith or gross error.

Accordingly, Hakala has not shown either evident partiality or misbehavior on the part of the arbitrators.

## III. *Manifest Disregard of the Law or the Facts*

As a third ground for vacating the award, Hakala argues that the arbitrators manifestly disregarded either [*12] the law or the evidence in rendering their decision. He notes that the

arbitrators demonstrated their understanding of and ability to apply the law at several crucial junctures in the proceeding, as when they denied respondents' motion for summary judgment and ruled on evidentiary issues. Be-

2004 U.S. Dist. LEXIS 8297, *

cause he properly stated the e99 Civ. 9828 (JSM)lements of his claims and offered sufficient evidence, Hakala argues, the decision against him could only have been the result of a manifest disregard of the law or of a refusal to give proper weight to the evidence.

The Second Circuit has stated that judicial review for manifest disregard of the law is "severely limited." *Greenberg, 220 F.3d at 28* (quoting *DiRussa v. Dean Witter Reynolds Inc., 121 F.3d 818, 821 (2d Cir. 1997))*. To vacate for manifest disregard of the law, a court must find "both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case." *Id.* (quoting *DiRussa, 121 F.3d at 821*); *see also National Association of Broadcast Employees, 707 F. Supp. at 130-31.* [*13]

Hakala offers no concrete basis for such a determination. He cites no instance in the record at which the arbitrators made a clear error of applicable law. Accordingly, manifest disregard of the law is not a proper ground for vacating this award.

Similarly, "judicial review of an arbitrator's factual determinations is quite limited." *Beth Israel Med. Ctr. v.Local 814, Int'l Bhd. of Teamsters,* 2000 U.S. Dist. LEXIS 13547, 99 Civ. 9828 (JSM), 2000 WL 1364367, at *6 (S.D.N.Y. Sept. 20, 2000). To vacate an award on the basis of manifest disregard of the evidence, a court must find that "there is 'strong evidence' contrary to the findings of the arbitrator and the arbitrator has not provided an explanation of his decision." *Id.* But a reviewing court may not question a panel's credibility determinations or the weight that it accorded to conflicting evidence. *See McDaniel v. Bear Stearns & Co., Inc., 196 F. Supp. 2d 343, 351 (S.D.N.Y. 2002).*

Nothing in the record of this proceeding suggests that the panel manifestly disregarded the evidence presented to it. With respect to the contract claim, Hakala testified that he was offered an oral guarantee of a two-year bonus, and that he agreed to forego the [*14] second year in return for a guaranteed bonus the following year that would include the amount withheld from the first bonus. Respondents presented rebuttal evidence in the form of testimony from BT Securities executives who stated that Hakala was given no such guarantee, that two-year guaranteed bonuses were contrary to company policy, and that no other employees had received two-year guaranteed bonuses. The arbitrators reasonably could have credited this evidence over Hakala's testimony.

With respect to the retaliatory firing claim, Hakala testified and offered evidence that his performance was adequate. He also testified that respondents had asked him to commit fraud, he had refused, and he was fired as a result. Respondents offered the testimony of witnesses who stated that Hakala performed below expectation and that his job performance was the reason for his termination. The arbitrators could have found that this was the more persuasive evidence offered.

While it is true that the arbitrators in this proceeding did not issue a written explanation of their decision, they were under no obligation to do so. *See Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1214 (2d Cir. 1972).* [*15] Hakala's arguments amount to a claim that the arbitrators must have disregarded the law or the facts, because they ruled against him. Such arguments do not justify vacating the arbitration award.

## IV. *Violation of Public Policy*

Finally, Hakala argues that the award in respondents' favor violates public policy. Specifically, he contends that by ruling in favor of respondents despite their fraudulent behavior during the proceeding, the arbitrators countenanced violations of Hakala's due process rights. According to Hakala, the arbitrators' ruling in favor of BT Securities and Banker's Trust, despite respondents' disregard of the covenant of good faith and fair dealing inherent in every arbitration contract, violates the policy favoring "public faith in the arbitration process." In addition, the denial of Hakala's claim that he was wrongfully deprived of his bonus violates New York's policy disfavoring the forfeiture of earned wages. *See, e.g., Thomson v. Saatchi and Saatchi Holdings (USA), Inc., 958 F. Supp. 808, 824-25 (W.D.N.Y. 1997).*

Arbitration awards may be vacated if they violate a "well defined and dominant public policy." *Greenberg, 220 F.3d at 27* [*16] (quoting *IBEW Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 717 (2d Cir. 1998))*. Hakala has not shown that the arbitration award in question violates public policy. His due process and arbitration process arguments merely repeat his claims of fraud and partiality, which are not cognizable bases for vacating this award. Furthermore, to hold that New York public policy regarding the forfeiture of earned wages mandates that this court vacate the award would contradict the arbitrators' determination that no forfeiture of wages occurred. Because the factual findings of arbitrators are entitled to substantial deference, such a ruling would not be appropriate.

Hakala appears to make an additional argument that arbitration is not an appropriate forum for the resolution of retaliatory termination claims. He points out that the NASD, in response to criticism from Congress and other government agencies, recently revised its compulsory arbitration process to exempt claims of discrimination and sexual harassment. Hakala suggests that those revi-

2004 U.S. Dist. LEXIS 8297, *

sions constitute an admission on the part of the NASD that its arbitrators cannot be trusted to find discriminatory intent. By [*17] extension, Hakala argues, neither can NASD arbitrators be trusted to be impartial when a claimant accuses an NASD member firm of illegal conduct and is fired as a result.

The Supreme Court has determined that the FAA contemplates few exceptions to the enforceability of arbitration agreements. *See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 26, 114 L. Ed. 2d 26, 111 S. Ct. 1647 (1991).* A new exception to the arbitrability of employment-related claims based on the NASD's voluntary revision of its arbitration practices is not one of the exceptions.

Hakala has not shown that the arbitration award violates well-defined public policy. Accordingly, it cannot be vacated on that ground.

*Conclusion*

For the foregoing reasons, petitioner's motion to vacate the arbitration award is denied.

SO ORDERED.

Dated: New York, New York

May 11, 2004

MIRIAM GOLDMAN CEDARBAUM

United States District Judge