Case 1:08-cv-00706   Document 58-15   Filed 05/16/2008   Page 1 of 8
Case 1:08-cv-00706   Document 45-3   Filed 03/31/2008   Page 2 of 10

Page 1

LEXSEE 1992 U.S. DIST. LEXIS 3935

**In the Matter of the Arbitration -between- JOHN R. BOWEN, as Business Manager of the INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 94, and as Trustee of the WELFARE, PENSION, ANNUITY, SICK PAY AND TRAINING FUNDS OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS, LOCAL 94, Petitioner, -and- 39 BROADWAY ASSOCIATES, 25 BROAD STREET, CO., and BROADWAY MANAGEMENT CO., INC., d/b/a 39 BROADWAY ASSOCIATES, Respondents.**

91 Civ. 4673 (CSH)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*1992 U.S. Dist. LEXIS 3935*

**April 1, 1992, Decided**
**April 2, 1992, Filed**

**JUDGES:** [*1] HAIGHT, JR.

**OPINION BY:** CHARLES S. HAIGHT, JR.

**OPINION**

*MEMORANDUM OPINION AND ORDER*

*HAIGHT, District Judge:*

This case is before the Court on petitioner's motion to confirm an arbitration award in favor of petitioner against previously unnamed corporate respondent Broadway Management Company, and on respondent Broadway Management Co.'s motions for vacatur of the award and for summary judgment on its cross-petition for a declaratory judgment declaring the award "null and void with respect to Petitioner." Respondent Broadway Management Co. also seeks sanctions under *Fed. R. Civ. P. 11*.

For the reasons set forth below, respondent's motions are denied. The parties are ordered to expeditiously conduct discovery on the relationship, if any, between Broadway Management Co. and 39 Broadway Associates.

*BACKGROUND*

Petitioner, John Bowen, petitions in his capacities as Business Manager of the International Union of Operating Engineers, Local 94 ("Local 94"), and as Trustee of the Welfare, Pension, Annuity, Sick Pay and Training Fund of the International Union of Operating Engineers, Local 94 ("Trust Funds"). Local 94 is a labor organization which has its principal place of business in New York City. [*2] The Trust Funds are joint trusteed funds established by various indentures whose trustees maintain the subject plan in New York City. Petition, P4. Local 94 represents workers employed in the maintenance of various buildings in New York City.

Respondent Broadway Management Co., Inc., ("Broadway Management" or "respondent") is a corporation organized and existing under the laws of the State of New York, engaged in the business of managing commercial office buildings in and around New York City. Respondent's main offices are located at 39 Broadway, in New York City.

Co-respondent 39 Broadway Associates was a named defendant in the arbitration at issue. Petitioner asserts that 39 Broadway Associates is a limited partnership having its offices and principal place of business at 39 Broadway, New York, New York. Petition, P5. Petitioner also asserts that Broadway Management does business as 39 Broadway Associates. Petition, P7. Respondent claims that 39 Broadway Associates does not exist. Brief in Support of Cross-petition 6, 7.

Co-respondent 25 Broad Street Company ("25 Broad Street"), is or was a corporation organized under the laws of the State of New York, with offices located at 39 [*3] Broadway, New York, New York. 25 Broad Street was a named defendant in the arbitration here at issue. Memorandum in Support of Petition, Exh. C. 25 Broad Street is not a party to this proceeding because it filed a petition in

Case 1:08-cv-00706    Document 58-15    Filed 05/16/2008    Page 2 of 8
Case 1:08-cv-00706    Document 45-3    Filed 03/31/2008    Page 3 of 10

Page 2

1992 U.S. Dist. LEXIS 3935, *

bankruptcy March 7, 1991, and Petitioner is therefore enjoined from commencing proceedings against it under *11 U.S.C. § 362*. Petition, P13, P14.

Local 94 instituted arbitration against 39 Broadway Associates and 25 Broad Street in May 1990. The arbitration arose out of a collective bargaining agreement negotiated by Local 94 and the Real Estate Advisory Board on Labor Relations [1] ("RAB") in 1988, covering the period January 1, 1989, through December 31, 1991 ("the agreement"). Reply Memorandum, Exh. B. Local 94 and RAB were the only parties to the agreement named in the agreement. However, the agreement clearly contemplated that individual owners of buildings, and certain of their agents, would become parties to the agreement by later signature of the agreement or of assents to the agreement. The preamble to the Agreement provides that:

This Agreement is by and between the International Union of Operating Engineers, Local 04-94A-94-B, AFL-CIO . . . and the [*4] Realty Advisory Board on Labor Relations, Incorporated . . . acting on behalf of various owners of office and commercial buildings in the City of New York and authorized agents of such owners, who become signatory to this agreement (hereinafter severally referred to as "Employer").

