**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JOSEPH STEVENS & COMPANY, INC., | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No. 08 C 706 |
| DAVID CIKANEK, | ) ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is Petitioner Joseph Stevens & Company, Inc.'s ("Joseph Stevens") petition to vacate an arbitration award granted in favor of Respondent David Cikanek ("Cikanek"). Respondent has cross moved to confirm the arbitration award. For the reasons below, the Court denies Petitioner's motion, grants Respondent's Motion, and confirms the arbitration award.

**BACKGROUND**

**I.      David Cikanek's Accounts**

Joseph Stevens is a full service brokerage firm headquartered in New York. David Cikanek, a citizen of Illinois, opened an IRA account (the "Individual Account") with Joseph Stevens in November 2000. Also in November 2000, Cikanek caused the David M. Cikanek Living Trust to open a separate account (the "Trust Account") with Joseph Stevens. Cikanek, as trustee, controlled and directed the trust at all times relevant to this litigation. (R. 44-3, Ex. G, Trust Agreement; R. 44-2, Ex. A, Arb. Hr'g Tr. at 93.)

Cikanek opened both accounts by completing and signing a New Account Agreement.[1] (Petr.'s Ex. P, New Account Agreement.)  The New Account Agreement contained an arbitration clause which provided, in relevant part:

> [A]ll controversies which may arise between [the parties] concerning any transaction or the construction, performance, or breach of this or any other agreement between [the parties] pertaining to securities and other property, whether entered into prior, on or subsequent to the date hereof, shall be determined by arbitration.  Any arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act and the laws of the State of New York . . . .  [J]udgment upon the award rendered may be entered in any court, state or federal, having jurisdiction.

(Petr.'s Ex. P.)

At the time Cikanek opened the accounts with Joseph Stevens, the Trust Account had an approximate balance of $425,372.90 and the Individual Account had an approximate balance of $16,623.60.  (R. 44-3, Ex. H, Trust Account Statement; R. 44-2, Ex. B.)  Between November 2000 and April 2006, both accounts lost nearly all of their value.  (R. 44-2, Ex. B; R. 44-3, Ex. F, Individual Account Statement; R. 44-3, Ex. H.)

## II.   Arbitration Proceedings

On or about April 12, 2006,[2] Cikanek filed an Initial Statement of Claim (the "ISC") with the National Association of Securities Dealers ("NASD")[3] commencing arbitration proceedings

---

[1] Joseph Stevens did not produce a signed New Account Agreement, but argues that Cikanek could not have opened a new account without one.  (*See* R. 58-1 at 8-9).

[2] The ISC is dated April 7, 2006, but the arbitration panel's award notes that it was filed on or about April 12.  (R. 44-4, Ex. I; R. 43-2, Ex. 1, Arb. Award.)

[3] The NASD became the Financial Industry Regulatory Authority ("FINRA") on July 26, 2007.

against Joseph Stevens and other parties.[4] (R. 44-4, Ex. I, ISC.) Cikanek alleged fraud, misrepresentation, omissions, churning, unsuitable investment recommendations, unauthorized trading, negligence, negligent hiring and supervision, and breach of fiduciary duty by Joseph Stevens. (*Id*.) Cikanek claimed $800,000 in actual damages.[5] (*Id*.) The ISC listed the "two accounts at issue" as "4A0-150601 (margin account) and 4A0-750046 (IRA Account)." (*Id*. at 3.) These two account numbers corresponded to the Trust Account and the Individual Account, respectively.

Cikanek also filed a Uniform Submission Agreement ("Submission Agreement") with the NASD submitting to arbitration.[6] (R. 44-4, Ex. J, Cikanek's USA.) Cikanek's Submission Agreement named "David Cikanek" as the claimant, but did not explicitly name either of the accounts. (*Id*.) After Cikanek filed the ISC and his Submission Agreement, Joseph Stevens filed a corresponding Submission Agreement.[7] (R. 44-4, Ex. K, Joseph Stevens' Submission Agreement.) During discovery, Joseph Stevens produced various documents relating solely to the Trust Account, and did not raise any objection to the inclusion of the trust as a party to the action in its answer, at the pre-hearing conference, or at any other point prior to the arbitration hearing. (R. 52-1, Cikanek's Opp'n to Joseph Stevens Application to Vacate at 11.)