*Id.*, Exh. B, at 1. Article I of the Agreement further provides that:

This agreement shall be binding on each owner signatory to this agreement, as well as upon each agent of an owner who becomes signatory hereto as Employer.

*Id. See also* Article I(4)(b) and (c) (contractors and subcontractors of building owners to become signatories through use of assents). Reply memorandum, Exh. B, at 2, 3. Local 94 alleged that 39 Broadway Associates and 25 Broad Street were "employers" bound by the agreement who had failed to make obligatory payments into the trust funds as required by Article XI of the agreement.

    1   The Realty Advisory Board on Labor Relations, Inc., ("RAB") is an umbrella organization representing the collective interests of building owners in negotiations with various labor organizations. RAB is not a party to these proceedings.

[*5] The arbitrator, proceeding without opposition by any of the co-respondents named in this action, found for petitioner. Petition, Exh. C at 1. The award indicates that "no one appeared on behalf of employer." *Id.* There is nothing in the award clarifying which of the defendants named in the caption are referred to by the words "the employer." Both 39 Broadway Associates and 25 Broad Street are named in the caption to the award. In the award, the arbitrator states that the judgment was based entirely on "the testimony of Mr. Carney, business agent of the union, and upon the statement by the union of a breakdown for [sic] monies due on behalf of an employee . . . the same not being contradicted . . . ." *Id.* at 1. Thus, it appears that the arbitrator was presented with no evidence concerning the corporate identity of 39 Broadway Associates beyond that presented by Mr. Carney. Petitioner has not submitted any transcript or record of the proceeding, so it is impossible for this court to know what evidence, if any, was presented to the arbitrator on that issue. Petitioner must be viewed as asserting that the arbitrator found that 39 Broadway Associates was the employer of some member [*6] of Local 94 although that finding is not mentioned in the award.

The award consists of a form award with typewritten comments added by the arbitrator. The arbitrator did little more than itemize monies owed by "the employer" or "the company" to Local 94, totalling $ 5,261.17. Petition, Exh. C, at 2. The award neither states that 25 Broad Street or 39 Broadway Associates is liable for those monies, nor that the named defendants are severally liable. Without a transcript or other record of the arbitral proceedings, it is impossible for this court to determine which of the named defendants the arbitrator intended to hold liable for those monies. Petitioner asserts that 25 Broad Street and 39 Broadway Associates are jointly and severally liable for the monies awarded. Petition at 2. Petitioner must be viewed as asserting that the arbitrator made such a determination although it was not mentioned in the award.

On July 9, 1990 petitioner filed this action, pursuant to Section 301 of the Labor Management Relations Act of 1947, as amended, *29 U.S.C. § 185, Section 9* of the Federal Arbitration Act, 9 U.S.C. §§ 1-14 et. seq., and Sections 502 and 515 of the Employee Retirement Income Security [*7] Act, *29 U.S.C. §§ 1132* and *1145*, to confirm the arbitrator's award. The complaint seeks confirmation of the award and entry of judgment against Broadway Management. Petitioner asserts two superficially contradictory theories about the relationship between Broadway Management and 39 Broadway Associates in support of a finding of liability against Broadway Management.

Petitioner first alleges that 39 Broadway Associates and Broadway Management are separate legal entities. The caption in this matter, the introductory paragraphs of the petition, and paragraph 7 of the petition set forth petitioner's claim that Broadway Management "does business as 39 Broadway Associates." Paragraphs 5 and 6 of the petition express petitioner's belief that 39 Broadway Associates "is a limited partnership," while Broadway Management is a corporation.

Case 1:08-cv-00706   Document 58-15   Filed 05/16/2008   Page 3 of 8
Case 1:08-cv-00706   Document 45-3   Filed 03/31/2008   Page 4 of 10

1992 U.S. Dist. LEXIS 3935, *

Page 3

Elsewhere however, petitioner alleges facts indicating a belief that Broadway Management and 39 Broadway Associates are the same legal entity. In his reply papers, petitioner alleges that Broadway Management was a joint-employer of the member of Local 94 on whose behalf payments into the trust funds were to be made. Reply Memorandum at 1-4. The facts alleged [*8] in support of this contention suggest that Broadway Management engaged in activities which would make it a party to the agreement and subject to the arbitration. *Id.* Those facts do not indicate that 39 Broadway Associates undertook those actions as an agent for Broadway Management. Also, in his petition, petitioner clearly indicates that relief is sought "solely against 39 Broadway Associates." Petition, P14.