The arbitration hearing began on March 19, 2007, in Chicago, Illinois. (R. 44-4, Ex. Q,

---

[4] NASD Case #06-1868. The ISC named Joseph Stevens & Co., Inc., Kevin Brody, Leonard Inserra and Ross Inserra as respondents. (R. 44-1, Ex. I).

[5] These damages included losses at Joseph Stevens and at a prior investment bank. The relative value of each account remained roughly proportional at all times relevant to this litigation. (R. 44-4, Ex. I).

[6] Cikanek's Submission Agreement was dated April 2, 2006. (R. 44-4, Ex. J.)

[7] Joseph Stevens' Submission Agreement was not dated. (R. 44-4, Ex. K.)

3

Arb. Hr'g Tr. at 1.) After Cikanek completed his opening statement, Joseph Stevens moved to strike "those portions of the opening that relate[d] to the [trust]." (*Id*. at 17.) Joseph Stevens argued that the trust did not have a claim in the action because Cikanek's Submission Agreement did not explicitly name the trust as a claimant, because it would be improper to award the Trust Account damages directly to Cikanek – who was not a beneficiary of the trust – and because "the evidence with respect to the [trust] involve[d] different trades, different trading, [and] different time periods." (*Id*. at 24-25, 29.) Cikanek responded that the trust was a party to the action, but offered to amend the pleadings to explicitly include the trust as a claimant and submit a separate Submission Agreement on behalf of the trust if the arbitration panel felt it was necessary. (*Id*. at 22-23.) The arbitration panel took Joseph Stevens' motion under advisement and suggested that Joseph Stevens could renew the motion after the parties completed the presentation of evidence. (*Id*. at 31.)

At that point in the proceedings, Joseph Stevens asked the arbitration panel for permission to amend its answer in order to assert a counterclaim and a cross-claim against the trust. (*Id*. at 32-33.) Joseph Stevens also requested that Chairman Peppard consult with the full arbitration panel before ruling on the issue or, alternatively, order an adjournment and allow the parties to submit briefs. (*Id*.) The arbitration panel apparently did not expressly address any of these requests. (*Id*.) When Cikanek began presenting evidence, Joseph Stevens made a standing objection to all evidence relating to the trust. (*Id*. at 268.) In its closing statement, Joseph Stevens reiterated its objection to the arbitration panel's acceptance of the trust as a claimant in the action. (R. 44-5, Ex. N, Arb. Hr'g Tr.) The arbitration panel apparently never directly ruled on the objection. The arbitration panel also did not request that Cikanek amend the pleadings to

explicitly include the trust as a claimant or submit a separate Submission Agreement on behalf of the trust.

### III.     The Arbitration Award

On March 30, 2007, the NASD delivered the arbitration panel's award. (R. 43-2, Ex. 1, Arb. Award.) The award consisted of $47,500.00 in compensatory damages and $166,250.00 in punitive damages against Joseph Stevens and other parties. (*Id*. at 6.) The arbitration panel did not include any reasoning in the award and made no mention of Joseph Stevens' objection to the arbitration panel's acceptance of the trust as a claimant in the action. (*Id*.)

On April 27, 2007, Joseph Stevens filed an application to vacate the award in the Southern District of New York. Cikanek moved to dismiss for lack of personal jurisdiction or, alternatively, for transfer of venue to this Court under 28 U.S.C. § 1404(a). On January 31, 2008, the Southern District of New York granted Cikanek's transfer of venue motion. (R. 52-5, Ex. C, Order of the S.D. N.Y.)