One reading of the papers is consistent with both sets of allegations. Petitioner may be viewed as uncertain about the actual relationship between 39 Broadway Associates and Broadway Management, but certain that Broadway Management was bound by the agreement and by the arbitration award because of that relationship. On this reading, petitioner can fairly be deemed to be asserting an alter-ego theory for holding a previously unnamed party liable on the arbitration award. Petitioner may be viewed as petitioning this court to make the "veil-piercing" factual determination that Broadway Management was bound by the arbitration agreement and by the award.

Respondent cross-petitions for three types of relief on the basis of denials of facts central to petitioner's motion. Respondent [*9] moves for summary judgment on its application for declaratory judgment that it has no collective bargaining agreement with petitioner. Respondent moves for vacatur of the judgment, on the grounds that, absent such an agreement, it could not have been compelled to arbitrate and cannot be bound by the arbitration award. Respondent also claims that having received no adequate notice of the pendency of arbitral proceedings, it was deprived of opportunity to participate and therefore cannot be bound by the *ex parte* award. Finally, respondent moves for sanctions against petitioner and his attorneys under *Fed. R. Civ P. 11*, claiming that this litigation amounts to harassment because minimal investigation would have revealed the non-existence of 39 Broadway Associates or of a relationship between that entity and Broadway Management.

*DISCUSSION*

Before addressing the motions before this court, this court must resolve a threshold procedural problem which arises out of the factual dispute central to the arguments forwarded by both parties. The factual issue of the true relationship between 39 Broadway Associates and Broadway Management is dispositive of each of the motions before this [*10] court. The question immediately arises whether a federal district court may make the factual determinations necessary to "pierce the corporate veil" in the context of a motion to confirm an arbitration award.

The controlling law on that procedural question has been undergoing significant change since 1987. The most significant changes occurred at the time the contested arbitration was taking place. A review of those changes is in order, both because those changes control this court's determination that it must address the central factual issue in this case, and because counsel for both parties have displayed unfamiliarity with the law on this threshold issue.

*Piercing the Corporate Veil in the Context of a Motion to Confirm an Arbitration Award*

The issue of when it is appropriate for a federal district court to undertake the factual determinations necessary for piercing the corporate veil is more complex where arbitration has been or will be utilized by the parties to a dispute. It has long been clear that an arbitration award cannot be enforced against a non-party to the arbitration clause who did not voluntarily participate in the arbitration. *American Renaissance Lines, Inc. v. Saxis Steamship Co., 502 F.2d 674 (1974)*; [*11] *A/S Ganger Rolf v. Zeeland Transportation Ltd., 191 F. Supp. 359 (S.D.N.Y. 1961)*. It is also well established that federal district courts provide the appropriate forum for determining the issue of whether a corporation not party to an arbitration proceeding may be held liable for an arbitration award against another corporation by dint of the relationship between the two corporations:

"A decision whether parties other than those formally signatories to an arbitration clause may have their rights and obligations determined by an arbitrator when that issue has not been submitted to him is not within the province of the arbitrator himself but only of the court."

*A/S Ganger Rolf v. Zeeland Transportation, Ltd., 191 F. Supp. 359, 363 (S.D.N.Y. 1961)*.

The leading case on the procedural question is *Orion Shipping & Trading Co. v. Eastern States Petroleum Corp., 312 F.2d 299 (2nd Cir. 1963), cert. den. 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705*. In *Orion*, the Second Circuit held that an action to confirm an arbitration award cannot be substituted for an action against a non-party, [*12] or to enforce an award under an alter-ego theory. *Id. at 301*. The *Orion* Court upheld a District Court's determination that "the arbitrator had exceeded his powers in determining the obligations of a corporation clearly not a party to the arbitration proceeding." *Id.*

Case 1:08-cv-00706   Document 58-15   Filed 05/16/2008   Page 4 of 8
Case 1:08-cv-00706   Document 45-3   Filed 03/31/2008   Page 5 of 10

Page 4

1992 U.S. Dist. LEXIS 3935, *

at 300 (citing *9 U.S.C. §§ 10(d), 11*). The *Orion* Court reasoned that:

"an action for confirmation is not the proper time for a District Court to "pierce the corporate veil." The usual office of the confirmation action under *9 U.S.C. § 9* is simply to determine whether the arbitrator's award falls within the four corners of the dispute as submitted to him. The action is one where the judge's powers are narrowly circumscribed and best exercised with expedition. It would unduly complicate and protract thee proceeding were the court to be confronted with a potentially voluminous record setting out details of the corporate relationship between a party bound by an arbitration award and its purported "alter ego.""