## LEGAL STANDARD

### I.     Governing Law

Joseph Stevens argues that Second Circuit precedent governs this action because the New Account Agreement contained a clause stating that "[a]ny arbitration under this agreement shall be conducted pursuant to the Federal Arbitration Act and the laws of the State of New York." (Petr.'s Ex. P.) This clause, however, does not state that New York arbitration law should govern the arbitration proceeding itself, but only that New York substantive law governs the legal disputes being arbitrated. The application to vacate the arbitration award is based on the Federal Arbitration Act ("FAA"), thus the Court will apply the FAA in reviewing the arbitration

proceeding. *See Stone v. Doerge*, 328 F.3d 343, 345 (7th Cir. 2003)*; Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 707 (7th Cir. 1994) ("The [FAA] . . . can, and the Supreme Court has held that it does, authorize the federal courts to create a federal substantive law of arbitration to apply in cases under the Act."). The Court will rely on precedent from the Seventh Circuit when interpreting this body of law. *See McMasters v. United States*, 260 F.3d 814, 819 (7th Cir. 2001) (holding that when a court transfers a case under § 1404(a), "the transferee court is usually free to decide federal issues in the manner it views as correct without deferring to the interpretation of the transferor circuit") (internal quotations and citations omitted); *In re Starlink Corn Prods. v. Aventis Cropscience United States Holding*, 211 F. Supp. 2d 1060, 1063 (N.D. Ill. 2002) ("Binding precedent [regarding interpretation of federal law] is set only by the Supreme Court, and for the district courts within a circuit, only by the court of appeals for that circuit").

This case also requires application of state substantive law of trusts, aside from the substantive law governing the arbitration. *See Stone*, 328 F.3d at 345. With respect to issues involving state law, the transferee court normally applies the law of the state where the transferor courts sits after a § 1404(a) transfer. *Starlink Corn Prods.*, 211 F. Supp. 2d at 1063 (citing *Van Dusen v. Barrack*, 376 U.S. 612, 11 L. Ed. 2d 945, 84 S. Ct. 805 (1964)). In this case, however, the Trust Agreement contains a choice of law provision stating that the "Trust Agreement and the trusts created hereby shall be construed, regulated and governed by and in accordance with the laws of the State of Illinois." (R. 44-3, Ex. G at 23.) Accordingly, the Court will apply Illinois law of trusts to the Trust Agreement here.

**II.     Standard and Jurisdiction for Review**

The FAA does not provide an independent basis for federal jurisdiction. Instead, if the parties establish an independent basis for subject matter jurisdiction, a court has jurisdiction to review an arbitration award under the Federal Arbitration Act. 9 U.S.C. § 4. Once jurisdiction is established, the Court does "not – and will not – review arbitral awards for legal or factual error." *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008). The Supreme Court has recently held that Sections 10 and 11 of the FAA provide the FAA's exclusive grounds for expedited vacatur and modification. *Hall St. Assocs. v. Mattel, Inc.*, 128 S. Ct. 1396, 1403 (2008). Indeed, "[t]he grounds for overturning an arbitration award are extremely limited." *Hamlin v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 563 (7th Cir. 2008). The FAA specifies that courts may vacate an arbitration award on four statutory grounds. First, the FAA allows a court to vacate an arbitration award if it was "procured by corruption, fraud, or undue means." 9 U.S.C. § 10(a)(1). Second, a court may vacate an award if "there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). Third, a court may vacate an award if the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Fourth, a court may vacate the award if "the arbitrators exceeded their powers or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).

The Seventh Circuit has also noted that an arbitration award may be vacated if the arbitrators "manifestly disregarded" the law by directing the parties to violate the law or by failing to adhere to the legal principles specified by the contract. *Hamlin*, 516 F.3d at 563. In

*Hall Street*, the Supreme Court recognized that there has been some recent debate as to whether the "manifest disregard" standard is merely an interpretation of the FAA grounds or an additional – potentially invalid – non-statutory ground. *See Hall Street*, 128 S. Ct. at 1403-04. The Seventh Circuit, however, has specified that the "manifest disregard" standard is cabined entirely within 9 U.S.C. § 10(a)(4). *See Wise v. Wachovia Sec., LLC.*, 450 F.3d 265, 268-69 (7th Cir. 2006) ("[W]e have defined 'manifest disregard of the law' so narrowly that it fits comfortably under the first clause of the fourth statutory ground – 'where the arbitrators exceeded their powers.'"). Accordingly, the Court will analyze the arbitration award under the above statutory grounds.