*Id. at 301.*

This general rule was regarded as a total bar to raising such matters in the context of motions to confirm by the district judges of [*13] the Second Circuit for over two decades. The rule was cited and reiterated in a wide variety of procedural contexts without mention of limitations or exceptions until 1987. *See, e.g., In the Matter of Arbitration between Hidrocarburos y Derivados, C.A. and Compania Espanola De Petroleos, S.A., 453 F. Supp. 160 (S.D.N.Y. 1978)* (supplemental opinion, Apr. 8, 1978) (granting motion to compel arbitration against principals of agents party to commercial contract and arbitration, court holding that *Orion* barred testing of any theory of non-party corporation's liability in motion to confirm); *In the Matter of Arbitration between Kaplan and Eastern Metal Spinning Co., Inc. and Ben Forman & Sons, Inc.*, No. 83 Civ. 4800 (GLG), slip op., (S.D.N.Y. Oct. 27, 1983) (cross-petition to dismiss motion to confirm award against non-party corporation granted, court holding that motion to confirm is not proper place to determine whether corporate defendant was successor in interest of a party to collective bargaining contract); *Sea Eagle Maritime, Ltd., v. Hanan Int'l, Inc.*, No. 84 Civ. 3210 (PNL), slip op., (S.D.N.Y. Nov. 14, 1985) (motion to confirm, possibly including [*14] a separate action to enforce under *28 U.S.C. 1333*, dismissed, court holding that plaintiff has relied on theories barred in context of motion to confirm by *Orion*).

The *Orion* rule was seen as the product of the need to guarantee that arbitrations, and motions to confirm awards, would be resolved expeditiously. The availability of other remedies, including the motion to compel and separate proceedings in the district court to determine the liability of persons not party to the arbitration, meant that forbidding this use of the motion to compel would not prejudice movants. *Builders Federal (Hong Kong), Ltd. v. Turner Construction, 655 F. Supp. 1400, 1402, 1406-08 (S.D.N.Y. 1987)*.

In 1987, District Judge Kram twice held that the *Orion* rule did not apply where arbitration arose out of a collective bargaining agreement. *In the Matter of Arbitration between District 15, Int'l Assoc. of Machinists and Aerospace Workers and Numberall Stamp and Tool Co., 658 F. Supp. 648 (S.D.N.Y. 1987)* ["Numberall I"]; *In the Matter of Arbitration between District 15, Int'l Assoc. of Machinists and Aerospace Workers and Numberall Stamp and Tool Co., 1987 U.S. Dist. Lexis 12736 (S.D.N.Y. 1987)* [*15] ["Numberall II"]. In *Numberall I*, respondents moved for summary judgment that petitioner's motion to confirm be denied on the basis of *Orion*. Judge Kram's denial of the motion was based on her reading of the United States Supreme Court decision in *John Wiley & Sons v. Livingston, 376 U.S. 543 (1964)*. In *Wiley*, the Supreme Court held that a court could compel a company not party to a collective bargaining agreement to arbitrate a dispute arising under it. Judge Kram reasoned that the *Wiley* decision should be broadly construed as granting authority to confirm an award against such a company as well.

Judge Kram had occasion to rule on the applicability of the *Orion* rule a second time when respondents, in *Numberall II*, moved for certification of the order in *Numberall I* for interlocutory appeal. In denying certification, Judge Kram reiterated and expanded on her prior holding. Judge Kram denied certification, primarily because the issue of the proper interpretation of *Wiley* was not "controlling" for certification purposes. *Numberall II, 1987 U.S. Dist. Lexis 12736,* at *3 In reaching that conclusion, Judge Kram reasoned [*16] that even if her interpretation of *Wiley* were incorrect, *Orion* was distinguishable on its facts. *Id.* at *4

Judge Kram distinguished *Orion* on two grounds. First, *Orion* involved commercial arbitration, whereas *Numberall I* had involved arbitration arising from a collective bargaining agreement. Second, the complexity of the factual matter presented in *Orion* meant that district court intervention would greatly delay resolution of the arbitration, whereas the only factual question at issue in *Numberall I* was whether two corporations shared common officers. The matter at issue in *Numberall I* did not threaten to protract resolution of the motion to confirm. *Id.*

Although Judge Kram's rulings directly challenged the status of the *Orion* rule in the Southern District of New York, they were not appealed and did not immediately generate any controversy. However, other Judges of this Court also began to reconsider the scope of *Orion*.