## ANALYSIS

**I.    The Arbitrators' Treatment of the Trust as a Party**

Joseph Stevens argues that Cikanek, as grantor of the trust, did not have standing to bring suit on behalf of the trust, and thus the arbitration panel should not have considered the trust to be a party to the proceedings. (R. 58-1 at n. 6.) This argument, however, ignores the fact that Cikanek was both grantor and trustee of the trust. As trustee, Cikanek had standing to bring suit in his own name on behalf of the trust. *See* 760 Ill. Comp. Stat. 5/3(1), 5/4.11 (2008); (R. 44-3, Ex. G, Art. X.) Cikanek was also entitled to personally collect any award of damages to the trust resulting from such litigation. (R. 44-3, Ex. G, Art. X.) Furthermore, through the New Account Agreement that Cikanek "must have signed" on behalf of himself and on behalf of the trust, Joseph Stevens had formally agreed to submit "all controversies which may arise between [the parties] concerning any transaction or the construction, performance, or breach of . . . any . . . agreement between [the parties]" to arbitration. (R. 58-1 at 9; Petr.'s Ex. P.)

Additionally, there was sufficient evidence for the arbitration panel to determine that Cikanek, when he signed the ISC and the Submission Agreement, was signing both in his individual capacity and as trustee. First, the ISC accurately and precisely identified both the Individual Account and the Trust Account by specific account number and by account type. (R. 44-4, Ex. I.) Second, the amount of actual damages Cikanek claimed in the ISC indicated that both accounts were at issue. The Individual Account was never worth more than a fraction of the $800,000 Cikanek claimed in actual damages. The combination of the initial balances of both accounts supports Cikanek's inclusion of both accounts in the ISC. Third, Cikanek used the term "accounts" in the ISC, which further supported the conclusion that both the Individual Account and the Trust Account were parties. (*Id*.) Cikanek also described the accounts individually as the "margin account" and the "IRA account" more than once in the ISC. (*Id*.) These descriptive terms match the account types of the Trust Account and the Individual Account, respectively. Fourth, Cikanek accurately indicated the initial balances of each account in the ISC. Finally, Joseph Stevens freely produced documents related solely to the Trust Account during discovery.

The arbitration panel's conclusion that the parties had submitted all controversies regarding both the Individual Account and the Trust Account is more than supported by the record. As such, the arbitrators' treatment of the trust as a party does not constitute a statutory grounds for vacatur.

**II.     Joseph Stevens' Motion to Amend its Answer**

Joseph Stevens next argues that the arbitration panel failed to consider the motion to amend its answer, and that this alleged failure amounts to a basis for vacating the arbitration

9

award.  In support of this argument, Joseph Stevens cites Federal Rule of Civil Procedure 15(a), which mandates that leave to amend "shall be freely given when justice so requires."

An arbitrator, however, "enjoys wide latitude in conducting an arbitration proceeding" and the proceedings "are not constrained by formal rules [of] procedure or evidence."  *Generica Ltd. v. Pharmaceutical Basics, Inc.*, 125 F.3d 1123, 1130 (7th. Cir. 1997) (citing *Hoteles Condado Beach, La Concha and Convention Ctr v. Union De Tronquistas Local 901*, 763 F.2d 34, 38 (1st Cir. 1985)).  Of course, Rule 15(a) does not apply to arbitration proceedings.  *See Webster v. A. T. Kearney, Inc.*, 507 F.3d 568, 570 (7th Cir. 2007) (confirming that the "FAA preempts the applicability of the Federal Rules"); *Champ v. Siegel Trading Co.*, 55 F.3d 269, 276 (7th Cir. 1995) ("[A]n arbitration hearing is not a court of law.  When contracting parties stipulate that disputes will be submitted to arbitration, they relinquish the right to certain procedural niceties which are normally associated with a formal trial.") (quoting *Burton v. Bush*, 614 F.2d 389, 390 (4th Cir. 1980)).  Further, Joseph Stevens has not produced any rule requiring the arbitration panel to explicitly rule on motions to amend an answer.