In *Orlogin, Inc. v. U.S. Watch Co., 1990 U.S. Dist. Lexis 7794 (S.D.N.Y. 1990)*, Judge Ward granted a motion to confirm an arbitration award against a company that had not participated in the arbitration [*17] which

arose out of a commercial contract. That company had defended on the ground that it was not bound by the contract. *Orlogin, 1990 U.S. Dist. Lexis 7794* at *3, *4 Judge Ward mentioned the *Orion* rule, but did not explain why it did not apply to the commercial arbitration at hand. The relevant portion of the opinion focuses on the fact that respondent produced no relevant support for the position that the non-party company continued to exist as a separate legal entity after a merger with the company bound by the contract and award, and on respondent's admission in a post-hearing brief that the non-party company agreed "as a matter of law" that it was bound by the agreement. *Id.* at *18, *19. Thus, Judge Ward seemed to believe that the virtual absence of credible opposition to the assertion of liability against a non-party rendered the *Orion* rule inapplicable even in the context of a commercial arbitration. This reading is supported by the following presentation of the central factual allegations of the parties:

> ... Orlogin, reflecting some confusion over the legal status of Tabakow after the merger, named only Tabakow in its demand for arbitration. [*18] Inasmuch as there is no dispute that Gruen, under the pseudonym of Tabakow, had notice of the arbitration and a full opportunity to present its case to the panel, this misnaming does not excuse Gruen from its obligations under the Agreement.

*Id.* at *19. The facts of these cases are distinguishable, in that respondent at bar challenges petitioner's allegations of adequate notice. It is clear, though, that Judge Ward at least implicitly agreed with Judge Kram that the *Orion* rule did not apply in cases where the factual determination at issue was not complex.

In 1991, the Second Circuit reaffirmed the importance of the distinction between commercial arbitration and arbitration based on collective bargaining agreements for purposes of applying the *Orion* rule. *Gvozdenovic v. United Airlines, Inc.* 933 F.2d 1100 (2nd Cir. 1991), cert. den., U.S. , 112 S. Ct. 305 (1991). In *Gvozdenovic*, the Second Circuit affirmed a district court's ruling that plaintiffs were bound by arbitration arising out of a collective bargaining agreement although plaintiffs denied being party to the agreement. Plaintiffs complained on appeal that [*19] the ruling was incorrect, citing *Orion* and *American Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2nd Cir. 1974). The court reasoned that plaintiff's voluntary participation in the arbitration rendered them bound by the award. *Gvozdenovic, 933 F.2d at 1105*. Importantly, the Second Circuit flatly stated that *Orion* and *Saxis* were not applicable to the case before it because those cases involved commercial arbitration while *Gvozdenovic* involved labor arbitration. *Gvozdenovic, 933 F.2d at 1105*.

The nature and reason for the distinction were not elaborated by the court. However, an understanding of the distinction may be gleaned from the court's consideration of the influence of voluntary participation in arbitral proceedings on the propriety of finding non-parties bound by the award. In the course of that discussion, the court stated that plaintiffs' reliance on *Beardsly v. Chicago & N. Western Transp. Co., 850 F.2d 1255 (8th Cir. 1988)* was misplaced, even though that case implicated a labor arbitration. *Gvozdenovic, 933 F.2d at 1105*. In *Beardsly,* according [*20] to the Second Circuit, an arbitration award against employees hired after the negotiation of the collective bargaining agreement had been conducted without the participation of the new hires, and over their objections. *Id. at 1105-06*. The court contrasted the *Beardsly* facts with the non-objecting participation of plaintiffs before it in the contested arbitration. *Gvozdenovic, 933 F.2d at 1106*.

In light of that discussion, the *Gvozdenovic* court seems to have implicitly adopted the position that there are two broad exceptions to the *Orion* rule. First, the *Orion* rule does not apply in actions involving labor arbitrations. Second, the rule cannot be invoked to impede confirmation of an award by persons who have previously manifested an intent to arbitrate their dispute. This second exception implies that a party *may* be heard to argue that an arbitration award was not binding on it because it was not party to either the agreement or the arbitration, and was denied the opportunity to participate in the proceedings, although that last situation was not presented in *Gvozdenovic.*

This court revisited the issue in December of 1991. [*21] In *In the Matter of the Petition of Transrol Navegacao S.A. and Redirekommanditselskaber Merc Scandia XXIX, 1991 U.S. Dist. Lexis 17826 (S.D.N.Y. 1991)* (Filed Dec. 11, 1991), Judge Wood granted a motion to confirm, and denied a motion to vacate a commercial arbitration award. Transrol, against whom the arbitrator had decided below, petitioned for vacatur of the award on the grounds that Transrol was not a signatory to the arbitration agreement and had not attended the arbitral proceedings. *Id.* at *6. Transrol cited *Orion* for the propositions that a court and not an arbitrator should make the determination of whether or not a party is subject to an arbitration agreement, but not for the rule barring consideration of an alter-ego theory in the context of a motion to confirm. *Id.* at *6, *7. Judge Wood found that the argument lacked credibility, because "*Orion* must now be understood in light of *Gvozdenovic v. United Airlines, Inc.* . . . ." *Id.* at *7 Judge Wood reasoned that *Gvozdenovic* stood for the proposition: "When an agreement to arbitrate may be implied from conduct of a non-signatory, that non-signatory may not later assert the invalidity [*22] of the arbitration award based

Case 1:08-cv-00706    Document 58-15    Filed 05/16/2008    Page 6 of 8
Case 1:08-cv-00706    Document 45-3    Filed 03/31/2008    Page 7 of 10

Page 6

1992 U.S. Dist. LEXIS 3935, *

on the its non-signatory status." *Id.* at *7 Therefore, Judge Wood concluded, "the applicability of the *Orion* rule depends on whether an agreement to arbitrate was implied by Transrol's conduct." *Id.* at *7, *8 Thus, this court has followed *Gvozdenovic's* implication that, where a non-signatory has manifested intent to arbitrate, the Orion rule does not preclude district court inquiry into the purported non-party status of a party moving to vacate in the context of a motion to confirm.

In dicta, Judge Wood argued that the Second Circuit's distinction between commercial and labor arbitrations was conduct-based rather than subject-matter based. *Id.* at *10-*12. That is, following *Gvozdenovic*, the *Orion* rule cannot be invoked to impede district court determination of whether a non-party to the arbitration agreement may be bound by the award if that party had previously manifested the intent to arbitrate even in actions implicating commercial arbitration awards. In this respect, Judge Wood's ruling evidences still further development of a trend of narrowing the application of the *Orion* rule.

As of 1990, it appears that this court [*23] is empowered to consider the question of the relationship between 39 Broadway Associates and Broadway Management. While the issue is raised in the context of a motion to confirm, the *Orion* rule against considering such matters is not applicable because the underlying arbitration arose out of a collective bargaining relationship. *Gvozdenovic v. United Airlines, Inc. 933 F.2d 1100 (2nd Cir. 1991), cert. den.,    U.S.   , 112 S. Ct. 305 (1991); In the Matter of Arbitration between District 15, Int'l Assoc. of Machinists and Aerospace Workers and Numberall Stamp and Tool Co., 658 F. Supp. 648 (S.D.N.Y. 1987)*. At issue before this court is the question of whether Broadway Management does business as 39 Broadway Associates or in fact is Broadway Associates. The simplicity of the factual determination called for in resolving this issue indicates that the reasons for denying the propriety of making such a finding in *Orion* are absent here. *In the Matter of Arbitration between District 15, Int'l Assoc. of Machinists and Aerospace Workers and Numberall Stamp and Tool Co., 1987 U.S. Dist. Lexis 12736 (S.D.N.Y. 1987)*. [*24] Thus, this court will consider the merits of each of the motions currently before it.

*Respondent's Motion For Summary Judgment*

Under *Fed. R. Civ. P. 56(c)*, a party is entitled to summary judgment if its moving papers show that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." On such a motion, the court is only to "assess whether there are any factual issues to be tried . . . resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Insurance, 804 F.2d 9 (2nd Cir. 1986)*. The responding party must "set forth specific facts showing that there is a genuine issue for trial." *Fed. R. Civ. P. 56(e)*. Movant must present evidence that does more than merely suggest a "metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. V. Zenith Radio, 475 U.S. 574, 586 (1986)*.

Respondent moves for summary judgment on its cross-petition for declaratory judgment that it is not bound by any collective bargaining agreement with Local 94, and that the award "with respect to Petitioner is null and void." This court understands this to [*25] be a motion for the declarations that respondent is not a party to the agreement and that the award cannot be confirmed as imposing liability on respondent. Respondent contends that 39 Broadway Associates does not exist. Brief in Support of Cross-petition, at 6, 7, 9. Respondent also contends that it is not bound by a collective bargaining agreement with Local 94, and that petitioner has supplied no evidence that any such agreement exists between respondent and Local 94. *Id.* at 9, 10. Respondent further contends that it received no notice of the pending arbitration proceeding, and therefore did not have opportunity to participate in those proceedings. *Id.* at 7, 12. Finally, respondent contends that because no collective bargaining agreement obliges respondent to arbitration with Local 94, an award obtained against respondent *ex parte* is void. *Id. at 10*.

These contentions amount to little more than a flat denial of facts asserted by petitioner regarding respondent's corporate identity and notice. In support of these contentions, respondent has supplied only an affidavit sworn by one Marvin Lipschitz reiterating these denials and offering alternative explanations for [*26] the items of evidence supplied by petitioner. Reply Affidavit in Support of Cross-petition. In fairness to respondent it should be said that it is extremely difficult to supply evidence of the absence of a relationship between two companies. However, even if respondent's denials could ever be deemed to establish the probability of the absence of such a relationship, this court must deny respondent's motion if petitioner has presented sufficient credible evidence that such a relationship might exist.

Petitioner has offered several types of evidence in support of its allegations that Broadway Management was known to it as 39 Broadway Associates and that Broadway Management was party to the agreement. Petitioner has proffered an affidavit sworn by an agent of Local 94 attesting that Broadway Management did business as, and was known to Local 94 as, 39 Broadway Associates. Reply Affidavit of Kuba Brown, 2, 3. Petitioner has proffered check stubs indicating that respondent may have employed or been the joint-employer of a member of Local 94, whether under the name 39 Broad-

Case 1:08-cv-00706   Document 58-15   Filed 05/16/2008   Page 7 of 8
Case 1:08-cv-00706   Document 45-3   Filed 03/31/2008   Page 8 of 10

Page 7

1992 U.S. Dist. LEXIS 3935, *

way Associates or another. Reply, Exh. C. These stubs support the inference that Broadway Management might have been [*27] subject to the agreement under Article I of that agreement cited above. Petitioner has also proffered letters allegedly written by Broadway Management in connection with the employment of a different member of Local 94, as agent for, or jointly with 25. Broad Street. Each of those items supports the inference that Local 94 had dealings with Broadway Management in connection with the employment of the member of Local 94 which gave rise to the arbitral proceeding at issue. Petitioner has also proffered an assent signed by Norman Gold for Broadway Management "as Agent for Barclay New York Associated" in connection with management of a different building. That assent tends to establish the possibility that Broadway Management was bound by the collective bargaining agreement with Local 94 in connection with at least one building in New York.

Petitioner has also proffered substantial evidence on the issue of whether Broadway Management had notice of the arbitration, and opportunity to participate in those proceedings. Petitioner supplied a letter requesting a Mr. James Berg of RAB to schedule of a grievance proceeding between Local 94 and "39 Broadway Management Co." concerning Local 94's [*28] claims that "39 Broadway Associates are in violation of the 1989-91 Engineers Agreement, Article XI 'Employer Fund Contributions.'" Reply, Exh. F. Assuming that 25 Broad Street was a member of RAB, this letter raises the possibility that Broadway Management was alerted to the likelihood that Local 94 would pursue arbitration against Broadway Management. Moreover, Mr. Kuba Brown has sworn that he personally contacted Marvin Lipschitz concerning this grievance. Reply Affidavit of Kuba Brown, P6. Petitioner has also submitted a letter written by a Director of the State Mediation Board, addressed to "39 Broadway Assoc., 39 Broadway, New York, NY 10004" and sent by certified mail, informing its recipient of the impending arbitral proceedings. Reply, Exh. G. Someone at 39 Broadway must have received the letter. Moreover, a copy of the same notice was sent to an attorney, Howard Rothschild, at RAB. It is at least possible that either the recipient at 39 Broadway, an agent of RAB or both forwarded the letter or information contained therein to Broadway Management. At the very least, the document is evidence supporting petitioner's claim that respondent received notice of the impending arbitration.

[*29] To reiterate, this court is not now faced with the question of whether petitioner has submitted enough evidence support a finding that Broadway Management is 39 Broadway Associates, does business as 39 Broadway Associates, or received adequate notice of the arbitral proceedings. This court need only decide whether respondent has adequately demonstrated that no legally sufficient question of material fact has been raised by petitioner. This court answers that question in the negative.

*Motion for Vacatur*

This court may vacate an arbitration award only upon a showing that one of the statutory bases for vacatur has been met. *Smiga v. Dean Witter Reynolds, Inc., 766 F.2d 698, 707 (2nd Cir. 1985), cert. den., 475 U.S. 1067 (1986)*. Respondent's burden is satisfied on a showing that:

(a) . . . the award was procured by corruption, fraud, or undue means[;]

(b) . . . there was evident partiality or corruption in the arbitrators, or either of them[;]

(c) . . . the arbitrators were guilty of misconduct[; or that]

(d) . . . the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject [*30] matter was not made.

*9 U.S.C. § 10.*

Respondent alleges that it was not a party to the agreement, and that the arbitrator could not have legitimately proceeded against it in the absence of adequate notice and opportunity to participate. Even if these allegations make out valid grounds for vacatur under the statute, this court cannot grant the motion absent adequate factual support for the allegations. This court cannot rule on respondent's motion to vacate before discovery has been conducted on the relevant factual issues.

*Motion to Confirm*

Absent a statutory basis for modification or vacatur, a district court must confirm a final award under *9 U.S.C. § 9. Ottley v. Schwartzberg, 819 F.2d 373, 376 (2nd Cir. 1987)*. The showing required to avoid summary confirmation is high. *Id. at 376 (citing National Bulk Carriers, Inc. v. Princess Management Co., 597 F. 2d 819 (2nd Cir. 1979))*.

Respondent's failure, to date, to meet the heavier burdens of proof called for in motions for summary judgment and motions for vacatur does not mean that petitioner has met the lighter burden of proof required for a grant of summary confirmation. [*31] Respondent has neglected to supply this court with a transcript or other record of the arbitration. That failure prevents this court from knowing whether the arbitrator even found liability against 39 Broadway Associates. Similarly, for lack of

Case 1:08-cv-00706　　Document 58-15　　Filed 05/16/2008　　Page 8 of 8
Case 1:08-cv-00706　　Document 45-3　　Filed 03/31/2008　　Page 9 of 10

Page 8

1992 U.S. Dist. LEXIS 3935, *

such a record, this court cannot determine whether the arbitrator made any ruling on the question of the relationship between 39 Broadway Associates and Broadway Management which might have been in excess of his powers. Thus, this court is currently prevented from summarily ruling on the central factual issues currently before it.

This court must reserve judgment on the motion to confirm and the motion to vacate until the parties have conducted discovery on the questions: (1) whether 39 Broadway Associates exists; (2) whether it was party to the agreement; (3) whether Broadway Management is in any way related to 39 Broadway Associates; (4) whether the arbitrator found that 39 Broadway Associates exists, was party to the agreement, and was individually or jointly liable for the monies awarded to Local 94; and (5) whether Broadway Management had adequate notice of the arbitration and opportunity to participate in it.

*Motion for Sanctions*

[*32] Under *Fed. R. Civ. P. 11*, sanctions may granted against an attorney who signs and submits pleadings which he does not in fact believe to be supported by good grounds, or which are submitted for the purpose of delaying proceedings. 28 U.S.C. *Rule 11*. Courts are required to impose sanctions where counsel has not conducted a reasonable inquiry into the factual bases of the papers submitted, or where, under existing precedent, no chance of success exists. *International Shipping Co., S.A. v. Hydra Offshore, Inc., 875 F.2d 388* (2d Cir.), *cert. den., 493 U.S. 1003 (1989)* (failure to conduct proper pretrial investigation into subject matter jurisdiction); *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 892 F.2d 802 (9th Cir. 1989)* (failure to properly investigate factual matters asserted).

Respondent alleges that petitioner has undertaken to obtain judgement against Broadway Management without any basis in fact or law. Brief in Support of Cross-petition, 8. Respondent asserts that petitioner must not have conducted proper pretrial investigation regarding the central factual issue of the existence of a collective [*33] bargaining agreement between Local 94 and Broadway Management. *Id.*

Clearly, this court cannot subject petitioner to sanctions before it is satisfied that petitioner is wrong in asserting that Broadway Management does business as 39 Broadway Associates, or is otherwise related to 39 Broadway Associates, and that petitioner did not conduct reasonable investigation into those matters before filing its motion before this court. This court must refrain from ruling on respondent's motion for sanctions until the discovery called for above is completed.

*ORDER*

Respondent's cross-motion for summary judgment is denied. Petitioner and respondent are ordered to expeditiously conduct discovery on the issues of the existence of 39 Broadway Associates, the relationship, if any, of that company to Broadway Management, and the adequacy of notice to Broadway Management in light of that relationship.

The case will be called for a status conference on June 12, 1992, at 2:30 p.m., in Room 301.

It is SO ORDERED.

Dated: New York, New York

April 1, 1992

CHARLES S. HAIGHT, JR.

UNITED STATES DISTRICT JUDGE