The fact that the arbitration panel did not expressly address – and thereby implicitly denied – Joseph Stevens' motion does not provide a ground for vacatur.  *See Hamlin*, 516 F.3d at 563 (arbitrator's failure to formally rule on [a] particular discovery dispute was not a ground for vacatur).  As explained above, the record more than supports a finding that Joseph Stevens had sufficient notice in the ISC that the trust was, in fact, a party to the proceedings.  Joseph Stevens, therefore, had the opportunity to include any counterclaims or cross-claims related to the trust in its original answer.  Joseph Stevens could also have moved to amend its answer at any time between July 2006, when it filed the original answer, and March 2007, when the hearing began.

As noted above, during this eight-month period, Joseph Stevens freely produced documents related solely to the Trust Account at the request of Cikanek.

Joseph Stevens further alleges that the chairman of the arbitration panel improperly failed to consult with a majority of the panel by choosing to ignore the motion to amend. An NASD rule requires that "all rulings and determinations of the panel be by a majority of the arbitrators." *See* NASD Code of Arbitration § 10325 (2006) available at http://www.finra.org/web/groups/med_arb/documents/mediation_arbitration/p018653.pdf. There is no evidence, however, that a majority of the panel felt that the motion should be explicitly considered or decided, and no violation of this rule could have occurred unless that was the case. The panel's silence as to the motion reinforces that the arbitrators did not accept Joseph Stevens' argument. Under 9 U.S.C. § 10, the alleged actions of the chairman do not warrant vacatur.

## III.     The Ambiguous Nature of the Award

Joseph Stevens argues that it would be improper to award the trust's damages directly to Cikanek. While this argument fails because Cikanek, as trustee, did have the right to personally collect any award of damages to the trust, it raises another issue. The award specifies a single amount of damages to be awarded to Cikanek. It is unclear how much of this award was meant for the trust and how much was designated for Cikanek in his individual capacity. "It is well-settled that the district court generally may not interpret an ambiguous arbitration award." *Tri-State Bus. Machs., Inc. v. Lanier Worldwide, Inc*., 221 F.3d 1015, 1017 (7th Cir. 2000) (quoting *Flender Corp. v. Techna-Quip Co.*, 953 F.2d 273, 279 (7th Cir. 1992)). A court may remand an unclear award to the arbitration panel for clarification if the court is unable to resolve

the ambiguity from the record. *Id.* Because "remand for clarification is a disfavored procedure," courts "should avoid remanding a decision to the arbitrator because of the interest in prompt and final arbitration." *Id.* (citations omitted). "[I]f the ambiguity can be resolved from the record," the Seventh Circuit has made clear that a court "is permitted to interpret and enforce an ambiguous award." *Id.* (citations omitted).

The Court does not need to remand Cikanek's award for clarification. Cikanek is bound, as trustee, to act in the best interest of the grantor and beneficiaries to the trust. *See Smith v. First Nat. Bank of Danville*, 254 Ill.App.3d 251, 261 (4th Dist. 1994) ("The fiduciary relationship between trustee and beneficiary clearly encompasses all transactions concerning the assets of the trust."). It is thus his duty to allocate the proper amount of the award to the trust. If the beneficiaries feel that he has failed to do so, they may bring a separate action against him for breach of fiduciary duty.

## CONCLUSION

For these reasons, the Court denies Petitioner's motion to vacate the arbitration award, and grants Respondent's Motion to confirm the award.

**Dated:**   July 9, 2008

ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge